# EXHIBIT 1

### THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY
### MILWAUKEE, WI 53202

### NOTICE OF PROTECTION PROVIDED BY
### MARYLAND LIFE AND HEALTH INSURANCE GUARANTY CORPORATION

This notice provides a brief summary of the Maryland Life and Health Insurance Guaranty Corporation (the Corporation) and the protection it provides for policyholders and contract holders. This safety net was created under Maryland law, which determines who and what is covered and the amounts of coverage.

The Corporation is not a department or unit of the State of Maryland and the liabilities or debts of the Life and Health Insurance Guaranty Corporation are not liabilities or debts of the State of Maryland.

The Corporation was established to provide protection in the unlikely event that your health maintenance organization or your life, annuity or health insurance company becomes financially unable to meet its obligations and is taken over by its Insurance Department. If this should happen, the Corporation will typically arrange to continue coverage and pay claims, in accordance with Maryland law, with funding from assessments paid by other insurance companies and health maintenance organizations.

The basic protections provided by the Corporation are:
- Life Insurance
  - $300,000 in death benefits
  - $100,000 in cash surrender or withdrawal values
- Health Insurance or Health Benefit Plans
  - $500,000 for coverage provided by health benefit plans
  - $300,000 for disability insurance
  - $300,000 for long-term care insurance
  - $100,000 for a type of health insurance not listed above, including any net cash surrender and net cash withdrawal values under the types of health insurance listed above
- Annuities
  - $250,000 in the present value of annuity benefits, including net cash withdrawal values and net cash surrender values
  - With respect to each payee under a structured settlement annuity, or beneficiary of the payee, $250,000 in present value annuity benefits, in the aggregate, including any net cash surrender and net cash withdrawal values.

The maximum amount of protection for each individual, regardless of the number of policies or contracts, is:

- $300,000 in aggregate for all types of coverage listed above, with the exception of coverage provided by health benefit plans
- $500,000 in aggregate for coverage provided by health benefit plans

17.1223.(0700).MD                                    (REV 1121)

**NOTE: Certain policies and contracts may not be covered or fully covered**. For example, coverage does not extend to any portion(s) of a policy or contract that the insurer does not guarantee, such as certain investment additions to the account value of a variable life insurance policy or a variable annuity contract. There are also various residency requirements and other limitations under Maryland law.

To learn more about the above protections, please visit the Corporation's website at www.mdlifega.org, or contact:

Maryland Life and Health Insurance Guaranty Corporation
6210 Guardian Gateway, Suite 195APG
Aberdeen, Maryland 21005
410-248-0407

**Insurance companies, health maintenance organizations, and insurance producers are not allowed by Maryland law to use the existence of the Corporation or its coverage to encourage you to purchase any form of insurance or a health benefit plan. When selecting an insurance company or health maintenance organization, you should not rely on Corporation coverage. If there is any inconsistency between this notice and Maryland law, then Maryland law will control.**

17.1223.(0700).MD                                                    (REV 1121)

 **Northwestern Mutual**

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy
(the "Policy"), subject to its terms and conditions.
Signed at Milwaukee, Wisconsin on the Date of Issue.

*John E. Schliple*

Chief Executive Officer

*Raymond J. Manista*

Secretary

## WHOLE LIFE POLICY WITH ADJUSTABLE TERM PROTECTION

### Participating

Life Insurance Benefit payable on death of Insured.

Premiums payable for period shown on page 3.

**Right To Return Policy.  Please read this Policy carefully.**  The Policy may be returned by the Owner for any reason within ten days after it was received.  The Policy may be returned to the Northwestern Mutual agent who sold it to you or to the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202 ("Home Office"), 414-271-1444.  If returned, the Policy will be considered void from the beginning.  Any premium paid will be refunded.

<span style="color:red">This policy provides no coverage;</span>

<span style="color:red">it is terminated and no longer in-force.</span>

<span style="color:red">This replica was prepared on</span>

ICC15.TT.ACL.(0715)                    October 28, 2021

| Insured | Marcel Theo Hall | Issue Age and Sex | 52 Male |
| --- | --- | --- | --- |
| Policy Date | January 10, 2016 | Policy Number | 21 455 316 |
| Plan | Whole Life With Adjustable Term Protection | Initial Total Insurance Amount | $500,000 |

ICC15.TT.ACL.(0715)

**This Policy is a legal contract between the Owner and
The Northwestern Mutual Life Insurance Company.**

**Read your Policy carefully.**

# TABLE OF CONTENTS

**POLICY SCHEDULE PAGES**

**SECTION 1. THE CONTRACT**
- Section 1.1 Life Insurance Benefit
- Section 1.2 Entire Contract; Changes
- Section 1.3 Incontestability
- Section 1.4 Suicide
- Section 1.5 Policy Date, Date of Issue and Attained Age
- Section 1.6 Misstatement
- Section 1.7 Payments by the Company
- Section 1.8 Insurability Requirements
- Section 1.9 Conformity with Interstate Insurance Product Regulation Commission Standards

**SECTION 2. OWNERSHIP**
- Section 2.1 The Owner
- Section 2.2 Transfer of Ownership
- Section 2.3 Naming and Changing a Successor Owner
- Section 2.4 Collateral Assignment

**SECTION 3. ADJUSTABLE TERM PROTECTION**
- Section 3.1 Adjustable Term Protection
- Section 3.2 Unscheduled Increase of Adjustable Term Protection
- Section 3.3 Reduction of Adjustable Term Protection

**SECTION 4. PREMIUMS AND REINSTATEMENT**
- Section 4.1 Premium Payment
- Section 4.2 Amount of Premium; Adjustments
- Section 4.3 Unscheduled Additional Premium Option
- Section 4.4 Reinstatement

**SECTION 5. DIVIDENDS**
- Section 5.1 Annual Dividends
- Section 5.2 Use of Dividends
- Section 5.3 Dividend at Death

**SECTION 6. PAID-UP ADDITIONS**
- Section 6.1 Purchase of Additions; Charges
- Section 6.2 Additions to Reduce Term Insurance
- Section 6.3 Additions to Increase Coverage
- Section 6.4 Allocation of Additional Premiums and Dividends
- Section 6.5 Additions after Age 100

**SECTION 7. CASH VALUE, EXTENDED TERM INSURANCE AND PAID-UP INSURANCE**
- Section 7.1 Cash Value
- Section 7.2 Extended Term Insurance
- Section 7.3 Paid-up Insurance
- Section 7.4 Cash Surrender
- Section 7.5 Table of Guaranteed Values; Basis of Values

ICC15.TT.ACL.(0715)

**SECTION 8. LOANS**

- Section 8.1 Policy and Premium Loans
- Section 8.2 Loan Value
- Section 8.3 Policy Debt
- Section 8.4 Loan Interest
- Section 8.5 Specified Rate Loan Interest Option
- Section 8.6 Variable Rate Loan Interest Option
- Section 8.7 Repayment of Loans

**SECTION 9. CHANGE OF POLICY**

- Section 9.1 Reduction of Policy Amount
- Section 9.2 Change of Plan

**SECTION 10. BENEFICIARIES**

- Section 10.1 Definition of Beneficiaries
- Section 10.2 Naming and Changing of Beneficiaries of the Life Insurance Benefit
- Section 10.3 Succession in Interest of Beneficiaries of the Life Insurance Benefit
- Section 10.4 Trustee as Beneficiary
- Section 10.5 General

**SECTION 11. PAYMENT OF POLICY BENEFITS**

- Section 11.1 Payment of Proceeds
- Section 11.2 Income Plan Elections
- Section 11.3 Income Plan Offerings
- Section 11.4 Naming and Changing of Beneficiaries under Income Plans
- Section 11.5 Succession in Interest of Beneficiaries under Income Plans
- Section 11.6 Income Plan Rates

**ADDITIONAL BENEFITS (if any)**

**APPLICATION**

ICC15.TT.ACL.(0715)

REDACTED

## POLICY SCHEDULE PAGES
Date of Issue - November 20, 2015

This policy was issued in the State of Maryland.
The Maryland Insurance Administration phone number is: (410) 468-2090.

| Plan and Additional Benefits | Initial Amount | Annual Premiums | Payable For |
|---|---|---|---|
| Whole Life With Adjustable Term Protection | | | |
| Base Amount + | $450,000 | $17,641.50 | 69 Years |
| Adjustable Term Protection | $50,000 * | $1,668.50 | 69 Years |
|    Scheduled Additional Premium | | $281.00 | 69 Years |
| Initial Totals | $500,000 | $19,591.00 | |

+    After November 20, 2064 the Base Amount will increase daily at an annual rate of 4%.

\*    To maintain the amount of Adjustable Term Protection, an increased premium may be required under Section 4.2.

An annual premium is payable on January 10, 2016 and every January 10 after that.

The first premium is $19,686.20 which consists of an annual premium of $19,591.00 and $95.20 which provides coverage from the Date of Issue to the Policy Date.

To determine the premium when paid more often than annually, see page 7.

The minimum annual premium is $19,310.00 and may increase. See Section 4.2.

The Owner may elect the Specified Rate or the Variable Rate loan interest option. See Sections 8.4 through 8.6 of the Policy. The Specified Rate loan interest option was elected on the Application.

This Policy is issued in a Classified (Non-Tobacco) premium classification.

In addition to the charge described in Section 6.1, there will be a charge for additional risk assessed against any additional premium or dividend used to purchase Paid-up Additions.

This policy is participating. Dividends are not guaranteed.

| | | | |
|---|---|---|---|
| **Direct Beneficiary** | J     W    , nephew of the Insured<br>J     R   nephew of the Insured | | |
| **Owner** | Marcel Theo Hall, the Insured | | |
| **Insured** | Marcel Theo Hall | **Issue Age and Sex** | 52 Male |
| **Policy Date** | January 10, 2016 | **Policy Number** | 21 455 316 |
| **Plan** | Whole Life With Adjustable Term Protection | **Initial Total Insurance Amount** | $500,000 |

ICC15.TT.ACL.(0715)                                3

1185

Policy Number: 21 455 316

## TABLE OF GUARANTEED VALUES
for $450,000 Initial Base Amount

| End of Policy Year | January 10, | Cash Value ($) | Paid-up Insurance ($) | Extended Term Insurance To * |
|---|---|---|---|---|
| 1 | 2017 | 0 | 0 | --- |
| 2 | 2018 | 8,901 | 22,867 | October 8, 2021 |
| 3 | 2019 | 17,973 | 44,731 | May 27, 2025 |
| 4 | 2020 | 27,175 | 65,555 | April 15, 2028 |
| 5 | 2021 | 36,526 | 85,444 | September 1, 2030 |
| 6 | 2022 | 46,017 | 104,434 | October 7, 2032 |
| 7 | 2023 | 55,714 | 122,702 | August 31, 2034 |
| 8 | 2024 | 65,601 | 140,247 | May 18, 2036 |
| 9 | 2025 | 75,645 | 157,050 | November 28, 2037 |
| 10 | 2026 | 85,806 | 173,093 | April 23, 2039 |
| 11 | 2027 | 96,025 | 188,333 | August 8, 2040 |
| 12 | 2028 | 106,272 | 202,785 | October 21, 2041 |
| 13 | 2029 | 116,559 | 216,527 | December 2, 2042 |
| 14 | 2030 | 126,891 | 229,621 | December 17, 2043 |
| 15 | 2031 | 137,290 | 242,130 | December 8, 2044 |
| 16 | 2032 | 147,793 | 254,137 | November 8, 2045 |
| 17 | 2033 | 158,400 | 265,664 | September 24, 2046 |
| 18 | 2034 | 169,132 | 276,767 | July 29, 2047 |
| 19 | 2035 | 179,928 | 287,401 | May 20, 2048 |
| 20 | 2036 | 190,777 | 297,592 | March 2, 2049 |
| Age 100** | 2064 | 450,000 | | Policy Full-Paid |
| Age 110 | 2074 | 666,111 | | |
| Age 120 | 2084 | 986,006 | | |

* Based on Extended Term Insurance described in Section 7.2 and Base Amount.

Values are increased by Paid-up Additions and dividend accumulations and decreased by Policy Debt. Values shown at end of the Policy year do not reflect any premium due on that Policy anniversary.

**After the Policy anniversary nearest the Insured's 100th birthday, the Cash Value will increase daily at an annual rate of 4%.

1186

Policy Number: 21 455 316

**TABLE OF ANNUAL PREMIUMS PER $1,000 OF TERM INSURANCE**
Used to calculate increased minimum premiums.
See Section 4.2.

| For Policy Year Beginning January 10, | Premium ($) | For Policy Year Beginning January 10, | Premium ($) |
|---|---|---|---|
| 2016 | 33.37 | 2041 | 132.84 |
| 2017 | 35.03 | 2042 | 146.18 |
| 2018 | 36.88 | 2043 | 160.56 |
| 2019 | 38.86 | 2044 | 176.32 |
| 2020 | 40.91 | 2045 | 197.09 |
| 2021 | 43.02 | 2046 | 222.75 |
| 2022 | 44.97 | 2047 | 252.89 |
| 2023 | 47.07 | 2048 | 288.19 |
| 2024 | 49.25 | 2049 | 329.17 |
| 2025 | 51.50 | 2050 | 367.20 |
| 2026 | 53.88 | 2051 | 405.23 |
| 2027 | 56.62 | 2052 | 443.25 |
| 2028 | 59.49 | 2053 | 481.28 |
| 2029 | 62.57 | 2054 | 519.31 |
| 2030 | 66.18 | 2055 | 557.34 |
| 2031 | 69.63 | 2056 | 595.36 |
| 2032 | 73.24 | 2057 | 633.39 |
| 2033 | 77.16 | 2058 | 671.42 |
| 2034 | 81.53 | 2059 | 709.45 |
| 2035 | 86.21 | 2060 | 747.48 |
| 2036 | 91.30 | 2061 | 785.50 |
| 2037 | 95.59 | 2062 | 823.53 |
| 2038 | 101.05 | 2063 | 861.56 |
| 2039 | 108.45 | | |
| 2040 | 120.22 | | |

ICC15.TT.ACL.(0715)

5

1187

Policy Number: 21 455 316

**TABLE OF CASH VALUES**
For $1.00 of Paid-up Additions

| End of Policy Year | January 10, | Cash Value | End of Policy Year | January 10, | Cash Value |
|---|---|---|---|---|---|
| 0 | 2016 | .36486 | 25 | 2041 | .71458 |
| 1 | 2017 | .37691 | 26 | 2042 | .72893 |
| 2 | 2018 | .38924 | 27 | 2043 | .74302 |
| 3 | 2019 | .40180 | 28 | 2044 | .75672 |
| 4 | 2020 | .41454 | 29 | 2045 | .77003 |
| 5 | 2021 | .42749 | 30 | 2046 | .78286 |
| 6 | 2022 | .44063 | 31 | 2047 | .79528 |
| 7 | 2023 | .45406 | 32 | 2048 | .80730 |
| 8 | 2024 | .46775 | 33 | 2049 | .81889 |
| 9 | 2025 | .48166 | 34 | 2050 | .82999 |
| 10 | 2026 | .49572 | 35 | 2051 | .84053 |
| 11 | 2027 | .50987 | 36 | 2052 | .85048 |
| 12 | 2028 | .52406 | 37 | 2053 | .85984 |
| 13 | 2029 | .53831 | 38 | 2054 | .86863 |
| 14 | 2030 | .55261 | 39 | 2055 | .87692 |
| 15 | 2031 | .56701 | 40 | 2056 | .88504 |
| 16 | 2032 | .58155 | 41 | 2057 | .89315 |
| 17 | 2033 | .59624 | 42 | 2058 | .90142 |
| 18 | 2034 | .61110 | 43 | 2059 | .91015 |
| 19 | 2035 | .62605 | 44 | 2060 | .91982 |
| 20 | 2036 | .64107 | 45 | 2061 | .93155 |
| 21 | 2037 | .65596 | 46 | 2062 | .94678 |
| 22 | 2038 | .67073 | 47 | 2063 | .96804 |
| 23 | 2039 | .68543 | 48 and later | 2064 | 1.00000 |
| 24 | 2040 | .70005 | | | |

Values during a Policy year will reflect any portion of the year's premium paid and the time elapsed in that year.

1188

## PREMIUM PAYMENT FREQUENCIES OTHER THAN ANNUAL

The total amount of premiums due per year when paid on frequencies other than annual is greater than the annual premium shown on page 3. Premiums paid on a basis other than annual are increased to reflect the time value of money and to cover the administrative costs of processing the additional premium payments. If premiums are paid more often than annually (see Section 4.1), the premium amount will be determined as follows:

| Premium Frequency | Multiply Annual Premium by: |
|---|---|
| Every 6 months | 0.5096 |
| Every 3 months | 0.2573 |
| Monthly | 0.0863 |

Depending upon the frequency premiums are paid and the premium payment method used, the Company may also charge an administrative fee, not to exceed $5 per payment, to cover the additional costs associated with the payment method.

ICC15.TT.ACL.(0715)                                                        7

Amendment Date: October 5, 2021                    Policy Number: 21 455 316

(This page is intentionally blank.)

1190

# SECTION 1. THE CONTRACT

## 1.1 LIFE INSURANCE BENEFIT

The Northwestern Mutual Life Insurance Company ("Company") will pay the Life Insurance Benefit on the death of the Insured while this Policy is in force.  Subject to the terms and conditions of the Policy, the payment of the Life Insurance Benefit will be:

- made after proof of the death of the Insured is received at the Home Office; and
- made to the Beneficiaries under Section 10.

The amount of the Life Insurance Benefit will be the sum of the following:

- the Base Amount shown on page 3; plus
- the amount of Adjustable Term Protection then in force under Section 3; plus
- the amount of any Paid-up Additions in force under Section 6.3; plus
- the amount of any dividend accumulations (Section 5.2); plus
- the amount of any premium refund (Section 4.1) and any dividend at death (Section 5.3);

minus the sum of the following:

- the amount of any Policy Debt (Section 8.3); plus
- the amount of any Adjustment to Life Insurance Benefit During Grace Period as described in Section 4.1; plus
- the amount of any unpaid additional premium used to purchase Paid-up Additions (Section 6.3).

These amounts will be determined as of the date of the Insured's death.  Even though the Owner does not have the right to take any Policy loans after the date of the Insured's death, any Policy loans that are taken after the date of the Insured's death will be deducted from the Life Insurance Benefit.

The amount of the Life Insurance Benefit when the Insured dies while the Policy is in force as Extended Term Insurance or Paid-up Insurance will be determined under Section 7.2 or 7.3.

## 1.2 ENTIRE CONTRACT; CHANGES

This Policy, together with the attached application and any application supplements (together referred to in this Policy as "Application"), and any attached amendments, endorsements, riders and additional benefits, are the entire contract.  Statements in the Application are representations and not warranties.  This Policy may be changed by the Company to maintain compliance with applicable state and federal law or to assure continued qualification of the Policy under federal tax laws.  The Owner may add any available benefits or riders to the Policy, or remove existing benefits or riders, subject to conditions and underwriting requirements set by the Company at the time of the request.  A change in the terms of, or a waiver of the Company's rights under, the Policy is valid only if it is approved in writing by an officer of the Company.  The Company may require that the Policy be sent to it for endorsement to show a change or waiver.  No agent has the authority to change the Policy or to waive the Company's rights thereunder.

## 1.3 INCONTESTABILITY

Except as stated below for a fraudulent misstatement, the Company will not contest this Policy after the Policy has been in force, during the lifetime of the Insured, for two years from the Date of Issue or for two years from the effective date of a reinstatement (Section 4.4).  Except as stated below for a fraudulent misstatement, a change (including an increase in the amount of insurance) to the terms of the Policy after the Date of Issue, which occurred at the request of the Owner and was subject to the Company's insurability requirements, will be incontestable after the change has been in force, during the lifetime of the Insured, for two years from the effective date of the change.  In issuing the insurance, the Company has relied on the application(s).  While the insurance is contestable, the Company, on the basis of a material misstatement in the application(s), may rescind the insurance or deny a claim.  After the applicable contestability period set forth above, the Company may rescind the insurance for a fraudulent misstatement to the extent allowed by the law of the state in which this Policy is delivered or issued for delivery.

1191

### 1.4 SUICIDE

If the Insured dies by suicide within one year from the Date of Issue, the amount payable by the Company will be limited to the premiums paid, less the amount of any Policy Debt.  If the Insured dies by suicide within one year from the date of a change to the terms of the Policy, which occurred upon the request of the Owner and was subject to the Company's insurability requirements, the amount payable with respect to such change will be limited to the premiums paid, less the amount of any Policy Debt.

### 1.5 POLICY DATE, DATE OF ISSUE AND ATTAINED AGE

Policy months, years, and anniversaries are computed from the Policy Date.  The contestable and suicide periods begin with the Date of Issue.  These dates are shown on page 3.  The Date of Issue for any insurance issued under Unscheduled Increase of Adjustable Term Protection (Section 3.2), Additional Premiums Scheduled After Issue (Section 4.2), or Unscheduled Additional Premium Option (Section 4.3) will be shown on an amendment to the Policy Schedule Pages.  Attained Age is Issue Age (shown on page 3) plus the number of complete Policy years that have elapsed since the Policy Date.

### 1.6 MISSTATEMENT

If the age or sex of the Insured has been misstated and has not been corrected through a Policy change, the amount payable will be the amount which the premiums paid would have purchased at the correct age and sex.

### 1.7 PAYMENTS BY THE COMPANY

All payments by the Company under this Policy are payable in United States dollars at the Home Office.

### 1.8 INSURABILITY REQUIREMENTS

To make some changes under this Policy, the Insured must meet the Company's insurability requirements.  These requirements are as follows:

- the Insured is alive;
- evidence of insurability must be given that is satisfactory to the Company; and
- under the Company's underwriting standards as then in effect, the Insured is in an underwriting classification that is the same as, or better than, the one for this Policy.

### 1.9 CONFORMITY WITH INTERSTATE INSURANCE PRODUCT REGULATION COMMISSION STANDARDS

This Policy was approved under the authority of the Interstate Insurance Product Regulation Commission and issued under the Commission standards.  Any provision of this Policy that is in conflict with the applicable Commission standards for this product type in effect as of the effective date of the Commission's approval of this Policy is hereby amended to conform to the applicable Commission standards in effect as of the effective date of the Commission's Policy approval.

# SECTION 2. OWNERSHIP

### 2.1 THE OWNER

The Owner is named on page 3.  All Policy rights may be exercised without the consent of any Beneficiaries by the Owner, the Owner's successor or the Owner's transferee.  If the Policy has more than one Owner, Policy rights must be exercised only by authorization of all Owners.  After the death of the Insured, Policy rights may be exercised only as provided in Sections 10 and 11.

### 2.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this Policy by providing the Company with written proof of the transfer and supplying the information in a form that is acceptable to the Company, including supplying any required information about the new Owner.  The Company will not be responsible to a subsequent Owner for any payment or other action taken by the Company until the above information is received at the Home Office in a form acceptable to the Company.  The transfer will then take effect as of the date the transfer form was signed unless otherwise specified by the Owner.  The Company may require that the Policy be sent to it for endorsement to show the transfer.

## 2.3 NAMING AND CHANGING A SUCCESSOR OWNER

If the Owner is not the Insured, the Owner may name or change a successor owner who will become the new owner upon the Owner's death. Naming or changing a successor owner will be made upon receipt at the Home Office of a written request that is acceptable to the Company, including any required information about the successor owner. The request will then take effect as of the date that it was signed unless otherwise specified by the Owner.

## 2.4 COLLATERAL ASSIGNMENT

The Owner may assign this Policy as collateral security. The Company is not responsible for the validity or effect of the collateral assignment. The Company will not be responsible to an assignee for any payment or other action taken by the Company before receipt of the assignment in writing at the Home Office. Unless otherwise specified by the Owner, the assignment will take effect on the date the assignment is signed by the Owner, subject to any payments made or actions taken prior to receipt of the assignment.

The interest of the Beneficiaries will be subject to any collateral assignment made either before or after the Beneficiaries are named.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with Section 2.2 or Section 2.3.

# SECTION 3. ADJUSTABLE TERM PROTECTION

## 3.1 ADJUSTABLE TERM PROTECTION

**Description.** Adjustable Term Protection consists of one year term insurance and Paid-up Additions. The amount of one year term insurance will be reduced by the amount of Paid-up Additions purchased under Section 6.2 by dividends or by the payment of additional premiums. One year term insurance will generally be in force for the entire Policy year; however, as provided in Section 3.3 the one year term insurance may be terminated, or the amount of one year term insurance may be reduced during a Policy year after the end of the guarantee period. All one year term insurance expires on the Policy anniversary nearest the Insured's 100th birthday.

**Amount.** The initial amount of Adjustable Term Protection is shown on page 3. The amount of Adjustable Term Protection may be increased as described in Section 3.2. Reductions in Adjustable Term Protection are described in Section 3.3.

**Guarantee Period.** The initial amount of Adjustable Term Protection is guaranteed for the period shown on page 3. Each time that the amount of Adjustable Term Protection is increased, the guarantee period is re-determined under the schedule shown below. At the end of the guarantee period, the Owner may extend the period by a written request received at the Home Office and the payment of a new minimum premium as determined by the Company.

| Insured's Attained Age When Guarantee Period Is Determined | Guarantee Period |
|---|---|
| 0 to 34 | 20 years |
| 35 to 36 | 19 years |
| 37 to 38 | 18 years |
| 39 to 40 | 17 years |
| 41 to 43 | 16 years |
| 44 to 46 | 15 years |
| 47 to 49 | 14 years |
| 50 to 51 | 13 years |
| 52 to 53 | 12 years |
| 54 to 56 | 11 years |
| 57 to 58 | 10 years |
| 59 to 61 | 9 years |
| 62 to 69 | To Age 70 |

If the Owner directs that dividends be used other than for the purchase of Paid-up Additions, the guarantee period will be terminated and may not be renewed or extended, except as provided in Reduction If Dividend Option Changed in Section 3.3.

1192

**Premium.**  When the amount of Adjustable Term Protection is increased, the minimum premium for the Policy will be re-determined.  The new minimum premium will be payable for the remainder of the premium paying period and will equal:

- the premium for the Base Amount; and
- the premium rate shown on page 5 based on the Insured's Attained Age multiplied by the amount of one year term insurance that is part of Adjustable Term Protection at the time of increase.

When an increase takes effect during a Policy year, the amount of the first premium due will be based on the time remaining in that Policy year.

## 3.2 UNSCHEDULED INCREASE OF ADJUSTABLE TERM PROTECTION

The Owner may request an unscheduled increase of Adjustable Term Protection.  An increase may not be made after the Policy anniversary that is nearest to the Insured's 79th birthday.  An increase will be made only if, at the time the increase is applied for:

- any increase in premium and any fee charged for underwriting and issue expenses are paid to the Company;
- the insurance in force, as increased, will be within the Company's issue limits; and
- the Insured meets the insurability requirements stated in Section 1.8.

An increase will take effect the later of:

- the date of the request for the increase; or
- the date of the medical examination (or the non-medical application).

## 3.3 REDUCTION OF ADJUSTABLE TERM PROTECTION

**Reduction Of Adjustable Term Protection By Company; Owner's Right To Continue Existing Protection.**  On any Policy anniversary after the guarantee period and before the end of the premium paying period, if any part of Adjustable Term Protection is one year term insurance, the Company may reduce the one year term insurance. The Company will determine annually, based on the factors then being used to determine dividends payable on the Policy, whether the Base Amount and Adjustable Term Protection will generate sufficient values to pay the cost of one year term insurance.  If the cost of one year term insurance is greater than these values, the one year term insurance will reduce so that its cost equals these values.  The reduction of one year term insurance will cause a like reduction in the amount of Adjustable Term Protection.  The Company will send written notice of the reduction.

Before the end of the premium paying period the Owner may prevent a reduction in Adjustable Term Protection by making a written request to start a new guarantee period and by paying an increased minimum premium.  The amount of the increased minimum premium will be determined under Section 4.2.  The increased premium for Adjustable Term Protection will be payable for the remainder of the premium paying period.  The Owner's request and the premium must be received at the Home Office within 31 days of the date the reduction would take effect.  The new guarantee period will be determined under the schedule shown in Section 3.1.

**Reduction If Dividend Option Changed.**  If the Owner directs that dividends be used other than to purchase Paid-up Additions, the guarantee period and any one year term insurance in force will terminate.  The amount of Adjustable Term Protection will then be the amount of Paid-up Additions in force under Section 6.2.  This restriction will not apply on a Policy anniversary when the dividend is more than the scheduled premium (on an annual basis) and the Owner directs that dividends be used to pay premiums.  The amount by which the dividend is more than the scheduled premium (on an annual basis) will be used to purchase Paid-up Additions under Section 6.2.

**Reduction If Additions Surrendered.**  If additions under Section 6.2 are surrendered, the Adjustable Term Protection will be reduced by the amount of additions that are surrendered.

# SECTION 4. PREMIUMS AND REINSTATEMENT

## 4.1 PREMIUM PAYMENT

**Payment.** All premiums after the first are payable at the Home Office or to a payment center designated by the Company. All payments must be made in United States dollars payable through a United States financial institution. A receipt signed by an officer of the Company will be furnished on request. Each premium must be paid on or before its due date. The date when each premium is due and the number of years for which premiums are payable are described on page 3.

No premiums may be paid while the Policy is in force as Extended Term Insurance or Paid-up Insurance under Sections 7.2 or 7.3, except as provided in Reinstatement (Section 4.4).

**Frequency.** Premiums may be paid every 3, 6 or 12 months. The Company may offer other payment programs that permit the payment of premiums on other frequencies or provide additional features such as electronic funds transfer.

On request, the Company will provide:

- the amount of the premium due on any available frequency for any Policy year;
- the annual total of premiums due (including the amount of the administrative fee, if any) if paid on frequencies other than annual; and
- the amount by which that total differs from the annual premium. The total amount of premiums due per year when paid on frequencies other than annual is greater than the annual premium (see page 7). The Company also will provide an annual percentage rate calculation upon request.

A change in premium frequency will take effect when the Company accepts a premium on a new frequency.

**Grace Period.** A grace period of 31 days will be allowed to pay a premium that is not paid on its due date. The Policy will be in full force during this period. If the premium is not paid within the grace period, the Policy will terminate as of the due date unless it continues as Extended Term Insurance or Paid-up Insurance under Sections 7.2 or 7.3.

**Adjustment To Life Insurance Benefit During Grace Period.** If the Insured dies during the grace period, the amount of the unpaid premium will be deducted from the Life Insurance Benefit.

**Premium Refund At Death.** If the premium paid for the Policy year in which the Insured dies exceeds:

- the premium paid on an annual basis; multiplied by
- the fraction of the Policy year that has elapsed at the time of death,

then the Company will refund this excess amount. The refund will not include:

- any premium amount used to purchase a Paid-up Addition to increase coverage under Section 6.3; and
- any Unscheduled Additional Premium paid under Section 4.3.

Any refund will be part of the Life Insurance Benefit described in Section 1.1.

## 4.2 AMOUNT OF PREMIUM; ADJUSTMENTS

**Scheduled And Minimum Premiums.** The premium due on this Policy is the scheduled premium. The scheduled premium is the sum of the minimum premium, any scheduled additional premium under Section 4.2, and any premium that is due for any additional benefit that is a part of this Policy. The annual premium amounts are shown on page 3.

The minimum premium may increase each time the amount of Adjustable Term Protection is increased or a new guaranteed period is determined. The new minimum premium will be payable for the remainder of the premium paying period and will equal:

- the premium for the Base Amount; and
- the premium rate shown on page 5 based on the Insured's Attained Age multiplied by the amount of one year term insurance that is part of Adjustable Term Protection at the time of increase.

1193

**Additional Premiums Scheduled At Issue.** If requested on the Application, this Policy may have been issued with premiums that are larger than the minimum premium. The amount of the additional premium is shown on page 3.

**Additional Premiums Scheduled After Issue.** The Owner may pay additional premiums by requesting that the premium payable on the Policy be increased. This request may be made at any time before the Policy anniversary that is nearest to the Insured's 85th birthday. Additional premiums may be scheduled only if, at the time the increases are applied for:

- the Insured satisfies the insurability requirements stated in Section 1.8; and

- the insurance in force after applying the scheduled additional premiums will be within the Company's issue limits; and

- the total amount of the scheduled additional premiums and other premiums paid to the Company under any policy for purchases of paid-up life insurance on the life of the Insured is within the Company's limits for such premiums; however, the Company may not set a limit below $1,000.

**Owner's Right To Decrease Scheduled Additional Premiums.** The Owner may decrease the amount of the additional premium through a Policy change. This may be done at any time by written request sent to the Home Office. Later increases in the amount of the additional premium may be made only as provided in the preceding paragraph.

**Effective Date.** A premium change will take effect on the first premium due date that follows the receipt at the Home Office of the Owner's written request for change.

**Additional Premiums Used To Purchase Paid-up Additions.** Each scheduled additional premium paid will be used, as of the due date of the premium, to purchase Paid-up Additions as described in Section 6.

## 4.3 UNSCHEDULED ADDITIONAL PREMIUM OPTION

Unscheduled additional premiums may be paid to the Company at any time before the Policy anniversary that is nearest to the Insured's 85th birthday. An unscheduled additional premium may be paid only if, at the time the premium is paid:

- the Insured meets the insurability requirements stated in Section 1.8; and

- the insurance in force after applying the unscheduled additional premium will be within the Company's issue limits; and

- the total amount of the unscheduled additional premiums and other premiums paid to the Company under any policy for purchases of paid-up life insurance on the life of the Insured is within the Company's limits for such premiums; however, the Company may not set a limit below $1,000.

Each unscheduled premium may not be less than $100. Each unscheduled premium will be used, as of the date the premium is paid, to purchase Paid-up Additions as described in Section 6.

### 4.4 REINSTATEMENT

The Policy may be reinstated within three years after the due date of the overdue premium. All unpaid minimum premiums and premiums for any additional benefits that are a part of this Policy (and interest as required below) must be received by the Company while the Insured is alive. The Policy may not be reinstated if the Policy was surrendered for its Cash Surrender Value. Any Policy Debt on the due date of the overdue premium, with interest from that date, must be repaid or reinstated.

In addition, for the Policy to be reinstated more than 31 days after the end of the grace period:

- the Insured must satisfy the insurability requirements stated in Section 1.8; and

- all unpaid minimum premiums and premiums for any additional benefits that are a part of this Policy must be paid with interest from the due date of each premium. Interest is at an annual effective rate of 6%.

# SECTION 5. DIVIDENDS

## 5.1 ANNUAL DIVIDENDS

This Policy is eligible to share in the divisible surplus, if any, of the Company.   This divisible surplus is determined each year.   This Policy's share, if any, will be credited as a dividend on the Policy anniversary.   This dividend will be affected by any Policy Debt during the Policy year.   Decisions concerning the amount and appropriate allocation of divisible surplus are within the sole discretion of the Company's Board of Trustees. There is no guaranteed method or formula for the determination or allocation of divisible surplus. The Company's approach is subject to change. There is no guarantee of a divisible surplus.   Even if there is a divisible surplus, the payment of a dividend on this Policy is not guaranteed.   No dividend will be paid on Extended Term Insurance (Section 7.2).

## 5.2 USE OF DIVIDENDS

Annual dividends, if any, may be paid in cash or used for one of the following:

- **Paid-up Additions.**  Dividends will purchase Paid-up Additions as described in Section 6.
- **Dividend Accumulations.**   Dividends will accumulate at interest.   Interest is credited at an annual effective rate of not less than 0.5%.   The Company may set a higher rate. Dividend accumulations increase the Policy's Cash Value.   They are payable as part of the Life Insurance Benefit.   Accumulations may be withdrawn unless they are used for a loan, for Extended Term Insurance, or for Paid-up Insurance.
- **Premium Payment.**   Dividends will be applied to the payment of any premium then due.   If the balance of a premium is not paid, or if this Policy is in force as Paid-up Insurance, the dividend will purchase Paid-up Additions.

Other uses of dividends may be made available by the Company.

If no direction is given for the use of dividends, they will purchase Paid-up Additions.

## 5.3 DIVIDEND AT DEATH

A dividend for the period from the beginning of the Policy year to the date of the Insured's death will be payable as part of the Life Insurance Benefit.

# SECTION 6. PAID-UP ADDITIONS

## 6.1 PURCHASE OF ADDITIONS; CHARGES

Paid-up Additions are purchased at the beginning of the Policy year by additional premiums and by dividends.   The amount of Paid-up Additions purchased by additional premiums is based on the annual additional premium minus a charge for expenses, even if the additional premium is paid other than annually.   The charge will not be more than 9% for scheduled additional premiums and unscheduled additional premiums.

Paid-up Additions can be used to reduce term insurance (Section 6.2) or to increase coverage (Section 6.3).  Paid-up Additions increase the Policy's Cash Value and are eligible to share in the divisible surplus (Section 5.1).  They may be surrendered unless they are used for a loan, for Extended Term Insurance, or for Paid-up Insurance.

1194

## 6.2 ADDITIONS TO REDUCE TERM INSURANCE

This type of Paid-up Addition will be part of the Adjustable Term Protection. Each addition will reduce the amount of one year term insurance that is in force as part of Adjustable Term Protection, and the amount of Adjustable Term Protection will remain unchanged.

## 6.3 ADDITIONS TO INCREASE COVERAGE

This type of Paid-up Addition will be used to provide Paid-up Insurance that is not included in the Adjustable Term Protection. Each addition will immediately increase Life Insurance Benefit payable under Section 1.1.

## 6.4 ALLOCATION OF ADDITIONAL PREMIUMS AND DIVIDENDS

When there is no one year term insurance in force as part of the Adjustable Term Protection, the dividends and the additional premiums will be applied under Additions to Increase Coverage (Section 6.3). When there is one year term insurance in force, the additional premiums will be allocated, as shown on page 3, between Additions to Reduce Term Insurance (Section 6.2) and Additions to Increase Coverage; and the dividends that are used to purchase Paid-up Additions will be applied under Additions to Reduce Term Insurance. The Owner may change this allocation by written request that is sent to the Home Office if the Insured satisfies the insurability requirements stated in Section 1.8.

## 6.5 ADDITIONS AFTER AGE 100

After the Policy anniversary nearest the Insured's 100th birthday, any Paid-up Additions will increase daily at an annual rate of 4%.

# SECTION 7. CASH VALUE, EXTENDED TERM INSURANCE AND PAID-UP INSURANCE

## 7.1 CASH VALUE

The Cash Value for this Policy, when all premiums due have been paid, will be the sum of:
- the Cash Value from the Table of Guaranteed Values;
- the Cash Value of any Paid-up Additions; and
- the amount of any dividend accumulations.

If premiums are not paid on this Policy on an annual basis, the Cash Value will reflect a reduction for any premiums due later in the Policy year.

The Cash Value within three months after the due date of any unpaid premium will be the Cash Value on that due date reduced by any later surrender of Paid-up Additions and by any later withdrawal of dividend accumulations. After that, the Cash Value will be the Cash Value of the insurance then in force, including the Cash Value of any Paid-up Additions and any dividend accumulations.

The Cash Value of any Extended Term Insurance, Paid-up Insurance or Paid-up Additions will be the net single premium for that insurance at the Attained Age of the Insured.

## 7.2 EXTENDED TERM INSURANCE

If any premium is unpaid at the end of the grace period, this Policy will be in force as Extended Term Insurance. The amount of the Life Insurance Benefit under this Extended Term Insurance will be:
- the Base Amount shown on page 3; plus
- the amount of Adjustable Term Protection then in force under Section 3; plus
- the amount of any Paid-up Additions in force under Section 6.3; plus
- the amount of any dividend accumulations (Section 5.2); minus
- the amount of any Policy Debt (Section 8.3).

These amounts will be determined as of the due date of the unpaid premium. The Extended Term Insurance will start as of the due date of the unpaid premium. The period of the Extended Term Insurance will be determined by using the Cash Surrender Value as a net single premium at the Attained Age of the Insured. If the Extended Term Insurance would extend to or beyond age 121, Paid-up Insurance will be provided instead. Extended Term Insurance does not share in divisible surplus (Section 5.1).

If the Extended Term Insurance is surrendered within 31 days after a Policy anniversary, the Cash Value will not be less than the Cash Value on that anniversary.

## 7.3 PAID-UP INSURANCE

Paid-up Insurance may be selected in place of Extended Term Insurance. A written request must be received at the Home Office no later than three months after the due date of an unpaid premium. The amount of insurance will be determined by using the Cash Value as a net single premium at the Attained Age of the Insured. Any Policy Debt will continue. Paid-up Insurance will share in divisible surplus (Section 5.1).

The amount of the Life Insurance Benefit when this Policy is in force as Paid-up Insurance will be:

- the amount of Paid-up Insurance determined above; plus
- the amount of any in force Paid-up Additions purchased by dividends after the Policy has become Paid-up Insurance (Section 6); plus
- the amount of any existing dividend accumulations (Section 5.2); plus
- the amount of any dividend at death (Section 5.3); minus
- the amount of any Policy Debt (Section 8.3).

These amounts will be determined as of the date of death. Even though the Owner does not have the right to take any Policy loans after the date of the Insured's death, any Policy loans that are taken after the date of the Insured's death will be deducted from the Life Insurance Benefit.

After the Policy anniversary nearest the Insured's 100th birthday, the amount of Paid-up Insurance will increase daily at an annual rate of 4%.

If Paid-up Insurance is surrendered within 31 days after a Policy anniversary, the Cash Value will not be less than the Cash Value on that anniversary reduced by any later surrender of Paid-up Additions and by any later withdrawal of dividend accumulations.

## 7.4 CASH SURRENDER

The Owner may surrender this Policy for its Cash Surrender Value. The Cash Surrender Value is the Cash Value less any Policy Debt. A written surrender of all claims, acceptable to the Company, will be required. The date of surrender will be the date of receipt at the Home Office of the written surrender. The Policy will terminate and the Cash Surrender Value will be determined as of the date of surrender. The Company may require that the Policy be sent to it.

Surrender proceeds will be the Cash Surrender Value as of the date of surrender. These proceeds will be paid in cash or under an income plan that is elected by the Owner.

Partial surrenders are permitted subject to conditions set by the Company at the time of the request.

The Company may defer paying the surrender proceeds for up to six months from the date of surrender. If payment is deferred for 30 days or more, interest will be paid on the surrender proceeds from the date of surrender to the date of payment. Interest will be at an annual effective rate determined by the Company.

## 7.5 TABLE OF GUARANTEED VALUES; BASIS OF VALUES

Cash Values and Paid-up Insurance for the Base Amount are shown on page 4 for the end of the Policy years indicated. These values assume that all premiums due have been paid for the number of years stated. They do not reflect Paid-up Additions, dividend accumulations or Policy Debt. Cash Values for Paid-up Additions are shown on page 6. Values during a Policy year will reflect any portion of the year's premium paid and the time elapsed in that year.

Values for Policy years not shown are calculated on the same basis as those shown on page 4. A list of these values will be furnished on request.

The Cash Value for each Policy year not shown on page 4 and the net single premiums are based on the 2001 Commissioners Standard Ordinary Mortality Table Ultimate Rates for the sex and smoking status of the Insured. Interest is based on an annual effective rate of 4%. Calculations assume the continuous payment of premiums and the immediate payment of claims.

A detailed statement of the method of calculation of all values has been filed with the Interstate Insurance Product Regulation Commission. The Company will furnish this statement at the request of the Owner. All values are at least as great as those required by or pursuant to the NAIC Standard Nonforfeiture Law for Life Insurance.

1195

# SECTION 8. LOANS

## 8.1 POLICY AND PREMIUM LOANS

The Owner may obtain a loan from the Company in an amount that is not more than the Loan Value (Section 8.2). When the loan is made, the Policy is assigned to the Company as sole security for the loan.

**Policy Loan.** The loan may be obtained on written request. No loan will be made if the Policy is in force as Extended Term Insurance. The Company may defer making the loan for up to six months unless the loan is to be used to pay premiums due the Company.

**Premium Loan.** If the premium loan provision is in effect on this Policy, a loan will be made to pay an overdue scheduled premium. If the Loan Value is not large enough to pay the overdue scheduled premium, a scheduled premium will be paid for any other frequency permitted by this Policy for which the Loan Value is large enough. If the Loan Value is not large enough to pay the overdue scheduled premium on any frequency permitted by this Policy, the Policy will continue in force or terminate as provided in Section 4.1. The Owner may elect or revoke the premium loan provision by written request received at the Home Office.

## 8.2 LOAN VALUE

The Loan Value is the Cash Value on the next Policy anniversary after the date of the loan minus the sum of:

- any Policy Debt;
- any scheduled premium then due or billed;
- any remaining unpaid modal premiums for the current Policy year; and
- loan interest on the new loan and any outstanding loans to the next Policy anniversary.

## 8.3 POLICY DEBT

Policy Debt consists of all outstanding loans and accrued loan interest. It may be paid to the Company at any time. Policy Debt affects any dividends that may be paid under Section 5.1. Any Policy Debt will be deducted from the Policy proceeds.

If the Policy Debt equals or exceeds the Cash Value, this Policy will terminate. Termination occurs 31 days after a notice has been mailed to the Owner and to any assignee on record, under Section 2.4, at the Home Office.

## 8.4 LOAN INTEREST

Loan interest accrues and is payable on a daily basis from the date of the loan on Policy loans and from the premium due date on premium loans. Unpaid loan interest is included in Policy Debt.

The Specified Rate loan interest option or the Variable Rate loan interest option is elected on the Application.

**Change To Variable Rate Loan Interest Option.** The Owner may request a change to the Variable Rate loan interest option at any time, with the change to take effect on the January 1st following receipt of a written request at the Company's Home Office.

**Change To Specified Rate Loan Interest Option.** The Owner may request a change to the Specified Rate loan interest option if the loan interest rate set by the Company under Section 8.6 for the year beginning on the next January 1st is less than 8%. The written request to change must be received at the Home Office between November 15th and the last business day of the calendar year; the change will take effect on the January 1st following receipt of the request at the Home Office.

## 8.5 SPECIFIED RATE LOAN INTEREST OPTION

Loan interest is payable at an annual effective rate of 8%.

## 8.6 VARIABLE RATE LOAN INTEREST OPTION

Loan interest is payable at an annual effective rate that is set by the Company annually and applied to new or outstanding Policy Debt during the year beginning each January 1st. The highest loan interest rate that may be set by the Company is the greater of 5% or a rate based on the Moody's Corporate Bond Yield Averages-Monthly Average Corporates for the immediately preceding October. This Average is published by Moody's Investor's Service, Inc. If it is no longer published, the highest loan interest rate will be based on some other similar average established by the insurance supervisory official of the state in which this Policy is delivered.

The loan interest rate set by the Company will not exceed the maximum rate determined in accordance with the NAIC Model Policy Loan Interest Rate Bill. The loan interest rate may be increased only if the increase in the annual effective rate is at least 1/2%. The loan interest rate will be decreased if the decrease in the annual effective rate is at least 1/2%.

The Company will give notice:
- of the initial loan interest rate in effect at the time a Policy or premium loan is made.
- of an increase in loan interest rate on outstanding Policy Debt no later than 30 days before the January 1st on which the increase takes effect.

This Policy will not terminate during a Policy year as the sole result of an increase in the loan interest rate during that Policy year.

## 8.7 REPAYMENT OF LOANS

A loan may be paid in full or in part at any time while this Policy is in force and the Insured is alive. When a loan repayment is made, the amount of Policy Debt is reduced by the amount of the payment.

# SECTION 9. CHANGE OF POLICY

## 9.1 REDUCTION OF POLICY AMOUNT

The Owner may reduce the amount of this Policy or divide this Policy into two or more policies by:
- paying the required costs; and
- meeting any other conditions set by the Company including the minimum policy amount rules.

## 9.2 CHANGE OF PLAN

The Owner may change this Policy to any permanent life insurance plan agreed to by the Owner and the Company by:
- paying the required costs; and
- meeting any other conditions set by the Company.

1196

# SECTION 10. BENEFICIARIES

## 10.1 DEFINITION OF BENEFICIARIES

The term "Beneficiaries" means direct beneficiaries, contingent beneficiaries and further payees of the Life Insurance Benefit.

## 10.2 NAMING AND CHANGING OF BENEFICIARIES OF THE LIFE INSURANCE BENEFIT

**By Owner.** The Owner may name and change the Beneficiaries of the Life Insurance Benefit:

- while the Insured is living; or
- during the first 60 days after the date of death of the Insured, if the Insured at the time of his or her death was not the Owner. A change made during the 60 days cannot be revoked.

**Effective Date.** A naming or a change of Beneficiaries will be made on receipt at the Home Office of a written request in good order that is acceptable to the Company. The request will then take effect as of the date that it was signed unless otherwise specified by the Owner. The Company is not responsible for any payment or other action that is taken by it before the receipt of the request. The Company may require that the Policy be sent to it to be endorsed.

## 10.3 SUCCESSION IN INTEREST OF BENEFICIARIES OF THE LIFE INSURANCE BENEFIT

**At Least One Beneficiary Survives And Receives Payment.** If at least one of the Beneficiaries survives the Insured and receives payment of his or her share of the Life Insurance Benefit, then the Life Insurance Benefit will be paid as follows:

**Direct Beneficiaries.** The Life Insurance Benefit of this Policy will be paid in equal shares, unless otherwise designated by the Owner, to the direct beneficiaries who survive and receive payment. If a direct beneficiary dies before receiving all or part of the direct beneficiary's full share, then the unpaid portion will be paid in equal shares to the other direct beneficiaries who survive and receive payment.

**Contingent Beneficiaries.** If the direct beneficiaries do not survive and receive payment of the entire Life Insurance Benefit, then the unpaid portion will be paid in equal shares, unless otherwise designated by the Owner, to the contingent beneficiaries who survive and re-

ceive payment. If a contingent beneficiary dies before receiving all or part of the contingent beneficiary's full share, then the unpaid portion will be paid in equal shares to the other contingent beneficiaries who survive and receive payment.

**Further Payees.** If the direct and contingent beneficiaries do not survive and receive payment of the entire Life Insurance Benefit, then the unpaid portion will be paid in one sum:

- in equal shares, unless otherwise designated by the Owner, to the further payees who survive and receive payment; or
- if no further payees survive and receive payment of the Life Insurance Benefit, then to the estate of the last to die of all of the Beneficiaries.

**No Beneficiaries Survive And Receive Payment.** If no Beneficiaries survive the Insured and receive payment of any portion of the Life Insurance Benefit, then the Life Insurance Benefit will be paid to the Owner or to the Owner's estate.

## 10.4 TRUSTEE AS BENEFICIARY

If a trustee is named as a Beneficiary and no qualified trustee makes claim to the Life Insurance Benefit within one year after payment becomes due to the trustee, or if acceptable evidence is furnished to the Company within that year showing that no trustee can qualify to receive payment, payment will be made as though the trustee had not been named.

The Company will be fully discharged of liability for any action taken by the trustee and for all amounts paid to, or at the direction of, the trustee and will have no obligation as to the use of the amounts. In all dealings with the trustee, the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

## 10.5 GENERAL

**Transfer Of Ownership.** A transfer of ownership, in and of itself, will not change the interest of the Beneficiaries.

**Claims Of Creditors.** So far as allowed by law, no amount payable under this Policy will be subject to the claims of creditors of the Beneficiaries.

# SECTION 11. PAYMENT OF POLICY BENEFITS

## 11.1 PAYMENT OF PROCEEDS

The Life Insurance Benefit will be paid, as designated, in cash or into an income plan as follows:

- in a manner designated by the Owner and accepted by the Company; or
- if the Owner has not designated an acceptable manner of payment, then in cash or in a manner designated by a direct or contingent beneficiary and accepted by the Company.

The Company will pay interest on the Life Insurance Benefit from the date of death of the Insured until the proceeds are paid in cash or into an income plan. Interest will be paid at an annual effective rate determined by the Company, but the rate shall not be less than the rate applicable to this Policy for funds left on deposit, as of the date of death of the Insured. Additional interest will be paid at a rate of 10% annually beginning with the date that is 31 calendar days from the latest of items (a), (b) and (c) to the date the claim is paid, where:

(a) is the date that due proof of death is received by the Company;

(b) is the date the Company receives sufficient information to determine its liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds; and

(c) is the date that legal impediments to payment of proceeds that depend on the action of parties other than the Company are resolved and sufficient evidence of the same is provided to the Company. Legal impediments to payment include, but are not limited to:

- the establishment of guardianships and conservatorships;
- the appointment and qualification of trustees, executors and administrators; and
- the submission of information required to satisfy a state and federal reporting requirements.

## 11.2 INCOME PLAN ELECTIONS

**For Income Plans Elected By Owner For Life Insurance Benefit.** The Owner may elect an income plan for each Beneficiary's share of the Life Insurance Benefit:

- while the Insured is living; or
- during the first 60 days after the death of the Insured, if the Insured at the time of his or her death was not the Owner. An election made during the 60 days cannot be revoked.

**For Income Plans Elected By Owner For Surrender Proceeds.** The Owner may elect an income plan for surrender proceeds. The Owner will be the direct beneficiary.

**For Income Plans Elected By Beneficiary.** Subject to the Owner's rights during the first 60 days after the death of the Insured, if no income plan has been selected by the Owner upon the death of the Insured, the Beneficiary may elect an income plan for the Life Insurance Benefit.

**Effective Date.** An income plan that is elected by the Owner will take effect on the date of the death of the Insured if the election is received at the Home Office while the Insured is living. In all other situations, an income plan that is elected will take effect on the date the election is received at the Home Office or on a later date, if requested.

**Payment Date.** The first payment is due as of the effective date of the plan. If applicable, proof of the date of birth and other required information, acceptable to the Company, must be furnished for each individual on whose life the payments are based.

**Minimum Payment.** The Company may limit the election of an income plan to one that results in payments of at least $50. If payments under an income plan are or become less than $50, the Company may change the frequency of payments. If the payments are being made once every 12 months and are less than $50, the Company may pay the present value or the balance of the income plan.

1197

## 11.3 INCOME PLAN OFFERINGS

The Company will make available the following Life Income Plans:

- **Single Life Income.** The Company will make monthly payments for the selected certain period, if any, and thereafter during the remaining lifetime of the individual upon whose life income payments are based. The choices for the certain period are:

  (a) zero years;

  (b) 10 years; or

  (c) 20 years.

- **Joint And Survivor Life Income.** The Company will make monthly payments for a 10-year certain period, and after that as long as one or both individuals, upon whose lives income payments are based, is alive.

**Limitations.** A Beneficiary who is a natural person may be paid under a Life Income Plan only if the payments depend on his or her life. A Beneficiary who is a non-natural person may be paid under a Life Income Plan only if the payments depend on the life of the Insured's spouse or the Insured's dependent.

**Payment Frequency.** On request, payments will be made once every 3, 6 or 12 months instead of each month.

**Other Selections.** The Company may offer additional income plans.

## 11.4 NAMING AND CHANGING OF BENEFICIARIES UNDER INCOME PLANS

**For Income Plans Elected By Owner.** The Owner of the Policy may name and change the contingent beneficiaries and further payees of an income plan elected for surrender amounts. The Owner of the Policy may name the direct beneficiaries, contingent beneficiaries, and further payees of an income plan elected for the Life Insurance Benefit. If the Owner of the Policy elected an income plan, a Beneficiary may name and change any contingent beneficiaries and further payees of the Beneficiary's share of the benefits only if:

- the Beneficiary was the Owner of the Policy; or
- no contingent beneficiary or further payee of that share is living.

**For Income Plans Elected By Beneficiary.** If a Beneficiary elected the income plan, the Beneficiary may name and change any contingent beneficiaries and further payees of the Beneficiary's share of the benefits.

## 11.5  SUCCESSION IN INTEREST OF BENEFICIARIES UNDER INCOME PLANS

**Direct Beneficiary.**  Amounts payable under an income plan will be payable to the direct beneficiary.

**Contingent Beneficiaries.**  At the death of the direct beneficiary, amounts payable under an income plan will be payable in equal shares to the contingent beneficiaries who survive and receive payment.  Unless otherwise requested by the Owner, the contingent beneficiaries can elect to:

- continue to receive the remaining period certain payments at the selected frequency;
- receive the present value of the remaining period certain payments in one sum; or
- apply the present value of the remaining period certain payments to a new Life Income Plan.

**Further Payees.**  At the death of all direct and contingent beneficiaries, the present value of any unpaid payments under an income plan will be paid in one sum:

- in equal shares to the further payees who survive and receive payment; or
- if no further payees survive and receive payment, to the estate of the last to die of all the direct beneficiaries, contingent beneficiaries and further payees.

Present value will be based on the rate of interest used to determine the amount of the payments.

## 11.6  INCOME PLAN RATES

**Minimum Payment Rates.**  Life Income Plan payments will be based on rates declared by the Company.  These rates will provide at least as much income as would the Company's rates, on the date that the income plan takes effect, for a single premium immediate annuity contract.  Payments under these rates will not be less than the Minimum Payment Rate Tables.

The Life Income Plan payment rates in those tables depend on the sex and the adjusted age of each person on whose life the payments are based.  The adjusted age is:

- the age on the birthday that is nearest to the date on which the income plan takes effect; plus
- the age adjustment shown below for the number of Policy years that have elapsed from the Policy Date to the date that the income plan takes effect.  A part of a Policy year is counted as a full year.

| POLICY YEARS ELAPSED | AGE ADJUST-MENT- | POLICY YEARS ELAPSED | AGE ADJUST-MENT |
|---|---|---|---|
| 1 to 12 | 0 | 37 to 48 | -3 |
| 13 to 24 | -1 | 49 to 60 | -4 |
| 25 to 36 | -2 | 61 or more | -5 |

1198

# MINIMUM PAYMENT RATE TABLES
## Minimum Monthly Income Payments per $1,000 of Proceeds

**SINGLE LIFE INCOME PLAN**

| | SINGLE LIFE MONTHLY PAYMENTS | | | | | | |
|---|---|---|---|---|---|---|---|
| MALE ADJUSTED AGE* | CHOSEN PERIOD (YEARS) | | | FEMALE ADJUSTED AGE* | CHOSEN PERIOD (YEARS) | | |
| | ZERO | 10 | 20 | | ZERO | 10 | 20 |
| 55 | $ 2.78 | $ 2.76 | $ 2.70 | 55 | $ 2.67 | $ 2.66 | $ 2.61 |
| 56 | 2.85 | 2.83 | 2.76 | 56 | 2.73 | 2.72 | 2.67 |
| 57 | 2.92 | 2.90 | 2.82 | 57 | 2.80 | 2.79 | 2.73 |
| 58 | 3.00 | 2.98 | 2.89 | 58 | 2.88 | 2.86 | 2.80 |
| 59 | 3.09 | 3.06 | 2.96 | 59 | 2.96 | 2.94 | 2.86 |
| 60 | 3.18 | 3.15 | 3.03 | 60 | 3.04 | 3.02 | 2.93 |
| 61 | 3.28 | 3.24 | 3.10 | 61 | 3.13 | 3.10 | 3.00 |
| 62 | 3.38 | 3.33 | 3.18 | 62 | 3.22 | 3.19 | 3.07 |
| 63 | 3.48 | 3.43 | 3.26 | 63 | 3.32 | 3.28 | 3.15 |
| 64 | 3.60 | 3.54 | 3.34 | 64 | 3.42 | 3.38 | 3.23 |
| 65 | 3.72 | 3.65 | 3.42 | 65 | 3.53 | 3.49 | 3.31 |
| 66 | 3.85 | 3.77 | 3.50 | 66 | 3.65 | 3.60 | 3.39 |
| 67 | 3.99 | 3.90 | 3.58 | 67 | 3.78 | 3.71 | 3.47 |
| 68 | 4.14 | 4.04 | 3.66 | 68 | 3.91 | 3.84 | 3.55 |
| 69 | 4.31 | 4.18 | 3.74 | 69 | 4.06 | 3.97 | 3.63 |
| 70 | 4.48 | 4.34 | 3.82 | 70 | 4.22 | 4.11 | 3.71 |
| 71 | 4.68 | 4.50 | 3.90 | 71 | 4.39 | 4.26 | 3.79 |
| 72 | 4.88 | 4.67 | 3.97 | 72 | 4.57 | 4.42 | 3.86 |
| 73 | 5.11 | 4.85 | 4.03 | 73 | 4.77 | 4.59 | 3.93 |
| 74 | 5.35 | 5.04 | 4.09 | 74 | 4.98 | 4.77 | 4.00 |
| 75 | 5.62 | 5.24 | 4.15 | 75 | 5.22 | 4.96 | 4.06 |
| 76 | 5.91 | 5.45 | 4.19 | 76 | 5.48 | 5.16 | 4.11 |
| 77 | 6.23 | 5.67 | 4.23 | 77 | 5.76 | 5.36 | 4.16 |
| 78 | 6.58 | 5.89 | 4.26 | 78 | 6.07 | 5.57 | 4.21 |
| 79 | 6.95 | 6.11 | 4.29 | 79 | 6.41 | 5.78 | 4.24 |
| 80 | 7.37 | 6.33 | 4.31 | 80 | 6.78 | 6.00 | 4.27 |
| 81 | 7.83 | 6.56 | 4.33 | 81 | 7.20 | 6.22 | 4.30 |
| 82 | 8.32 | 6.77 | 4.34 | 82 | 7.65 | 6.43 | 4.32 |
| 83 | 8.87 | 6.98 | 4.35 | 83 | 8.15 | 6.64 | 4.33 |
| 84 | 9.47 | 7.17 | 4.35 | 84 | 8.69 | 6.85 | 4.34 |
| 85 and over | 10.13 | 7.36 | 4.36 | 85 and over | 9.29 | 7.04 | 4.35 |

**JOINT AND SURVIVOR LIFE INCOME PLAN**

| | JOINT AND SURVIVOR MONTHLY PAYMENTS (with 10 years certain) | | | | | | |
|---|---|---|---|---|---|---|---|
| MALE ADJUSTED AGE* | FEMALE ADJUSTED AGE* | | | | | | |
| | 55 | 60 | 65 | 70 | 75 | 80 | 85 and over |
| 55 | $ 2.37 | $ 2.50 | $ 2.59 | $ 2.66 | $ 2.70 | $ 2.73 | $ 2.75 |
| 60 | 2.48 | 2.66 | 2.82 | 2.95 | 3.04 | 3.09 | 3.13 |
| 65 | 2.55 | 2.79 | 3.04 | 3.26 | 3.43 | 3.55 | 3.61 |
| 70 | 2.59 | 2.89 | 3.22 | 3.56 | 3.87 | 4.10 | 4.24 |
| 75 | 2.62 | 2.95 | 3.35 | 3.81 | 4.29 | 4.72 | 5.02 |
| 80 | 2.64 | 2.99 | 3.42 | 3.97 | 4.63 | 5.30 | 5.85 |
| 85 and over | 2.65 | 3.01 | 3.46 | 4.06 | 4.84 | 5.71 | 6.52 |

*See Section 11.6

The amount of the payment for any other combination of ages will be furnished by the Company on request.

Monthly payment rates are based on 1.00% interest and the 2012 Individual Annuity Mortality Period Table with 125% of Projection Scale G2 and a 5.00% load.  Mortality improvements are projected for 4 years plus the remaining life of the Annuitant.

REDACTED

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**
**720 EAST WISCONSIN AVENUE, MILWAUKEE, WI 53202**

**INDIVIDUAL LIFE INSURANCE APPLICATION**

| POLICY NUMBER | ☐ Companion Policy | | PLAN GROUP NUMBER *(If applicable)* |
|---|---|---|---|

Has an application or informal inquiry ever been made to Northwestern Mutual for annuity, life, long-term care or disability insurance on the life of the Insured?............. ☐ Yes ☑ No   If "Yes," the last policy number is: _____

## 1. INSURED

**A.** LEGAL NAME *(First, M.I., Last)* (Include maiden name in parentheses.)   ☑ Mr.   ☐ Mrs.   ☐ Ms.   ☐ Dr.
MARCEL THEO HALL

**B.** ☑ Male   ☐ Female    **C.** BIRTHDATE *(MM/DD/YYYY)*    **D.** STATE OF BIRTH *(or Foreign Country)* NEW YORK    **E.** TAXPAYER ID NUMBER

**F.** ADDRESS OF PRIMARY RESIDENCE
11206 CHAMPLAIN CIRCLE    CITY BOWIE    STATE MD    ZIP CODE 20720

**G.** TELEPHONE NUMBER  ☐ Home/Cell  ☐ Business
C)202.740.3077 B)202.232.7002    **H.** E-MAIL ADDRESS JDI@BIZMARKIE.COM

## 2. APPLICANT

**Select ONLY ONE:** ☑ Insured at Insured's Address   OR   ☐ Other *(Complete A-J)*

**A.** LEGAL NAME *(First, M.I., Last)*  ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  OR  BUSINESS NAME/TRUST NAME

**B.** TYPE OF BUSINESS/TRUST *(If applicable)*
☐ Corporation  ☐ Partnership  ☐ Other type of Business _____   ☐ Revocable Trust  ☐ Irrevocable Trust

**C.** TRUST DATE *(MM/DD/YYYY)* *(If applicable)*    **D.** NAME OF TRUSTEE(S) *(If applicable)*

**E.** RELATIONSHIP TO INSURED    **F.** BIRTHDATE *(MM/DD/YYYY)* *(If applicable)*    **G.** TAXPAYER ID NUMBER

**H.** MAILING ADDRESS  ☐ Insured's Address    CITY    STATE    ZIP CODE

**I.** TELEPHONE NUMBER  ☐ Home/Cell  ☐ Business    **J.** E-MAIL ADDRESS

## 3. OWNER - Caution: A minor Owner cannot exercise policy rights until reaching legal age.

**Select ONLY ONE:** ☑ Insured *(Complete H)*   ☐ Applicant *(Complete H)*   ☐ Other *(Complete A-H)*   OR   ☐ See attached Owner form/letter

**A.** LEGAL NAME *(First, M.I., Last)*  ☐ Mr.  ☐ Mrs.  ☐ Ms.  ☐ Dr.  OR  BUSINESS NAME    **B.** E-MAIL ADDRESS

**C.** TYPE OF BUSINESS *(If applicable)*
☐ Corporation  ☐ Partnership  ☐ Other type of Business _____

**D.** RELATIONSHIP TO INSURED    **E.** BIRTHDATE *(MM/DD/YYYY)* *(If applicable)*    **F.** TAXPAYER ID NUMBER    **G.** TELEPHONE NUMBER  ☐ Home/Cell  ☐ Business

**H.** MAILING ADDRESS  ☐ Insured's Address  ☐ Applicant's Address  OR    CITY    STATE    ZIP CODE

## 4. SUCCESSOR OWNER - Complete this section when the Owner named above is an individual who is not the Insured. Caution: A minor Owner cannot exercise policy rights until reaching legal age.

Note: If a Successor Owner is not named, the ownership of the insurance will transfer to the Owner's estate if the Owner dies before the Insured.

**A.** ☐ If the Owner dies before the Insured, the Successor Owner will be the Insured.

**B.** ☐ If the Owner dies before the Insured, the Successor Owner will be *(NAME)* _____ ,
*(RELATIONSHIP TO INSURED)* _____ . If both the Owner and Successor Owner die before the Insured, the Owner will be the Insured.

**C.** ☐ The Insured will become the Owner upon attaining the age of ___ years. If the Owner dies before the Insured attains such age, the Successor Owner will be *(NAME)* _____ , *(RELATIONSHIP TO INSURED)* _____
Upon the Insured attaining such age or, if both the Owner and Successor Owner die before the Insured, the Owner will be the Insured.

ICC13 90-1 LI (0313)

MARYLAND
NAICREPL
90-0001-55
(Page 1 of 6) ef
NB-600-1

Mon 12/07/2015 13:27:51

## 5. BENEFICIARY

### A. DIRECT BENEFICIARY(IES)

Check this box ☐ if the **Direct Beneficiary should be the same as the Owner OR** complete Personal or Business/Trust information below.

**PERSONAL**

| NAME | FIRST | M.I. | LAST |
|---|---|---|---|
| J | | W | |

| RELATIONSHIP TO INSURED | BIRTHDATE *(MM/DD/YYYY)* | TAXPAYER ID NUMBER | TELEPHONE NUMBER |
|---|---|---|---|
| Nephew | | | |

| ADDRESS or ☐ SAME ADDRESS AS INSURED | CITY | STATE | ZIP CODE |
|---|---|---|---|

| NAME | FIRST | M.I. | LAST |
|---|---|---|---|
| J | | R | H. |

| RELATIONSHIP TO INSURED | BIRTHDATE *(MM/DD/YYYY)* | TAXPAYER ID NUMBER | TELEPHONE NUMBER |
|---|---|---|---|
| Nephew | | | |

| ADDRESS or ☐ SAME ADDRESS AS INSURED | CITY | STATE | ZIP CODE |
|---|---|---|---|

Check box to include all children of the Insured as direct beneficiaries without naming them or to add to the direct beneficiaries named above.
☐ And all *(other)* children of the Insured. (The word "children" includes 'any and all biological or legally adopted children'.)

**BUSINESS/TRUST**

| BUSINESS NAME | TYPE OF BUSINESS ☐ Corporation ☐ Partnership ☐ Other _____ |
|---|---|

**OR**

| TRUST NAME | TYPE OF TRUST ☐ Revocable ☐ Irrevocable |
|---|---|

| TRUSTEE NAME(S) | DATE OF TRUST *(MM/DD/YYYY)* |
|---|---|

**AND**

| BUSINESS/TRUST RELATIONSHIP TO INSURED | TAXPAYER ID NUMBER | TELEPHONE NUMBER |
|---|---|---|

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|

### B. CONTINGENT BENEFICIARY(IES)

NAME *(First, M.I., Last)* **OR** TRUST NAME, NAME OF TRUSTEE(S), DATE OF TRUST

| RELATIONSHIP TO INSURED | BIRTHDATE *(MM/DD/YYYY)* | TAXPAYER ID NUMBER | TELEPHONE NUMBER |
|---|---|---|---|

| ADDRESS or ☐ SAME ADDRESS AS INSURED | CITY | STATE | ZIP CODE |
|---|---|---|---|

Check box 1 to include all children of the Insured as contingent beneficiaries without naming them or to add to the contingent beneficiaries named above.
☐ 1. And all *(other)* children of the Insured. (The word "children" includes 'any and all biological or legally adopted children'.)

Check box 2 to include all of the brothers and sisters without naming them or to add to the contingent beneficiaries named above.
☐ 2. And all *(other)* brothers and sisters of the Insured born of the marriage of or legally adopted by _____
and _____ before the Insured's death.

**TRUST AS BENEFICIARY** If a trustee is named as a beneficiary and no qualified trustee makes claim to the proceeds, or to the present value of any unpaid payments under an income plan, within one year after payment becomes due to the trustee, or if satisfactory evidence is furnished to the Company within that year showing that no trustee can qualify to receive payment, payment will be as provided in the contract as though the trustee had not been named. The Company will be fully discharged of liability for any action taken by the trustee and for all amounts paid to, or at the direction of, the trustee and will have no obligation as to the use of the amounts. In all dealings with the trustee the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

**REQUEST TO PREPARE A SUPPLEMENT TO THE APPLICATION**

☐ **TRUST FOR MINOR BENEFICIARY(IES)** - Check this box if the Owner wishes to establish a trust for any minor beneficiaries named in Section **A** and/or **B** above. This selection requires the completion of form 90-1197-01. The Trust for Minor Beneficiary(ies) creates a legally valid trust in which one or more trustees are appointed by the Owner to act on behalf of the minor(s). The appointed trustee(s) must also sign the form in order to create a valid trust. The specific terms of the trust are found on the designation form 90-1197-01.

☐ **SEE ATTACHED BENEFICIARY FORM/LETTER** *(To be used when none of the choices above are suitable for the intended designation.)*

## 6. PREMIUM PAYER

**Select ONLY ONE:** [✓] Insured *(Complete C)*  [ ] Applicant *(Complete C)*  [ ] Owner *(Complete C)*  **OR**  [ ] Other *(Complete A–C)*

**A.** LEGAL NAME *(First, M.I., Last)* [ ] Mr. [ ] Mrs. [ ] Ms. [ ] Dr.  **OR** BUSINESS NAME | **B.** TAXPAYER ID NUMBER

**C.** MAILING ADDRESS [ ] Insured's Address [ ] Applicant's Address [ ] Owner's Address **OR** CITY | STATE | ZIP CODE

## 7. PREMIUM – Complete this section for Prepaid and Non-Prepaid

**A.** Premium Payment - Initial Premium Paid: $ *1,208.20*  **OR** [ ] Non Prepaid

**B.** Paid on ISA [✓] Yes [ ] No

**C.** Frequency of Premium Payment - [✓] Monthly *(Only available for ISA)* [ ] Quarterly [ ] Semiannually [ ] Annually [ ] Single

## 8. CONDITIONAL LIFE INSURANCE AGREEMENT

Has the premium for the policy(ies) applied for been given to the agent in exchange for the Conditional Insurance Agreement?........... [✓] Yes [ ] No

Note: A Conditional Life Insurance Agreement should not be provided when the Applicant is only exercising an Additional Purchase Benefit with no underwritten increase.

## 9. PRODUCT INFORMATION – Submit one Application Supplement for each policy applied for

**POLICY 1 –** [✓] **APPLICATION SUPPLEMENT submitted -** The Automatic Premium Loan provision, if available, shall become operative according to its terms, unless otherwise indicated here: [ ] Do not activate the Automatic Premium Loan provision. Policy will default to paid-up insurance. *(Not applicable for Universal Life.)*

**POLICY 2 –** [ ] **APPLICATION SUPPLEMENT submitted -** The Automatic Premium Loan provision, if available, shall become operative according to its terms, unless otherwise indicated here: [ ] Do not activate the Automatic Premium Loan provision. Policy will default to paid-up insurance. *(Not applicable for Universal Life.)*

Note: Submit a complete NAIC Basic Illustration (all pages, signed and dated) OR, if no illustration conforming to the policy applied for was shown to the Applicant, check the Illustration Certification box (page 6). *(Not applicable for Variable Life.)*

## 10. ADDITIONAL PURCHASE BENEFIT (APB) OPTION – Complete this section for APB options being exercised

**A.** List the policy number(s) and amount(s) for each option being exercised.

Policy 1: _____ [ ] Regular $ _____ [ ] Advanced $ _____

Policy 2: _____ [ ] Regular $ _____ [ ] Advanced $ _____

**B.** If Advanced Purchase, the event is: [ ] Marriage [ ] Birth of Child **OR** [ ] Adoption of Child
Date of marriage, birth or final decree of adoption: _____ *(MM/DD/YYYY)*

**C.** Is the amount applied for more than the additional purchase benefit available? ........... [ ] Yes [ ] No
If "Yes," what is the excess amount to be underwritten $ _____

**D.** APB OPTION WITH UNDERWRITTEN INCREASE IN AMOUNT - If the increase cannot be issued in the same underwriting classifications as the original policy and the increased amount meets policy minimums, should two policies be issued with one policy exercising the APB option and a separate policy in the underwriting classification for which the Insured qualifies? If "No," the policy will be issued for the amount of the Additional Purchase Benefit option only................... [ ] Yes [ ] No

## 11. POLICY DATE – Complete this section for special dates being requested

Select ONE for each policy *(if applicable)*:

| | POLICY 1 | POLICY 2 |
|---|---|---|
| **Prepaid** | | |
| • Short Term *(ISA monthly only)* Policy Date will coincide with ISA payment billing day *(not month)* (Short Term premiums will apply.) | [ ] | [ ] |
| • Short Term to _____ (Short Term premiums will apply.) | [ ] | [ ] |
| • Date to Save Age (Premiums due and any other applicable charges are based on policy date.) | [ ] | [ ] |
| • Backdate to _____ (Premiums due and any other applicable charges are based on policy date.) | [ ] | [ ] |
| **Nonprepaid** | | |
| • Specified future date _____ | [ ] | [ ] |
| • Date to Save Age (Premiums due and any other applicable charges are based on policy date.) | [ ] | [ ] |
| • Backdate to _____ (Premiums due and any other applicable charges are based on policy date.) | [ ] | [ ] |

ICC13 90-1 LI (0313)

*(Page 3 of 6) eF*
NB-600-3

Mon 12/07/2015 13:27:51

## 12. INSURANCE HISTORY

**A.** Has the Insured ever had life, disability, health, or long-term care insurance declined, rated, modified, issued with an exclusion rider, cancelled, rescinded, or not renewed? If "Yes," explain in Remarks ................................. ☐ Yes ☑ No

**B.** Does the Insured have any existing or pending life insurance (including group coverage) with companies **other than** Northwestern Mutual? If "Yes," complete the table below ................................. ☑ Yes ☐ No

| INSURANCE COMPANY (EXCLUDING NORTHWESTERN MUTUAL) | AMOUNT OF INSURANCE | PENDING (P) OR IN FORCE (I) | PERSONAL (P) OR BUSINESS (B) COVERAGE |
|---|---|---|---|
| RELIANCE STANDARD | $ 50,000.00 | I | B |
| | $ | | |
| | $ | | |

**REMARKS:**

## 13. REPLACEMENT

- **For NAIC Replacement states:** If question **A** below is answered "No," proceed to Section 14. If question **A** is answered "Yes," complete, sign, and date the *Important Notice* and leave a copy with the Applicant. The **Applicant** must also answer question **B** below.  If one or both of the questions on the *Important Notice* or question **B** is answered "Yes," this constitutes a replacement and the **Agent** must submit the *Important Notice* to the Home Office and provide copies of all required sales materials to both the Applicant and the Home Office; the **Applicant** must also answer question **C** below.
- **For NON-NAIC Replacement states:** Complete the *Definition of Replacement Supplement* and answer questions **A** and **B** below. If the answer to question **B** is "Yes," submit the *Definition of Replacement Supplement*, sales materials (if required) and state required replacement disclosure notices signed and dated by the Applicant; the **Applicant** must also answer question **C** below.

**A.** Does the Applicant own any existing life insurance or annuity products with Northwestern Mutual or any other company? ................................. ☑ Yes ☐ No

**B.** As a result of this purchase will the values or benefits of any other life insurance policy or annuity contract, on any life, be affected in any way? ................................. ☐ Yes ☑ No

**C.** Will this insurance:
1. Replace Northwestern Mutual insurance or annuity? ................................. ☐ Yes ☑ No
2. Replace insurance or annuity of other companies? ................................. ☐ Yes ☐ No
3. Result in a 1035 exchange? ................................. ☐ Yes ☑ No

## 14. INSURED HISTORY INFORMATION

**A.** What is your marital status? ☑ Single, Widowed or Divorced   ☐ Married

**B.** Are you a U.S. citizen or do you have a permanent resident visa (i.e., green card)? If "No," complete 1, 2 & 3 ................................. ☑ Yes ☐ No
1. What is your country of citizenship? UNITED STATES OF AMERICA
2. What type of visa do you have (B-1, H-1B, J-1, etc.)? _____ Visa Number _____
3. How long have you resided in the U.S.? _____

**C.** Have you traveled outside the U.S. during the past 12 months, or do you have plans to leave the U.S. for travel or residence in the next 2 years? If "Yes," provide details below ................................. ☑ Yes ☐ No

| CITY AND COUNTRY | DATE OF TRAVEL/RESIDENCE | DURATION OF TRAVEL/RESIDENCE | PURPOSE OF TRIP |
|---|---|---|---|
| TOYKO, JAPAN | 09.20.2015 | 4 DAYS | BUSINESS |
| | | | |

*(Continued on next page)*

REDACTED

QUESTIONS <u>D</u> THROUGH <u>M</u> ARE NOT REQUIRED IF THE INSURED IS UNDER AGE 16.

**D.** What is your occupation?  PARTNER

**E.** 1. Who is your employer?  BIZ MARKIE, INC

2. How long with this employer?  7 MONTHS

**F.** 1. What is your annual earned income as most recently reported to the IRS?

Salary (or IRS Schedule C net profit or loss, if a sole proprietor) $ 54,600    Bonus $ _____

Other $ _____    Explain: _____

2. What is your net worth, if it is >$1,000,000? $ 2.5M

Financial Supplement forms 90-8C and 90-8D may be required for in-force plus applied for amounts of personal insurance greater than $2,000,000 and business insurance greater than $500,000. See instructions on Supplements.

**G.** In the past 5 years, have you filed bankruptcy? If "Yes," provide details below ............................................ ☐ Yes ☒ No

| TYPE OF BANKRUPTCY (CHAPTER) | DATE FILED | DATE DISCHARGED |
|---|---|---|
|  |  |  |

**H.** Are you a member of, or have you entered into a written agreement to become a member of any branch of the Armed Forces or reserve military unit? If "Yes," complete Military Supplement, 90-5 ............................................ ☐ Yes ☒ No

**I.** Other than as a passenger on a regularly scheduled commercial flight, have you flown within the past 2 years or do you have plans to fly in the next 2 years? If "Yes," complete Aviation Supplement, 90-5 ............................................ ☐ Yes ☒ No

**J.** In the past 2 years, have you participated in or do you have plans to participate in the next 2 years in any of the following: racing (automobile, motorcycle, boat, go-cart or snowmobile); scuba diving; skydiving; hang gliding or paragliding; bungee or BASE jumping; mountain, rock, or ice climbing; rodeos; boxing, wrestling, or mixed martial arts? If "Yes," complete Avocation Supplement 90-6 ............................................ ☐ Yes ☒ No

**K.** What is your driver's license number and state issued?  Driver's License Number: _____    State issued: MD

**L.** In the past 5 years, have you pled guilty, pled no contest, or been convicted of reckless driving, driving while impaired or intoxicated, or any other moving violation; had your license suspended or revoked; or been involved in any accident in which you were found to be at fault? If "Yes," provide details below ............................................ ☐ Yes ☒ No

| DATE | TYPE OF VIOLATION AND/OR DETAILS OF ACCIDENT (SPEEDING, RECKLESS DRIVING, DRIVING WHILE INTOXICATED, ETC.) |
|---|---|
|  |  |
|  |  |
|  |  |

**M.** Have you ever pled guilty, pled no contest, or been convicted of any felony or misdemeanor, or do you have any charges pending? If "Yes," provide details below ............................................ ☐ Yes ☒ No

| DATE | CITY/COUNTY/STATE | OFFENSE (PLEASE ALSO NOTE IF FELONY OR MISDEMEANOR) | TIME SERVED | DATE OF PAROLE OR PROBATION TERMINATION |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

**CONSENT AND DECLARATION**

The Insured consents to this application, and each signer has read the application and all statements and answers that pertain to them, and declares that the statements and answers are correctly recorded, complete and true to the best of their knowledge and belief. Answers and statements brought to the attention of the agent, medical examiner, or paramedical examiner are not considered information brought to the attention of the Company unless stated in the application. Statements and answers in this application are representations and not warranties.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid, if: the Insured is living at the time; and the answers and statements in the application are then true to the best of the Insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no insurance will be in effect except as provided in the Conditional Life Insurance Agreement or by the automatic term insurance provided when exercising the Additional Purchase Benefit.

(3) If the policy is issued in an extra premium class, acceptance of the policy will amend it so that extended term insurance can be in force only if (a) the Company gives its consent or (b) the loan value is not large enough to grant a premium loan. If a premium is not paid within the grace period and, due to operation of the foregoing amendment of the policy, extended term insurance cannot be in force, paid-up insurance will be selected.

(4) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

## AUTHORIZATION

I authorize The Northwestern Mutual Life Insurance Company, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application and to verify information in this application. This information will include: (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income and financial history; (f) foreign travel; (g) avocations; (h) driving record; (i) other personal characteristics; and (j) other insurance. This authorization extends to information on the use of alcohol, drugs and tobacco; the diagnosis or treatment of HIV (AIDS virus) infection and sexually transmitted diseases; and the diagnosis and treatment of mental illness. During the time this authorization is valid it extends to information required to determine eligibility for benefits under any policy issued as a result of this application.

I authorize any person, including any physician, health care professional, hospital, clinic, medical facility, government agency including the Veterans and Social Security Administrations, the MIB, Inc., employer, business associates, consumer reporting agency, banker, accountant, tax preparer, or other insurance company, to release information about me to The Northwestern Mutual Life Insurance Company or its representatives on receipt of this authorization. The Northwestern Mutual Life Insurance Company or its representatives may release this information about me to translators, to reinsurers, to the MIB, Inc., or to another insurance company to whom I have applied or to who a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the MIB, Inc. and Fair Credit Reporting Act notices. I authorize The Northwestern Mutual Life Insurance Company to obtain an investigative consumer report on me.

[ ] I request to be interviewed if an investigative consumer report is done.

This authorization is valid for 24 months from the date it is signed. A copy of this authorization is as valid as the original and will be provided on request.

## ILLUSTRATION CERTIFICATION

[✓] I, the Applicant, acknowledge that no illustration conforming to the policy applied for was available for me to review and sign. I understand that an illustration conforming to the policy exactly as issued will be provided to the Policyowner, by the Company or Agent, no later than at the time the policy is delivered.

## TAXPAYER IDENTIFICATION NUMBER (TIN) CERTIFICATION

Under penalties of perjury, the Owner of the policy identified herein certifies: (1) The taxpayer identification number given for the Owner on this application is the Owner's correct TIN (or the Owner is waiting for a TIN to be issued); and (2) The Owner is not subject to backup withholding because (a) the Owner is exempt from backup withholding, or (b) the Owner has not been notified by the Internal Revenue Service (IRS) that the Owner is subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified the Owner that the Owner is no longer subject to backup withholding; and (3) The Owner is a U.S. person, which includes: a U.S. citizen; U.S. resident alien; partnership, corporation, company, or association created or organized in the United States or under the laws of the United States; an estate (other than a foreign estate); or a domestic trust (as defined in 26 CFR § 301.7701-7).

Item (2) above must be crossed off if the Owner has been notified by the IRS that the Owner is subject to backup withholding as a result of a failure to report all interest or dividends.

The Internal Revenue service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

## SIGNATURE(S)

**Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.**

The signatures below apply to the application, Consent and Declaration, Authorization, Illustration Certification (if checked), and the Taxpayer Identification Number Certification.

| | |
|---|---|
| _(signature)_ | 11/20/15 |
| Signature of APPLICANT | DATE signed by APPLICANT (MM/DD/YYYY) |
| | _Upper Marlboro, Pr., Maryland_ |
| Signature of INSURED (If other than Applicant; or PARENT OR GUARDIAN, if under age 15.) | Signed by APPLICANT at CITY, COUNTY, STATE |
| | _(signature)_ |
| Signature of OWNER (If other than Insured/Applicant) | Signature of LICENSED AGENT |

Use this form in
MARYLAND

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**
720 EAST WISCONSIN AVENUE, MILWAUKEE, WI 53202                    **MEDICAL HISTORY QUESTIONNAIRE**

INSURED NAME (Print the name in this format: First Name, M.I., Last Name)   MARCEL   T.   HALL

Aug. 26.  2015  1:14PM                                          No. 1635  REDACTED  P. 4/6

MEDICAL HISTORY QUESTIONNAIRE

REDACTED

Aug. 26. 2015  1:15PM                                                        No. 1635   P. 37/6

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**
720 EAST WISCONSIN AVENUE, MILWAUKEE, WI 53202

## MEDICAL HISTORY QUESTIONNAIRE - *Additional Details*
## Supplement to Application

| INSURED NAME (First, Middle Initial, Last) PRINT NAME |
|---|
| MARCEL T. HALL |

90-4 (0313) Supplement                                                        NB-498-3

 **Northwestern Mutual**®

720 East Wisconsin Avenue
Milwaukee, WI 53202

**OWNER DESIGNATION**

*(Not for use with Disability Income Policies)*
- A separate form is required for each Insured
- Fax to 414-625-1295

**DO NOT ALTER** the language on this form. **If a different arrangement is needed,** use OWNER DESIGNATION FORM 90-1638.

| POLICY NUMBER(S) | INSURED NAME *(FOR JOINT LIFE INCLUDE BOTH INSURED NAMES)* |
|---|---|
| 21455316, 21359124 | Marcel Theo Hall |

**Complete this chart based on the "new owner option" selected below.**

| TAXPAYER ID NO. (SOCIAL SECURITY NO./EMPLOYER ID NO.) | TAXPAYER'S NAME | DATE OF BIRTH (MM/DD/YYYY) *(IF APPLICABLE)* | GENDER *(IF APPLICABLE)* | |
|---|---|---|---|---|
| | | | ○ Male ○ Female | |
| | | | ○ Male ○ Female | |
| | | | ○ Male ○ Female | |

The Owner(s) of the Policy(ies) will be:

☐ **Option 1 - THE INSURED WILL BE THE OWNER**

☐ **Option 2 - INDIVIDUAL OWNER WITH A SUCCESSOR**
- If a successor owner name is not named in the designated space, the successor owner will be the Insured.

_____ , _____ of the Insured. If the new Owner dies
PRINT NAME OF NEW OWNER            RELATIONSHIP

before the Insured , _____ , _____ of the Insured will be the Owner. If the
PRINT NAME OF SUCCESSOR OWNER        RELATIONSHIP

new Owner and the successor owner named above die before the Insured, the insured will be the Owner.

☐ **Option 3 - MULTIPLE INDIVIDUAL OWNERS** *(Enter Names and Select (A) or (B) below.)*
- If neither (A) or (B) is checked, each Owner's interest will pass to the surviving owner(s).

_____        _____
PRINT FULL NAME OF OWNER            RELATIONSHIP TO INSURED

_____        _____
PRINT FULL NAME OF OWNER            RELATIONSHIP TO INSURED

_____        _____
PRINT FULL NAME OF OWNER            RELATIONSHIP TO INSURED

○ (A) the survivors or survivor    ○ (B) or their respective estates. Each Owner may transfer his or her ownership interest.

☐ **Option 4 - TRUST** *(Select One)*    ○ Revocable    ○ Irrevocable

**Print Name of Trust** _____            **Dated** _____

**Trustee(s)** _____
PRINT FULL NAMES OF ALL PRIMARY TRUSTEES

☒ **Option 5 - BUSINESS ENTITY**

*Biz Markie Inc.*                    *Washington, DC*
PRINT FULL NAMES OF BUSINESS/ENTITY        CITY & STATE OF LOCATION

*The undersigned requests and directs the Company to make the provisions of all pages of this form a part of the policy(ies).*

**SIGNATURE(S) OF OWNER(S)**

**PERSONALLY OWNED**

| SIGNATURE OF PERSON OWNING | PRINT OR TYPE NAME | DATE SIGNED (MM/DD/YY) |
|---|---|---|
| *[signature]* | Marcel Theo Hall | 11/10/18 |

The Northwestern Mutual Life Insurance Company *720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202* 414 271-1444 www.northwesternmutual.com

# ADDITIONAL OWNER PROVISIONS

**1. THE OWNER**

All policy rights may be exercised by the Owner, his or her successor or his or her transferee:
- without the consent of any beneficiary or further payee.
- while the Insured is living and, after his or her death, only as provided in Provisions 4 and 5.

**2. SUCCESSOR OWNERS**

If successor Owners are named, each Owner, during his or her period of ownership, may exercise all policy rights, including the right to change the succession of Owners. If two or more persons are concurrent Owners, the policy rights must be exercised jointly by the Owners, unless this form provides otherwise.

If a trust is named as successor owner and that trust does not qualify or is not in existence at the death of the Owner, the Insured will be the Owner.

**3. TRANSFER OF OWNERSHIP**

The Owner may transfer the ownership of this policy, subject to any Transferability Restrictions and to Provision 8. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will then take effect as of the date it was signed unless otherwise specified by the Owner. The Company is not responsible for any payment or other action taken by it before receipt of the satisfactory transfer.

The Company will be fully discharged of liability for any action taken by the Owner and for all amounts paid to, or at the direction of, that Owner and will have no obligation as to the use of the amounts.

**4. NAMING AND CHANGE OF BENEFICIARIES**

**Effective Date.** A naming or change of a beneficiary will be made on receipt at the Home Office of a written request that is acceptable to the Company. The request will then take effect as of the date it was signed unless otherwise specified by the Owner. The Company is not responsible for any payment or other action taken by it before receipt of the request.

**For Death Proceeds by Owner.** The Owner may name and change the beneficiaries:
- while the Insured is living.
- during the first 60 days after the date of death of the Insured, if the Insured just before his or her death was not the Owner. No one may change this naming of a direct beneficiary during this 60 days.

**For Surrender Proceeds by Owner.** The Owner may name the beneficiaries at the time this policy is surrendered.

**For Maturity Proceeds by Owner.** The Owner may name and change the beneficiaries of maturity proceeds before the Maturity Date. If no direct beneficiary is named by the Owner, the Insured will be the direct beneficiary.

**For Death Proceeds by Direct Beneficiary.** A direct beneficiary may name and change the contingent beneficiaries and further payees of his or her share of the proceeds:
- if the direct beneficiary is the Owner;
- if, at any time after the death of the Insured, no contingent beneficiary or further payee of that share is living; or-
- if, after the death of the Insured, the direct beneficiary elects a payment plan. The interest of any other beneficiary in the share of that direct beneficiary will end.

These direct beneficiary rights are subject to the Owner's rights during the above 60 days after the date of death of the Insured.

**For Maturity or Surrender Proceeds by Direct Beneficiary.** After the maturity, if any, or surrender of the policy, the direct beneficiary may name and change the contingent beneficiaries and further payees of his or her share of the proceeds under a payment plan.

**Beneficiary Rights.** The rights of any beneficiary are subject to the provisions of this form. A transfer of ownership of itself will not change the interest of a beneficiary of the death proceeds.

**5. PAYMENT PLAN ELECTIONS**

**For Death Proceeds by Owner.** The Owner may elect payment plans for death proceeds:
- while the Insured is living.
- during the first 60 days after the date of death of the Insured, if the Insured just before his or her death was not the Owner. No one may change this election made during this 60 days.

**For Death Proceeds by Direct or Contingent Beneficiary.** A direct or contingent beneficiary may elect payment plans for death proceeds payable to him or her if no payment plan that has been elected is in effect. This right is subject to the Owner's rights during the above 60 days.

**For Maturity or Surrender Proceeds.** The Owner may elect payment plans for maturity proceeds, if any, or surrender proceeds.

**6. EFFECTIVE DATE FOR PAYMENT PLAN**

A payment plan that is elected for death proceeds will take effect on the date of death of the Insured if:
- the plan is elected by the Owner; and
- the election is received at the Home Office while the Insured is living.

A payment plan that is elected for maturity proceeds, if any, will take effect on the Maturity Date if:
- the election is received before the Maturity Date; and
- the Insured is living on the Maturity Date.

In all other cases, a payment plan that is elected will take effect:
- on the date the election is received at the Home Office; or
- on a later date, if requested.

**7. TRUSTEE AS OWNER**

If the Owner is a Trustee, the Company will be fully discharged of liability for any action taken by the Owner in the exercise of any policy right and for all amounts paid to, or at the direction of, the Owner and will have no obligation as to the use of the amounts. In all dealings with the Owner, the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

**8. QUALIFIED PENSION AND PROFIT SHARING PLANS, AS DEFINED BY THE INTERNAL REVENUE CODE**

If the Owner is a qualified Pension or Profit Sharing Plan, the Owner may transfer the ownership of the policy to the Insured. If the policy is a life insurance policy and contains Transferability Restrictions, revocation of the Restrictions will result from the transfer.

If the policy is an annuity contract subject to Retirement Equity Act of 1984 (REACT), the Owner will be subject to the restrictions required under said Act, which are made a part of the contract. All prior beneficiary designations and payment plan elections are hereby revoked for said annuity contracts.

**9. POLICY ENDORSEMENT**

The Company may require that the policy be sent to it for endorsement to show any change.

**10. DEFINITIONS - as used in this form are defined as follows:**

**"Annuitant"** - means "Insured" when the form applies to an annuity contract.

**"Beneficiaries"** - includes direct beneficiaries, contingent beneficiaries and further payees.

**"Corporation"** - includes its successors.

**"Trustee"** - means the named trustee or successor in trust. When so designated, the trustee will be vested with the power to take all policy actions and the Company will be fully protected when acting as directed by said trustee.

The Northwestern Mutual Life Insurance Company *720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202* 414 271-1444 www.northwesternmutual.com



**Northwestern Mutual**®

720 East Wisconsin Avenue
Milwaukee, WI 53202

**REQUEST FOR NEW OWNER ADDRESS AND/OR NEW PAYER INFORMATION**

Policyowner Services Department
Beneficiary & Title Division
• Fax to 414-625-1295

INSURED'S NAME (FIRST, MIDDLE, LAST)

Marcel Theo Hall

List all Policy numbers to be changed:

| 21455316 | 21359124 | | |
|---|---|---|---|
| | | | |
| | | | |

List all Billing Account numbers to be changed:

| | | |
|---|---|---|

## New Owner's Address Information

**_Important:_** To ensure that future mailings will be directed to the correct address, we encourage you to provide us with the new owner's address information

***(Caution: Use form 90-1638 or form 90-1940 to name a new owner.)***

| NEW OWNER'S NAME (FIRST, MIDDLE, LAST) | DAYTIME PHONE NUMBER |
|---|---|
| Biz Markie, Inc. | 202-232-7002 |

| ADDRESS | | |
|---|---|---|
| 1328 U Street NW, Suite W | | |

| CITY | STATE | ZIP CODE |
|---|---|---|
| Washington | DC | 20009 |

## Request to Change Payer

*If you have questions concerning changing the payer, please call our Policyowner Customer Service Line at 1-800-388-8123.*

| NEW PAYER'S NAME (FIRST, MIDDLE, LAST) | | | SOCIAL SECURITY NUMBER |
|---|---|---|---|
| ADDRESS | | | |
| CITY | STATE | ZIP CODE | DAYTIME PHONE NUMBER |

## Home Office Use Only

☐ Life/DI Analyst Serv.    ☐ IPS/Annuities    ☐ MCB/ABS    ☐ Variable Life

The Northwestern Mutual Life Insurance Company •720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202• 414 271-1444 www.northwesternmutual.com

15-1265 (0614)      1058JOAM4JOEV0

(Page 1 of 1) eF

 **Northwestern Mutual®**

720 East Wisconsin Avenue
Milwaukee, WI 53202

**OWNER DESIGNATION**
*(Not for use with Disability Income Policies)*
- A separate form is required for each Insured
- Fax to 414-625-1295

**DO NOT ALTER** the language on this form. **If a different arrangement is needed,** use OWNER DESIGNATION FORM 90-1638.

| POLICY NUMBER(S) | INSURED NAME *(FOR JOINT LIFE INCLUDE BOTH INSURED NAMES)* |
|---|---|
| 21455316, 21359124 | Marcel Theo Hall |

### Complete this chart based on the "new owner option" selected below.

| TAXPAYER ID NO. (SOCIAL SECURITY NO./EMPLOYER ID NO.) | TAXPAYER'S NAME | DATE OF BIRTH (MM/DD/YYYY) *(IF APPLICABLE)* | GENDER *(IF APPLICABLE)* |
|---|---|---|---|
| | | | ○ Male  ○ Female |
| | | | ○ Male  ○ Female |
| | | | ○ Male  ○ Female |

The Owner(s) of the Policy(ies) will be:

☐ **Option 1 - THE INSURED WILL BE THE OWNER**

☐ **Option 2 - INDIVIDUAL OWNER WITH A SUCCESSOR**
- If a successor owner name is not named in the designated space, the successor owner will be the Insured.

_____ , _____ of the Insured.  If the new Owner dies
      PRINT NAME OF NEW OWNER           RELATIONSHIP

before the Insured , _____ , _____ of the Insured will be the Owner. If the
        PRINT NAME OF SUCCESSOR OWNER      RELATIONSHIP

new Owner and the successor owner named above die before the Insured, the insured will be the Owner.

☐ **Option 3 - MULTIPLE INDIVIDUAL OWNERS** *(Enter Names and Select (A) or (B) below.)*
- If neither (A) or (B) is checked, each Owner's interest will pass to the surviving owner(s).

_____           _____
      PRINT FULL NAME OF OWNER                   RELATIONSHIP TO INSURED

_____           _____
      PRINT FULL NAME OF OWNER                   RELATIONSHIP TO INSURED

_____           _____
      PRINT FULL NAME OF OWNER                   RELATIONSHIP TO INSURED

○ **(A) the survivors or survivor**    ○ **(B) or their respective estates.  Each Owner may transfer his or her ownership interest.**

☐ **Option 4 - TRUST** *(Select One)*    ○ **Revocable**    ○ **Irrevocable**

**Print Name of Trust** _____      **Dated** _____

**Trustee(s)** _____
                 PRINT FULL NAMES OF ALL PRIMARY TRUSTEES

☒ **Option 5 - BUSINESS ENTITY**

Biz Markie Inc.                            Washington, D.C.
PRINT FULL NAMES OF BUSINESS/ENTITY                           CITY & STATE OF LOCATION

*The undersigned requests and directs the Company to make the provisions of all pages of this form a part of the policy(ies).*

### SIGNATURE(S) OF OWNER(S)

**PERSONALLY OWNED**

| SIGNATURE OF PERSON INSURED | PRINT OR TYPE NAME Marcel Theo Hall | DATE SIGNED (MM/DD/YYYY) 11/10/18 |
|---|---|---|

The Northwestern Mutual Life Insurance Company *720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202* 414 271-1444 www.northwesternmutual.com

## ADDITIONAL OWNER PROVISIONS

**1. THE OWNER**

All policy rights may be exercised by the Owner, his or her successor or his or her transferee:
- without the consent of any beneficiary or further payee.
- while the Insured is living and, after his or her death, only as provided in Provisions 4 and 5.

**2. SUCCESSOR OWNERS**

If successor Owners are named, each Owner, during his or her period of ownership, may exercise all policy rights, including the right to change the succession of Owners. If two or more persons are concurrent Owners, the policy rights must be exercised jointly by the Owners, unless this form provides otherwise.

If a trust is named as successor owner and that trust does not qualify or is not in existence at the death of the Owner, the Insured will be the Owner.

**3. TRANSFER OF OWNERSHIP**

The Owner may transfer the ownership of this policy, subject to any Transferability Restrictions and to Provision 8. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will then take effect as of the date it was signed unless otherwise specified by the Owner. The Company is not responsible for any payment or other action taken by it before receipt of the satisfactory transfer.

The Company will be fully discharged of liability for any action taken by the Owner and for all amounts paid to, or at the direction of, that Owner and will have no obligation as to the use of the amounts.

**4. NAMING AND CHANGE OF BENEFICIARIES**

**Effective Date.** A naming or change of a beneficiary will be made on receipt at the Home Office of a written request that is acceptable to the Company. The request will then take effect as of the date it was signed unless otherwise specified by the Owner. The Company is not responsible for any payment or other action taken by it before receipt of the request.

**For Death Proceeds by Owner.** The Owner may name and change the beneficiaries:
- while the Insured is living.
- during the first 60 days after the date of death of the Insured, if the Insured just before his or her death was not the Owner. No one may change this naming of a direct beneficiary during this 60 days.

**For Surrender Proceeds by Owner.** The Owner may name the beneficiaries at the time this policy is surrendered.

**For Maturity Proceeds by Owner.** The Owner may name and change the beneficiaries of maturity proceeds before the Maturity Date. If no direct beneficiary is named by the Owner, the Insured will be the direct beneficiary.

**For Death Proceeds by Direct Beneficiary.** A direct beneficiary may name and change the contingent beneficiaries and further payees of his or her share of the proceeds:
- if the direct beneficiary is the Owner;
- if, at any time after the death of the Insured, no contingent beneficiary or further payee of that share is living; or-
- if, after the death of the Insured, the direct beneficiary elects a payment plan. The interest of any other beneficiary in the share of that direct beneficiary will end.

These direct beneficiary rights are subject to the Owner's rights during the above 60 days after the date of death of the Insured.

**For Maturity or Surrender Proceeds by Direct Beneficiary.** After the maturity, if any, or surrender of the policy, the direct beneficiary may name and change the contingent beneficiaries and further payees of his or her share of the proceeds under a payment plan.

**Beneficiary Rights.** The rights of any beneficiary are subject to the provisions of this form. A transfer of ownership of itself will not change the interest of a beneficiary of the death proceeds.

**5. PAYMENT PLAN ELECTIONS**

**For Death Proceeds by Owner.** The Owner may elect payment plans for death proceeds:
- while the Insured is living.
- during the first 60 days after the date of death of the Insured, if the Insured just before his or her death was not the Owner. No one may change this election made during this 60 days.

**For Death Proceeds by Direct or Contingent Beneficiary.** A direct or contingent beneficiary may elect payment plans for death proceeds payable to him or her if no payment plan that has been elected is in effect. This right is subject to the Owner's rights during the above 60 days.

**For Maturity or Surrender Proceeds.** The Owner may elect payment plans for maturity proceeds, if any, or surrender proceeds.

**6. EFFECTIVE DATE FOR PAYMENT PLAN**

A payment plan that is elected for death proceeds will take effect on the date of death of the Insured if:
- the plan is elected by the Owner; and
- the election is received at the Home Office while the Insured is living.

A payment plan that is elected for maturity proceeds, if any, will take effect on the Maturity Date if:
- the election is received before the Maturity Date; and
- the Insured is living on the Maturity Date.

In all other cases, a payment plan that is elected will take effect:
- on the date the election is received at the Home Office; or
- on a later date, if requested.

**7. TRUSTEE AS OWNER**

If the Owner is a Trustee, the Company will be fully discharged of liability for any action taken by the Owner in the exercise of any policy right and for all amounts paid to, or at the direction of, the Owner and will have no obligation as to the use of the amounts. In all dealings with the Owner, the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

**8. QUALIFIED PENSION AND PROFIT SHARING PLANS, AS DEFINED BY THE INTERNAL REVENUE CODE**

If the Owner is a qualified Pension or Profit Sharing Plan, the Owner may transfer the ownership of the policy to the Insured. If the policy is a life insurance policy and contains Transferability Restrictions, revocation of the Restrictions will result from the transfer.

If the policy is an annuity contract subject to Retirement Equity Act of 1984 (REACT), the Owner will be subject to the restrictions required under said Act, which are made a part of the contract. All prior beneficiary designations and payment plan elections are hereby revoked for said annuity contracts.

**9. POLICY ENDORSEMENT**

The Company may require that the policy be sent to it for endorsement to show any change.

**10. DEFINITIONS - as used in this form are defined as follows:**

**"Annuitant"** - means "Insured" when the form applies to an annuity contract.

**"Beneficiaries"** - includes direct beneficiaries, contingent beneficiaries and further payees.

**"Corporation"** - includes its successors.

**"Trustee"** - means the named trustee or successor in trust. When so designated, the trustee will be vested with the power to take all policy actions and the Company will be fully protected when acting as directed by said trustee.

The Northwestern Mutual Life Insurance Company *720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202* 414 271-1444 www.northwesternmutual.com



REDACTED

# Northwestern Mutual®

720 East Wisconsin Avenue
Milwaukee, WI 53202

**REQUEST FOR NEW OWNER ADDRESS
AND/OR NEW PAYER INFORMATION**

Policyowner Services Department
Beneficiary & Title Division
• Fax to 414-625-1295

INSURED'S NAME (FIRST, MIDDLE, LAST)

Marcel Theo Hall

List all Policy numbers to be changed:

| 21455316 | 21359124 | | |
|----------|----------|---|---|
| | | | |
| | | | |

List all Billing Account numbers to be changed:

| | | |
|---|---|---|

## New Owner's Address Information

**_Important:_**  To ensure that future mailings will be directed to the correct address, we encourage you to provide us with the new owner's address information

**_(Caution: Use form 90-1638 or form 90-1940 to name a new owner.)_**

NEW OWNER'S NAME (FIRST, MIDDLE, LAST)

Biz Markie, Inc.

DAYTIME PHONE NUMBER

202-232-7002

ADDRESS

1328 U Street NW, Suite/W

CITY

Washington

STATE

DC

ZIP CODE

20009

## Request to Change Payer

_If you have questions concerning changing the payer, please call our
Policyowner Customer Service Line at 1-800-388-8123._

NEW PAYER'S NAME (FIRST, MIDDLE, LAST)

SOCIAL SECURITY NUMBER

ADDRESS

CITY

STATE

ZIP CODE

DAYTIME PHONE NUMBER

## Home Office Use Only

☐ Life/DI Analyst Serv.     ☐ IPS/Annuities     ☐ MCB/ABS     ☐ Variable Life

The Northwestern Mutual Life Insurance Company •720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202• 414 271-1444 www.northwesternmutual.com

15-1265 (0614)     1058JOAM4JOEV0

(Page 1 of 1) eF

02-05-'19 18:00 FROM-                                                        T-862   P0001/0015  F-311

**Northwestern Mutual**®
720 East Wisconsin Avenue
Milwaukee, WI 53202

**OWNER DESIGNATION**
*(Not for use with Disability Income Policies)*
• A separate form is required for each Insured
• Fax to 414-625-1295

DO NOT ALTER the language on this form. If a different arrangement is needed, use OWNER DESIGNATION FORM 90-1638.

| POLICY NUMBER(S) | INSURED NAME (FOR JOINT LIFE INCLUDE BOTH INSURED NAMES) |
|---|---|
| 21455316  21359124  (1D1) | Marcel Theo Hall |

**Complete this chart based on the "new owner option" selected below.**

| TAXPAYER ID NO. (SOCIAL SECURITY NO./EMPLOYER ID NO.) | TAXPAYER'S NAME | DATE OF BIRTH (MM/DD/YYYY) (IF APPLICABLE) | GENDER (IF APPLICABLE) | |
|---|---|---|---|---|
| | | | ◯ Male | ◯ Female |
| | | | ◯ Male | ◯ Female |
| | | | ◯ Male | ◯ Female |

The Owner(s) of the Policy(ies) will be:

☑ Option 5 - BUSINESS ENTITY

Balancing Acts, Inc.                                                     Washington, DC
PRINT FULL NAMES OF BUSINESS/ENTITY                                      CITY & STATE OF LOCATION

The undersigned requests and directs the Company to make the provisions of all pages of this form a part of the policy(ies).

**SIGNATURE(S) OF OWNER(S)**

**BUSINESS ENTITY OWNED**
When signing on behalf of business or entity, Signer must be someone other than the Insured.

| PRINT OR TYPE NAME OF BUSINESS/ENTITY | | DATE SIGNED (MM/DD/YYYY) |
|---|---|---|
| Biz Markie | | 01.24.2019 |
| SIGNATURE OF AUTHORIZED COMPANY REPRESENTATIVE | PRINT OR TYPE NAME OF AUTHORIZED COMPANY REPRESENTATIVE | |
| | James Brown II | |

The Northwestern Mutual Life Insurance Company •720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202• 414-271-1444 www.northwesternmutual.com

90-1940 (0244)          1056JR8BGPRR7G                                                    (Page 2 of 2) v4

02-05-'19 18:00 FROM-                                                 T-862   P0002/0015 F-311

## ADDITIONAL OWNER PROVISIONS

**1. THE OWNER**

All policy rights may be exercised by the Owner, his or her successor or his or her transferee:

- without the consent of any beneficiary or further payee;
- while the Insured is living and, after his or her death, only as provided in Provisions 4 and 5.

**2. SUCCESSOR OWNERS**

If successor Owners are named, each Owner, during his or her period of ownership, may exercise all policy rights, including the right to change the succession of Owners. If two or more persons are concurrent Owners, the policy rights must be exercised jointly by the Owners, unless this form provides otherwise.

If a trust is named as successor owner and that trust does not qualify or is not in existence at the death of the Owner, the Insured will be the Owner.

**3. TRANSFER OF OWNERSHIP**

The Owner may transfer the ownership of this policy, subject to any Transferability Restrictions and to Provision 8. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will then take effect as of the date it was signed unless otherwise specified by the Owner. The Company is not responsible for any payment or other action taken by it before receipt of the satisfactory transfer.

The Company will be fully discharged of liability for any action taken by the Owner and for all amounts paid to, or at the direction of, that Owner and will have no obligation as to the use of the amounts.

**4. NAMING AND CHANGE OF BENEFICIARIES**

**Effective Date.** A naming or change of a beneficiary will be made on receipt at the Home Office of a written request that is acceptable to the Company. The request will then take effect as of the date it was signed unless otherwise specified by the Owner. The Company is not responsible for any payment or other action taken by it before receipt of the request.

**For Death Proceeds by Owner.** The Owner may name and change the beneficiaries:

- while the Insured is living;
- during the first 60 days after the date of death of the Insured, if the Insured just before his or her death was not the Owner. No one may change this naming of a direct beneficiary during this 60 days.

**For Surrender Proceeds by Owner.** The Owner may name the beneficiaries at the time the policy is surrendered.

**For Maturity Proceeds by Owner.** The Owner may name and change the beneficiaries of maturity proceeds before the Maturity Date. If no direct beneficiary is named by the Owner, the Insured will be the direct beneficiary.

**For Death Proceeds by Direct Beneficiary.** A direct beneficiary may name and change the contingent beneficiaries and further payees of his or her share of the proceeds:

- if the direct beneficiary is the Owner;
- if, at anytime after the death of the Insured, no contingent beneficiary or further payee of that share is living; or
- if, after the death of the Insured, the direct beneficiary elects a payment plan. The interest of any other beneficiary in the share of that direct beneficiary will end.

These direct beneficiary rights are subject to the Owner's rights during the above 60 days after the date of death of the Insured.

**For Maturity or Surrender Proceeds by Direct Beneficiary.** After the maturity, if any, or surrender of the policy, the direct beneficiary may name and change the contingent beneficiaries and further payees of his or her share of the proceeds under a payment plan.

**Beneficiary Rights.** The rights of any beneficiary are subject to the provisions of this form. A transfer of ownership of itself will not change the interest of a beneficiary of the death proceeds.

**5. PAYMENT PLAN ELECTIONS**

**For Death Proceeds by Owner.** The Owner may elect payment plans for death proceeds:

- while the Insured is living;
- during the first 60 days after the date of death of the Insured, if the Insured just before his or her death was not the Owner. No one may change this election made during this 60 days.

**For Death Proceeds by Direct or Contingent Beneficiary.** A direct or contingent beneficiary may elect payment plans for death proceeds payable to him or her if no payment plan that has been elected is in effect. This right is subject to the Owner's rights during the above 60 days.

**For Maturity or Surrender Proceeds.** The Owner may elect payment plans for maturity proceeds, if any, or surrender proceeds.

**6. EFFECTIVE DATE FOR PAYMENT PLAN**

A payment plan that is elected for death proceeds will take effect on the date of death of the Insured if:

- the plan is elected by the Owner; and
- the election is received at the Home Office while the Insured is living.

A payment plan that is elected for maturity proceeds, if any, will take effect on the Maturity Date if:

- the election is received before the Maturity Date; and
- the Insured is living on the Maturity Date.

In all other cases, a payment plan that is elected will take effect:

- on the date the election is received at the Home Office; or
- on a later date, if requested.

**7. TRUSTEE AS OWNER**

If the Owner is a Trustee, the Company will be fully discharged of liability for any action taken by the Owner in the exercise of any policy right and for all amounts paid to, or at the direction of, the Owner and will have no obligation as to the use of the amounts. In all dealings with the Owner, the Company will be fully protected against the claims of every other person. The Company will not be charged with notice of a change of trustee unless written evidence of the change is received at the Home Office.

**8. QUALIFIED PENSION AND PROFIT SHARING PLANS, AS DEFINED BY THE INTERNAL REVENUE CODE**

If the Owner is a qualified Pension or Profit Sharing Plan, the Owner may transfer the ownership of the policy to the Insured. If the policy is a life insurance policy and certain Transferability Restrictions, revocation of the Restrictions will result from the transfer.

If the policy is an annuity contract subject to Retirement Equity Act of 1984 (REACT), the Owner will be subject to the restrictions required under said Act, which are made a part of the contract. All prior beneficiary designations and payment plan elections are hereby revoked for said annuity contracts.

**9. POLICY ENDORSEMENT**

The Company may require that the policy be sent to it for endorsement to show any change.

**10. DEFINITIONS - as used in this form are defined as follows:**

**"Annuitant"** means "Insured" when the form applies to an annuity contract.

**"Beneficiaries"** - includes direct beneficiaries, contingent beneficiaries and further payees.

**"Corporation"** - includes its successors.

**"Trustee"** - means the named trustee or successor in trust. When so designated, the trustee will be vested with the power to take all policy actions and the Company will be fully protected when acting as directed by said trustee.

The Northwestern Mutual Life Insurance Company • 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202 • 414-271-1444 • www.northwesternmutual.com

90-1040 (0.51)                                                        (Page 3 of 3)

Case 1:22-cv-02588-CKK Document 1-4 Filed 04/05/22 Page 46 of 48

To Beneficiary & Title Division Northwestern Page 1 of 2 2020-10-20 23:34 (GMT) 12022045884 From Jennifer Izumi - Re: Markie & Balan REDACTED

## Northwestern Mutual

Questions about this form?
CALL 877-394-9524

# Designation of Beneficiaries

21455316

For Life and Annuity policies only. The policy owner may use this form to name the beneficiaries of the life insurance. *For more information, see page 5

POLICY NUMBER(S)

- Owner must name at least one direct beneficiary.

- Owner(s) must sign the form. If more than one owner, all owners are required to sign.

Marcel Theo Hall

- This form revokes all prior beneficiary designations and all prior payment plan elections on the referenced policies.

INSURED NAME (for Joint Life include both insured names)

## Direct Beneficiaries

If beneficiaries named on a prior beneficiary designation are to be included on this designation, they must be named again on this form.

### Section 1

Complete this designation by choosing the box(es) below:

[X] Individuals, business(es) or other entities (if selected, provide details in Section 2)

[ ] All children of the Insured, including any legally adopted child(ren).

    ( ) Per stirpes (optional)

[ ] Living Trust

_____ NAME OF TRUST

_____ TRUST DATE

[ ] Trust Under the Will of the Insured (may require probate)

[ ] Estate of the Insured (may require probate)

**Direct Beneficiary:** The individual or entity designated by the policy owner to receive the proceeds of a life insurance policy or annuity contract.

**Per Stirpes:** A legal term that controls how the policy's proceeds are paid upon the insured's death. If per stirpes is selected and a beneficiary dies before the insured dies, the deceased beneficiary's share will be paid to that beneficiary's surviving children in equal shares.

**Living Trust:** A legal agreement created while a person is living by which assets are placed in a trust and then transferred following death according to the trust's terms.

**Trustee:** An institution or individual who manages the trust assets.

**Trust Under the Will of the Insured:** A trust that is contained in a person's will and that takes effect at the person's death (also called a testamentary trust).

**Estate:** All the real and personal property owned by an individual at his or her death.

### Section 2

Complete this only if the first box in Section 1 is selected.

| FULL NAME OF PERSON / BUSINESS / OTHER ENTITY | Address (optional) | Relationship (applies for the name in column) |
|---|---|---|
| J_____ W_____ (20%) | | Nephew |

| | | |
|---|---|---|
| J_____ R. H_____ (20%) | | Nephew |
| M_____ R. H_____ (20%) | | Niece |

| | | |
|---|---|---|
| Jennifer D. Izumi (40%) | | Business Partner |
| 1905 15th Street, NW, #32 | | |
| Washington | D.C. | 20009 | 202.631.7908 |

1677KG87QHCX10

90-1197 (1217).
PAGE 1 of 7 | REF88

To  Beneficiary & Title Division Northwestern   Page 2 of 2 2020-10-20 23:01 34 (GMT)   12022045884  From  Jennif D Izumi - Biz Markie & Balan

## Northwestern Mutual

Questions about this form?
CALL 877 394 9524

### Owner(s) Signature(s)

The undersigned hereby:

* [illegible text]

* [illegible text]

* [illegible text]

21455316

POLICY NUMBER(S)

THE CURRENT OWNER(S) SHOULD SIGN IN THE APPLICABLE
SIGNATURE SECTION BELOW

**Note,** If you are acting on behalf of the owner in a
representative capacity (e.g. attorney in fact, guardian,
conservator etc.) provide your role as a current document is
signifying your authorization (if not previously on file already)

### Individual Owner(s)
If more than one owner, all owners are required to sign.

DATE SIGNED (MM/DD/YYYY)

### Entity / Business Owner

**10 / 13 / 2020**
DATE SIGNED (MM/DD/YYYY)

Balancing Acts Inc

Jennifer Izumi

### Trust Owner
If more than one trustee, all trustees are required to sign.

DATE SIGNED (MM/DD/YYYY)

### Massachusetts Witness Requirement

Witness signature is only required for policies / contracts issued in the commonwealth of Massachusetts. The witness must be over the age of 18 and
must not be the insured, annuitant, policy owner or a designated beneficiary, and must observe the owner signing the document.

1677KG87QHCX10

90-1397 (2175)
PAGE 4 of 2 (HIDDEN)

**PAGE 2/2 * RCVD AT 10/20/2020 6:01:37 PM [Central Daylight Time] * SVR:WSP-STNA-002361/13 * DNIS:1295 * CSID:12022045884 * ANI:4044249365 * DURATION (mm-ss):02-25**

 **Northwestern Mutual**

**It is recommended that you ...**

read your Policy.

notify your Northwestern Mutual agent or the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, of an address change.

call your Northwestern Mutual agent for information--particularly on a suggestion to terminate or exchange this Policy for another policy or plan.

**Important Notice Concerning Statements in the Application for Your Insurance**

Please read the copy of the Application attached in this Policy.  Omissions or misstatements in the Application could cause an otherwise valid claim to be denied.  Carefully check the Application and write to the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, within ten days of delivery, if any information shown on it is not correct and complete, or if any past medical history or other information has been left out of the Application.  The Application is part of the Policy and the Policy was issued on the basis that the answers to all questions and the information shown on the Application are correct and complete.

**Election of Trustees**

The members of The Northwestern Mutual Life Insurance Company are its policyholders of insurance policies and deferred annuity contracts.  The members exercise control through a Board of Trustees.  Elections to the Board are held each year at the annual meeting of members.  Members are entitled to vote in person or by proxy.

**WHOLE LIFE POLICY WITH ADJUSTABLE TERM PROTECTION**

**Participating**

Life Insurance Benefit payable on death of Insured.

Premiums payable for period shown on page 3.

ICC15.TT.ACL.(0715)

1199