**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,<br><br>  Plaintiff<br><br>vs.<br><br>J.R.H., *ex rel.* MALEEQUA C. HALL, *et al.*,<br><br>  Defendants. | CASE NO. 1:22-cv-2588-CKK |

**STIPULATION REGARDING DOCUMENTS AND**
**ELECTRONICALLY STORED INFORMATION**

To expedite the exchange of electronically stored information ("ESI") and Hard-Copy Documents in this action, pursuant to the Court's authority and with the consent of Minor Defendants and Cross-Plaintiffs J.R.H., J.W. a/k/a J.R.H., and M.R.H., and Cross-Defendant Jennifer Izumi (together, the "Parties"), the following STIPULATION REGARDING DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI Protocol") shall apply in this action.

**IT IS HEREBY AGREED:**

**I.     PURPOSE**

This Stipulation will govern production of Documents and ESI (as defined below) by the Parties. This Stipulation shall apply only to Documents that are produced in the first instance in this litigation. Nothing in this protocol shall require any party that is reproducing in this litigation Documents that were first produced in factually related matters into this litigation, to reformat or modify those reproductions except as set forth herein.

The production of Documents and ESI by the Parties also shall be subject to the provisions of any orders concerning confidentiality, privilege, and/or protected health information as agreed to among the Parties, or as required by statute, and/or entered by the Court ("Protective Orders").

The Parties reserve all objections under all applicable laws other than concerning matters that are addressed in this Stipulation.

Nothing in this Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the discoverability, admissibility, or confidentiality of documents or ESI. Nothing in this Stipulation shall be interpreted to supersede the provisions of any Protective Orders entered by the Court in this litigation, unless expressly provided for in such an order.

## II.   DEFINITIONS

a. "**Confidentiality Designation**" means the legend affixed to Documents or ESI for confidential or highly confidential information as defined by, and subject to, the terms of the Protective Orders agreed to and/or entered by the Court in this litigation.

b. "**Document**" is defined to include hard-copy documents, electronic documents, and ESI as defined herein.

c. "**Electronic Document or Data**" means Documents or data existing in electronic form at the time of collection, including but not limited to e-mail or other means of electronic communications such as text messages or chats, word processing files *(e.g.,* Microsoft Word), computer slide presentations *(e.g.,* PowerPoint or Keynote slides), spreadsheets *(e.g.,* Excel), and image files (e.g., PDF).

d. "**Electronically Stored information**" or "**ESI**," as used herein includes Electronic Documents or Data and computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB drives, or other real or virtualized devices or media.

e. "**Extracted Full Text**" means the full text that is extracted electronically from native electronic files and includes all header, footer, and document body information.

f. "**Hard-Copy Document**" means Documents existing in paper form at the time of collection.

g. "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.

h. "**Load files**" means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or native format files, as well as the corresponding Extracted Full Text or OCR text files and, to the degree available, containing agreed-upon extracted or user-created Metadata, as well as information indicating unitization (*i.e.,* document breaks and document relationships such as those between an e-mail and its attachments) used to load that production set into the document review platform of the Party receiving a production ("Receiving Party"), and correlate its data within that platform. A load file is used to import all image, native, and text files and their corresponding production information into a document database. The Party producing ESI or Documents (the "Producing Party") shall produce a load file for all produced Documents with each particular production in accordance with specifications provided herein.

i. "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

j. "**Metadata**" means: (i) information embedded in or associated with a Native File that describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information

generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, redaction status, privilege status, or confidentiality status created during the course of processing Documents or ESI for production, and (iv) information collected during the course of collecting Documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial data source from which it was collected. Nothing in this Stipulation shall require any Party to manually populate the value for any Metadata field.

k. "**Native Format**" or "**Native File**" means the format of ESI in which it was generated and/or used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is an .xls or .xslx file.

l. "**Optical Character Recognition**" or "**OCR**" means the optical character recognition technology used to read the text within electronic images of paper Documents and create a file containing a visible, searchable text format of such Documents.

m. "**Producing Party**" means the Party producing ESI or Documents.

n. "**Searchable Text**" means the native text extracted from an electronic Document and any Optical Character Recognition text ("OCR text") generated from the electronic image of a paper Document.

o. "Tagged Image File Format" or "TIFF" means a CCIT Group IV graphic file format for storing bit-mapped images of ESI or Hard-Copy Documents.

## III. IDENTIFICATION OF DOCUMENTS AND ESI

a. The Parties agree to meet and confer to discuss (i) data sources (including e-mail and text messages) containing potentially relevant ESI for potential collection, review, and production; (ii) parameters for scoping the review and production efforts (*e.g.,* application of date ranges, de-

NIST'ing, etc.); (iii) potential use and identification of search terms, tools, or techniques to collect ESI for responsiveness review; (iv) the identification and production of Documents and ESI from sources that do not require the use of search terms, tools, or techniques; (v) the method each Party proposes to use to identify and de-duplicate Documents, and any exceptions to such de-duplication the Party proposes to implement; and (vi) the treatment of non-responsive Documents within parent-child families.

b. The Parties further agree to meet and confer to the extent that any Party asserts that this Stipulation imposes any undue burden or expense on any Plaintiff or Defendant with respect to its response to any particular discovery request.

c. Nothing in this Stipulation shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools.

## IV.  GENERAL PRODUCTION SPECIFICATIONS

a. Sources of ESI: Notwithstanding the early identification of any ESI sources identified below, the Parties remain obligated to conduct a reasonable inquiry into whether any additional ESI sources are reasonably expected to contain discoverable ESI. The Producing Party should search ESI sources that are reasonably likely to contain discoverable ESI regarding and/or related to this case in its ESI collection or search unless doing so would result in a burden that is disproportionate to the litigation.

## V.  COLLECTION

The Parties shall collect ESI in a manner that enables them to satisfy the production requirements set forth in this Order. Among other production specifications, the Parties must ensure that any collection protocol preserves: (1) Metadata that the Parties agree to produce and (2) familial relationships that they must maintain for embedded files or emails with attachments.

## VI.    DE-DUPLICATION

a. To the extent exact duplicate Documents reside within a Party's ESI data set, the Party may produce only a single, de-duplicated copy of a responsive Document. "Exact duplicate" shall mean bit-for-bit identity of the Document content with exact hash value matches; so-called "near duplicates" will not be included within this definition.

b. To the extent a Party de-duplicates its Documents, it shall de-duplicate stand-alone Documents or entire Document families in their ESI sources by the use of hash values. Where any such Documents have attachments, hash values must be identical for both the Document plus-attachment (including associated Metadata) as well as for any attachment (including associated Metadata) standing alone.

c. A Producing Party shall de-duplicate ESI, including where appropriate across custodians and  such de-duplicated Documents shall be deemed produced from the custodial files of each identified custodian for all purposes in this litigation, including for use at deposition and trial. Where applicable, a Producing Party shall use a uniform description of a particular custodian across productions. The Producing Party agrees that the presence of an individual's name contained in the "All Custodian" field in the Metadata for a particular Document indicates that the individual possessed that document in his/her custodial file.

d. No Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using hash values.

e. Hard Copy Documents shall not be eliminated as duplicates of ESI.

f. If the Producing Party makes supplemental productions following an initial production, and the supplemental production contains exact duplicates, that Party shall provide with such a supplemental production an overlay file to allow the Receiving Party to update the "All Custodian"

field. The overlay file shall include all custodians listed in the "All Custodian" field in prior productions and any custodians newly identified in the current supplemental production.

## VII.   PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS

a. Standard Format.

1. The Parties shall produce electronically stored information in reasonably usable form. Unless otherwise specified in Section 5(b) or pursuant to Section 5(j) below, the Parties shall produce documents in portable document file format ("PDF") or tagged image file format ("TIFF"). All Metadata of PDFs or TIFFs of ESI shall be preserved - and produced upon request as set forth in section 2 below - by the Producing Party as in the original Document, including all commenting, versioning, and formatting that is visible in any view of the Document in its native application.

2. In the event the Receiving Party has reason to question the authenticity of a particular Document or file, the Producing Party may provide the Receiving Party with Metadata for a particular Document or file upon request.

3. Any TIFFs produced shall be single-page, 300 DPI, Group IV TIFF files with extracted text (or OCR text for Documents that have been redacted or exist in a format in which extracting text is not possible) and associated Metadata set out in this Stipulation.

4. After initial production in PDF or image file format is complete, a Party must demonstrate particularized need for production of ESI in its native format. If the Receiving Party, for good cause explained in the request, seeks production in native format of specifically identified ESI that was produced originally in TIFF-image form, the Producing Party shall respond reasonably and in good faith to any such request and reasonable requests shall not be declined.

5. The Producing Party may redact from any PDF, TIFF image, Metadata field, or native file material that is protected from disclosure by applicable privilege or immunity, that is governed

by privacy law or regulation, that contains information that is a trade secret or other confidential research, development, or commercial information that is unrelated to the devices at issue in this action or to any party's claim or defense, or that any protective order which may be entered in this action allows to be redacted. In preparing Document families for production, the Producing Party also may redact entire attachments that are wholly non-responsive and may produce slipsheets in their place. Each redaction shall be indicated clearly.

b. <u>Native Format</u>.

Except as provided below, the Parties shall produce all email and other messaging application data, spreadsheets, audio files, computer slide presentations, video files, and other file types that cannot be accurately represented in PDF or TIFF format in native format, provided, however, that the Parties will meet and confer regarding appropriate format of production for databases and structured data (*e.g.*, Microsoft Access, Oracle, SaS, or other proprietary databases). For each Document produced in native format, a responding Party shall also produce a corresponding cover page in PDF or TIFF image format, specifying that the Document has been "produced in native format" and endorsed with the Bates Number and Confidentiality Designation, if applicable, which will be inserted into the image population in place of the native file. When the native file is produced, the Producing Party shall preserve the integrity of the electronic Document's contents, *i.e.,* its original formatting and Metadata.

c. <u>Color</u>.

Documents containing color need not be produced in color. If production in color is deemed necessary to fully understand the meaning or content of a Document, the Producing Party will honor reasonable requests for a color image of a Document. Upon reasonable request by a Receiving Party, the Producing Party shall produce specifically identified Microsoft Word

Documents with track changes in color. Documents with track changes will be identified as such in Metadata. In addition, Documents produced in color will be produced in PDF, TIFF, or JPEG format. This provision does not apply to any Native File productions.

d. Embedded Objects.

If Documents contain embedded files or objects, the Parties shall extract the embedded files or objects as separate documents and treat them like attachments to the document to the extent reasonably possible. Images embedded in e-mails need not be extracted and produced separately.

e. Load Files.

For each production of ESI and Documents, the Producing Party shall preserve corresponding Concordance format load files (.DAT) and Opticon-format image lead file (.opt). The .DAT file, using standard Concordance delimiters, should contain a field with the full path and filename to files produced in native format and also containing Metadata fields identified in Appendix A, to the extent the information is available in the original ESI file and can be extracted without unreasonable burden using standard litigation support processing platforms (except for vendor generated fields related to the litigation production, such as "BEGDOC", "ENDDOC", bases for redaction, and Confidentiality Designations). The Producing Party may provide the Receiving Party with the Metadata described in this section for a particular document or file upon request.

f. .Txt Files.

For all documents containing extracted full text or OCR text, the Producing Party shall provide searchable document level .txt files (named using the Bates start/"BEGDOC"), which shall reside in either the same file directory as the images for such Documents or in a separate directory with a file for cross referencing.

g. Bates Numbering and Other Unique Identifiers.

Every item or file of ESI that is produced shall be identified by a unique page identifier ("Bates Number") and a Production Volume Number for any storage device (e.g., CD, USB, hard drive) containing such files. All Bates numbers will consist of an Alpha Prefix, followed by a numeric page index. There must be no spaces in any Bates number. Any numbers with fewer than 8 digits will be front padded with zeros to reach the required 8 digits. All ESI produced in PDF or TIFF format shall contain a unique Bates Number on each page of the Document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source Document. If a member of a Document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password protected document), those technical problems shall be identified and disclosed to the Receiving Party by production of a Bates-labeled slip sheet that states "Technical issue—file cannot be processed," and identifying in the production's accompanying .DAT file any Document requiring a technical issue slip sheet; the associated Metadata for the file with the technical problem shall be preserved and, where technically possible, produced. A Receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

h. Hard-Copy Documents.

Except as otherwise set forth in this paragraph, the Parties agree that responsive paper Documents shall be converted to single-page PDF or TIFF files and produced following the same protocols set forth in Section 5(a) above, including the production of OCR text that is generated to make such Documents searchable. Generally, all paper Documents will be scanned and produced electronically, unless a Party establishes good cause for making such Documents available via

paper and reasonable access is provided to the opposing Party to review the Documents directly. In scanning all Hard-Copy Documents, Hard-Copy Documents should be logically unitized. Accordingly, distinct Documents should not be merged into a single record and single Documents should not be split into multiple records. In the case of an organized compilation of separate Documents (for example, a binder containing several separate Documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending documents and attachment fields. The Parties will make their best efforts to unitize the Documents correctly. Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only populate the following Metadata fields: "BEGDOC," "ENDDOC," "ALL CUSTODIAN," "SOURCE," "CONFIDENTIALITY DESIGNATION," AND "REDACTION", as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

     i. <u>Confidentiality Designation</u>.

     To the extent any Document or ESI (or portion thereof) produced as a PDF or TIFF image in accordance with this Stipulation is designated as Confidential, or Highly Confidential—Attorneys' Eyes Only under any Protective Order agreed and/or entered in this litigation, the Producing Party will brand the required Confidentiality Designation in a corner of any PDF or TIFF images representing the produced item and in a consistent font type and size that does not obscure any part of the underlying image or Bates number, to the extent possible.

     j. <u>Privilege Logs</u>.

     If a Party withholds or redacts requested information or materials based upon the assertion of a privilege or application of the work-product doctrine, that Party shall provide a privilege log

describing each Document or thing withheld or redacted in sufficient detail to reasonably permit the Party seeking discovery to assess the validity of the privilege. This includes:

(i) a unique identifying number, along with a separate column identifying the Bates number(s) of a Document claimed to be privileged if produced in redacted form or produced as a Bates-stamped slip sheet;

(ii)    the subject of the Document, based on the Subject (or other similar category) from electronically generated Metadata associated with the Document, to the extent applicable and reasonably available, except that a Party may redact some or all of this information to the extent that it has a good faith belief that it would reveal privileged information;

(iii) the date of the Document to the extent reasonably ascertainable;

(iv) the From (or Author), To, CC, and BCC information for the Document based on electronically generated Metadata, to the extent applicable and reasonably available. For e-mails, the Parties may identify this information based on the Metadata of the topmost e-mail in the chain;

(v) the specific privilege asserted;

(vi) (the factual basis for the privilege, including a description of the nature of the Document in sufficient detail to reasonably permit the Party seeking discovery to assess the validity of the privilege;

(vii) indication *(e.g.,* with an asterisk) of which individual(s) on the privilege log (authors, senders, and recipients) are attorneys or other legal personnel giving rise to the privilege. If an attorney(s) or other legal personnel is/are not within the Metadata of the most recent e-mail, but otherwise appear on the face of the Document or are apparent from

context, the designating Party will include the name(s) of any such individual(s) within the description or comparable field that identifies such legal nexus; and

(viii) the name of or other identifying information as to the source of the Document, (listing of the primary custodian constitutes sufficient identifying information).

k. <u>Format and Timing of Privilege Logs</u>.

The privilege log shall comply with Fed. R. Civ. P. 26(b)(5). The Parties shall produce their privilege logs in Excel format that allows for text searching, sorting, and organization of data, and shall be produced either: (a) in a cumulative manner, so that each subsequent privilege log includes all privilege claims from prior logs; or (b) in installments using a consistent format so that the installments can be merged into a cumulative Excel spreadsheet by the Receiving Party. Within <u>sixty (60) days</u> of each production, the Parties shall produce their privilege logs for that production.

l. Presumptively Privileged Documents and Protection Against Waiver for Inadvertently Produced Privileged Information. The Parties agree that the following categories of Documents are presumptively privileged and shall not be logged: communications between a Party and its counsel regarding the current litigation. This Stipulation provides the Parties with all protections afforded by Federal Rule of Evidence 502(d). A Party does not waive either attorney-client privilege or work-product protection by disclosing a Document in this litigation, regardless of the care the Producing Party took to avoid the Document's disclosure. This non-waiver provision applies to this litigation and all other state and federal proceedings. This provision applies equally to ESI and Hard-Copy Documents. If a Party identifies Documents (including ESI) produced by another Party that it reasonably expects to be subject to attorney-client privilege or work-product protection, the Receiving P of the Documents must promptly identify the Producing Party of the same. If the Producing Party opts to assert attorney- client privilege or work-product protection

and claw the Document back, it may do so by initiating the process outlined in Fed. R. Civ. P. 26(b)(5)(B). The Parties' Document productions are subject to their rights under the any Protective Order entered by the Court, the practices of this Court, Fed. R. Civ. P. 26(b)(5), and Fed. R. Evid. 502. Any Party or non-party who inadvertently discloses material that is privileged (including, but not limited to, the attorney-client privilege, the work-product protection or the joint defense privilege) will not be deemed to have waived any applicable privileges or protection, pursuant to Fed. R. Evid. 502(d). Upon discovery of an inadvertent disclosure of privileged material, a Party or non-party shall promptly advise the Receiving Party and request that the inadvertently produced material be returned. The Receiving Party shall return or destroy such inadvertently produced material, including all copies, within 14 days of receiving such a written request. The Receiving Party shall retrieve the information if it was disclosed prior to notification, and must not use or disclose the information until the claim is resolved. The Party returning such inadvertently disclosed material may thereafter seek re-production of any such material pursuant to applicable law by making a motion within 14 days.

m. <u>Logging Redactions</u>.

Redaction of non-privileged information shall not be logged provided the Party specifies the basis of the redactions on the production image or in the Metadata. This section shall not be construed to require a Party to redo its privilege logs, redactions, or production of Documents initially produced in other litigations that were reproduced in this action.

n. <u>Redactions</u>.

A Party may use redactions to protect attorney-client or work product privileges as permitted by statute, code, rule, this Stipulation or any Protective Order agreed and/or entered in this litigation. Other than as permitted by this Stipulation or any Protective Order agreed and/or

entered in this litigation, no redactions for relevance may be made within a produced Document or ESI item. Any redactions shall be clearly indicated on the face of the Document, with each redacted portion of the Document stating that it has been redacted and the basis for the redaction. Where a responsive Document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the Document and the text/OCR corresponding to the non-redacted portions. E-mail header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a Document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable requests for the production of particular redacted Documents in other formats where the PDF, TIFF, or JPEG image is not reasonably usable.

o. Parent-Child Relationships.

The Parties acknowledge and agree that parent-child relationships within a Document family (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved. Responsive non-privileged electronic Documents attached to an e-mail or embedded within other electronic Documents and Hard-Copy Documents attached or appended to Hard-Copy Documents must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. E-mail attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent Documents and ending number of the last attachment must be populated for each child and parent Document.

p. OCR.

OCR software shall be set to the highest quality setting during processing.

q. <u>Deviation from Production Specifications</u>.

If a particular document or category of documents warrant a different format, including where documents were retained or stored by a Party in a format lacking Metadata, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

r. <u>Productions from Other Proceedings</u>.

The production of Documents made by Defendants in other litigation, factually related matters, and/or administrative actions by federal (including Congressional) state, or local government entities shall be made in the format in which they were previously produced, including any previously produced Metadata, load files, and accompanying text files. This ESI protocol shall not be construed to require a Party to revise its privilege logs, redactions, or productions of Documents initially produced in other civil investigations, litigations, and/or administrative actions that are reproduced in this action.

s. <u>Password Protection</u>.

In the event any Document or ESI (or portion thereof) produced is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the Document or ESI.

t. <u>Use at Deposition</u>.

Any Document produced in native format that a Party identifies and/or marks as an exhibit at a deposition must include as part of that identification or exhibit the produced corresponding cover page in PDF or TIFF image format, endorsed with the Document's Bates Number and Confidentiality Designation, as described in Section 5(a), above absent exigent circumstances. If a Party identifies and/or marks a Document as an exhibit at a deposition without the corresponding cover page as required by this provision, the Party shall note the Bates Number and Confidentiality

Designation of the Document on the record. Where the Party identifying and/or marking the exhibit is unable to do so during the deposition, the exhibit shall be treated during the deposition as Highly Confidential - Attorneys' Eyes Only and designated as such until the Bates Number is identified, and the proper Confidentiality Designation can be determined.

## VIII.   PRODUCTION MEDIA

The Producing Party shall produce Documents on readily accessible, computer or electronic media, including CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site, or such other readily accessible computer or electronic media as the Parties may agree (the "Production Media"). Each piece of Production Media shall be encrypted and assigned a production number or other unique identifying label ("Production Volume Number") corresponding to the date of the production of Documents on the Production Media as well as the sequence of the material in that production, and shall include (a) the name of the litigation and the case number; (b) the identity of the Producing Party; (c) the production date; (d) the Bates Number range of the materials contained on such Production Media item; and (e) the Production Volume Number of the Production Media. The Producing Party shall accompany all Document productions with a transmittal cover letter identifying by Bates number the Documents produced. If the Producing Party produces Documents via secure FTP site, the Producing Party shall specify the Date through which the materials will remain available via the secure FTP site and the Producing Party shall, within a reasonable time, accommodate requests from another Party or Parties that Documents be reposted to the FTP site.

## IX.   COST SHIFTING

The costs of production pursuant to this Stipulation shall be borne by the Producing Party. However, in agreeing to this Stipulation, no Party waives or relinquishes any right it may have to seek cost shifting or apportionment for the costs of electronic discovery.

**X.    THIRD-PARTY ESI**

a. Following the execution of this ESI Protocol and the Protective Order, a Party that issues a non-Party subpoena (the "Issuing Party") shall include a copy of this Stipulation and any Protective Order entered in this litigation with the subpoena and include the following language: The Parties in the litigation have requested that third parties produce Documents in accordance with the specifications set forth herein.

b. The Issuing Party shall produce a copy to all other Parties of any Documents and ESI (including any Metadata) obtained under subpoena to a non-Party.

c. If the non-Party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

**XI.    BEST EFFORTS COMPLIANCE AND DISPUTES**

The Parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provision(s) of this Stipulation. If a Producing Party cannot comply in a particular circumstance with this Stipulation, such Party shall promptly inform the Receiving Party in writing why compliance with the Stipulation is not reasonable or feasible. No Party may seek relief from the Court concerning compliance or non-compliance with the Stipulation until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

**XII.    MODIFICATION**

This Stipulation may be modified by the Parties entered by the Court or by Order of the Court.

**Appendix A: ESI Metadata and Coding Fields**

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegBates | Bates number of the first page of the document. | All | Prefix-0000000001 |
| EndBates | Bates number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Bates number of the first page of the first document of the document family. | All | Prefix-0000000001 |
| EndAttach | Bates number of the last page of the last document of the document family. | All | Prefix-0000000004 |
| PageCount | Number of printed pages in the document. | All | 2 |
| Confidentiality designation | Confidentiality designation, if any, of the document. | All | Confidential<br>Highly Confidential |
| All Custodian | Names of the custodian whose copy was produced and all other custodians who possessed the document.<br><br>Where multiple individuals share first and last name, individuals should be distinguished by an initial, which is kept constant between productions. For instance: Smith, John | All | Doe, John;<br>Smith, John;<br>Smith, Jane |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | A. and Smith, John B. For documents from centralized repositories where custodian name(s) are unavailable, identifying source information should be provided. | | |
| All Directory Path | The file paths/ directory paths correlating to the file. | ESI | |
| Source | Source shall be used in connection with document obtained from third parties and identify the third-Party having provided the particular material. If the third party's production of documents included individual custodian information, such information shall also be included in the "CUSTODIAN" field. | | |
| Subject/ESubject | Subject line of an e-mail. | E-mails | Text of the subject line |
| To | All recipients that were included on the e-mail "To" line of the email. | E-mails | John.Doe@e-mail.com |
| From | The name and e-mail address of the sender of the e-mail. | E-mails | Jane.Doe@e-mail.com |
| CC | All recipients that were included on the | E-mails | Bill.Black@e-mail.com |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | "CC" line of the e-mail. | | |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | ceo-gs@e-mail.com |
| DateSent | Date an e-mail was sent. | E-mails | 01/01/2015 |
| TimeSent | Time an e-mail was sent. | E-mails | 12:30:00 |
| DateModified | Date the document was last modified. | E-attachments; Electronic documents | 01/01/2015 |
| TimeModified | Time the document was last modified. | E-attachments; Electronic documents | 12:30:00 |
| DateCreated | Date the document was created. | E-attachments; Electronic documents | 01/01/2015 |
| TimeCreated | Time the document was created. | E-attachments; Electronic documents | 12:30:00 |
| Family Date | Date last modified or, for e- mails, sent date of the parent. | Electronic documents; E-attachments | 01/01/2015 |
| Family Time | Time last modified or, for e- mails, sent time of the parent. | Electronic documents; E-attachments | 12:30:00 |
| DateReceived | Date e-mail was received. | E-mails | 01/01/2015 |
| TimeReceived | Time e-mail was received. | E-mails | 12:30:00 |
| Redaction | "Redacted" or "Yes". | E-attachments; Electronic documents | |
| FileName | File name of original | Electronic | Microsoft Word 2007/2010 |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | document | documents; E-attachments | |
| File Type | Application type | Electronic documents; E-attachments | Word |
| File Size | Size of file | All | 40 gb |
| File Extension | The file extension of the document. | E-attachments; Electronic documents | .doc |
| NativeLink | Relative file path to each native file on the production media. | All documents produced in native format | \Natives\Document_12345.doc |
| Author | Document author/creator | E-attachments; Electronic documents | John Doe |
| Title | Document Title | E-attachments; Electronic documents | Text of the title line |
| HASH | MD5 or SHA-1 Hash value | Electronic documents; Eattachments; E-mails | |
| File Path | | | |
| TIME ZONE PROCESSED | | | |
| TextPath | Relative file path to each extracted text/OCR text file on the production media. | All | \Text\Document_12345.txt |

STIPULATED AND AGREED THIS 1ST DAY OF SEPTEMBER, 2023.

Respectfully submitted,

*/s/ Matthew M. Girgenti*
Matthew M. Girgenti (D.C. Bar No. 1033735)
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
Telephone: (202) 663-60000
Facsimile: (202) 663-6363
matthew.girgenti@wilmerhale.com

*Guardian Ad Litem for Defendants J.R.H.,*
*M.R.H., and J.W. a/k/a J.R.H.*

*/s/ William R. Martin*
William R. Martin (D.C. Bar No. 465531)
Erin C. Steele (D.C. Bar No. 1656360)
BARNES & THORNBURG LLP
555 12th Street N.W., Suite 1200
Washington, D.C. 20006-4623
Telephone: (202) 289-1313
Facsimile: (202) 289-1330
billy.martin@btlaw.com
esteele@btlaw.com

*/s/ Dayna Cooper*
Dayna Cooper (D.C. Bar No. 1033851)
COOPER LEGAL, LLC
1 Olympic Place, Suite 900
Towson, MD 21204
(202) 642-5470
dayna@cooperlegalsolutions.com

*Attorneys for Cross-Defendant*
*Jennifer Izumi*