UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, | |
| Plaintiff, | |
| vs. | Case No.: 1:22-cv-02588-CKK |
| J.R.H., *ex rel.* MALEEQUA C. HALL, *et al.* | |
| Defendants. | |

## **MOTION TO INTERVENE**

Pursuant to District of Columbia common law and by contract, a law firm has a right to assert a lien on the potential recovery of a former client to recover the firm's unpaid fees. In this Circuit, the firm may do so by intervening in the underlying case. The proper procedure is for the Court to grant the motion to intervene, enable the firm to notice and petition its lien on its former client's potential recovery, and determine the extent and validity of the lien when and if necessary at an appropriate time.

Lewis Brisbois Bisgaard & Smith LLP ("LBBS"), formerly counsel for ████████ ██████████████████████████████████████████,[1] files this Motion to Intervene for the sole purpose of establishing its attorneys' lien in the above-captioned matter. For the reasons identified more fully in the attached Memorandum of Points and Authorities in Support, LBBS respectfully requests that the Court grant this Motion, file its attached Notice of Lien and Petition to Establish the same, and otherwise allow LBBS to participate in this case to the limited extent

---

[1] While not making an appearance as counsel of record on ████████ behalf in in this case, LBBS established an attorney-client relationship with, and performed substantial work on behalf of, ████████████████████ in relation to this case, as described more fully in the attached Memorandum of Points and Authorities in Support.

1

necessary to litigate and protect its interest in any judgment or recovery granted in favor of █

████████

Dated:  January 29, 2025                    Respectfully submitted,

                                           /s/ Stefan M. Palys
                                           Stefan M. Palys
                                           DC Bar No. 1765785
                                           Stefan.Palys@lewisbrisbois.com
                                           LEWIS BRISBOIS BISGAARD & SMITH LLP
                                           2112 Pennsylvania Avenue NW, Suite 500
                                           Washington, DC 20037
                                           202.558.0655

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

     Plaintiff,

vs.

J.R.H., *ex rel.* MALEEQUA C. HALL, *et al.*

     Defendants.

Case No.: 1:22-cv-02588-CKK

**LEWIS BRISBOIS BISGAARD & SMITH LLP'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
<u>MOTION TO INTERVENE</u>**

i

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 4

   I.   LBBS IS ENTITLED TO INTERVENE TO ENFORCE ITS LIEN ON ██████████
       ██████████████████████████████ RECOVERY ....................... 4

     A.  LBBS Timely Filed This Motion to Intervene Shortly After it Withdrew From
         Representing ████████████ ................................................. 6

     B.  LBBS Has a Legally Protected Interest in This Action Through Its Lien on ████████
         ████████████████ ........................................................... 7

     C.  LBBS' Interests Will Be Impaired, Absent Intervention ................................. 9

     D.  No Other Party to the Litigation Will Adequately Represent LBBS' Interests ............ 10

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

Deutsche Bank Nat'l Tr. Co. v. FDIC,
   717 F.3d 189 (D.C. Cir. 2013) .................................................................................. 5

Elam v. Monarch Life Ins. Co.,
   598 A.2d 1168 (D.C. 1991) ...................................................................................... 4

Forest Cnty. Potawatomi Community v. U.S.,
   317 F.R.D. 6 (D.D.C. 2016) ...................................................................................... 5

Karsner v. Lothian,
   532 F.3d 876 (D.C. Cir. 2008) .................................................................................. 6

Martens v. Hadley Memorial Hosp.,
   753 F. Supp. 371 (D.D.C. 1990) .............................................................................. 5

Peterson v. Islamic Republic of Iran,
   220 F. Supp. 3d 98 (D.D.C. 2016) ........................................................................... 5

Peterson v. Islamic Republic of Iran,
   724 F. App'x. 1 (D.C. Cir. 2018) (unpublished) ...................................................... 8

Roeder v. Islamic Republic of Iran, 3
   33 F.3d 228 (D.C. Cir. 2003) .................................................................................... 5

U.S. v. Sum of $70,990,605,
   2018 WL 4623568 (D.D.C. 2018) ............................................................. 5, 6, 7, 9, 10

Willoughby v. Mackall,
   5 App.D.C. 162 (D.C. 1895) ..................................................................................... 8

Wolf v. Sherman,
   682 A.2d 194 (D.C. 1996) ..................................................................................... 7, 8

### RULES

Fed. R. Civ. P. 24(a) ........................................................................................................ 10

## INTRODUCTION

Lewis Brisbois Bisgaard & Smith LLP ("LBBS"), former counsel for ███████████ ████████████████████████, seeks to participate in the above-captioned lawsuit to the limited extent necessary to establish its lien for attorneys' fees on any recovery ████████████ may obtain, whether by arbitration award, judgment, order, settlement or otherwise arising out of this matter, or the related case, captioned ██████████ ████████████████████████████████████████████████. LBBS is entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) and applicable District of Columbia caselaw, which has long recognized an attorney's right to intervene in a cause of action to assert a lien on a party's potential recovery, in conjunction with LBBS' agreement with ████████████ LBBS has established a lien on ████████████ potential recovery in this matter, and this Court should grant LBBS' Motion to Intervene and grant LBBS leave to file the attached Notice of Lien (**Exhibit 5**) and Petition to Establish (**Exhibit 6**) the same.[1]

## BACKGROUND

In or around May 2024, LBBS and ████████████ entered into an attorney-client relationship, memorialized by a May 23, 2024, Engagement Letter (the "Engagement Letter" or "Agreement") (attached hereto as **Exhibit 1**). As part of this Agreement, ████████████ engaged the services of LBBS to

> "[a]ssist [████████████ and [████████████] existing counsel with defense of the [████████████ against ████████████ ████████████████████████████████████

---

[1] Pursuant to D.C. Bar Ethics Opinion 379, LBBS intends that these Exhibits also be filed "under seal . . . to the maximum extent possible" to protect client confidences from third parties without a need to know. *See* D.C. Bar Ethics Op. 379 (2020).

including preparation for mediation and, if necessary, motion for summary judgment."

**Exhibit 1** § 3, Schedule "A".

Between June 2024 and early December 2024, LBBS provided such services to ███████ ███████ reviewing pertinent documents, investigating facts and legal claims and defenses, formulating legal strategy, attempting to maneuver this case to settlement where possible, and drafting and preparing dispositive motions. Additionally, for approximately the same period, at the request and with the consent of ███████████ LBBS rendered the same services in support of the present, related case. *See, e.g.*, **Exhibit 2** (October 2, 2024 email from ██████ ███ acknowledging LBBS' work on this case); **Exhibit 3** (December 4, 2024 letter from ████████████████████████████████████ to LBBS, requesting LBBS grant ███ ████████████ current counsel access to "any [of LBBS'] work on the related Interpleader [case]" and related "billing"); **Exhibit 4** at 3 (December 3, 2024 email from ███████ ████████ current counsel, recognizing "[t]he clients, ███████████████████████ ████████ retained me and [LBBS] on or about June 15, 2024 to assist with litigation ██████ ████████████████████████████████████ --- one ████████████████████ ████████████ regarding rights and responsibilities in connection with ████████████ ████████████████████ and an Interpleader filed by Northwestern Mutual Life Insurance over the rightful beneficiaries to two life insurance policies (Policies A and B), each of which were initiated to pay beneficiaries a collective $1 million in the event Marcel Hall passes (which happened in July 2021).").

Under the Agreement, ████████████████ agreed to pay LBBS for its services at a set hourly rate, with LBBS sending ████████████████ periodic statements for services rendered and costs incurred, and ████████████ agreeing to pay all statements no later than 30 days

2

after receipt. *Id.* §§ 7, 11. ███████████ agreed that their failure to comply with such provisions, or other provisions in the Agreement, constituted grounds for LBBS to terminate the agreement and withdraw from its representation of ███████████ *Id.* District of Columbia Rule of Professional Conduct 1.16(b) similarly provides that "a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if: . . . [t]he client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled," and notes in Comment 8 that a lawyer "may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning the timely payment of the lawyer's fees, court costs or other out-of-pocket expenses of the representation." D.C. Rules of Prof'l Conduct R. 1.16(b)(3), cmt. 8.

To secure payment for services provided by LBBS, ███████████ granted LBBS a lien "in the amount of sums owing to LBBS at the conclusion of services performed plus any costs, attorney's fees, or interest to which LBBS maybe entitled," on "any recovery [███████ ███████ may obtain, whether by arbitration award, judgment, order, settlement or otherwise arising out of or relating to all claims or causes of action that are the subject of the representation" under the Agreement. **Exhibit 1** § 9. ███████████ and LBBS further agreed that LBBS was entitled to "compel payment of fees and costs from any such funds," even in the case of LBBS' termination of its representation of ███████████ prior to the completion of the representation. *Id.* Moreover, the Agreement provided that "[n]othing in [the Scope of Representation] shall in any way limit ███████ obligation to pay for or [LBBS]'s right to receive payment for any services provided by [LBBS] at ███████ request." *Id.*

3

LBBS formally terminated its relationship with ████████████ on December 9, 2024, following ██████████████ continued repudiation of the Agreement via, among other things, nonpayment of legal fees. ██████████████ never objected to LBBS' billings in the course of the representation. *See, e.g.*, **Exhibit 4** at 2 (██████████████ counsel noting "I had reviewed the 4 invoices [LBBS] sent to the client and . . . they seemed fine" outside of minor corrections). After continued communications in December 2024 failed to result in resolution of the then-pending issues between LBBS and ██████████████ LBBS was left with no choice but to intervene in the present action to protect its rights under the Agreement and applicable D.C. caselaw.[2]

As described more fully below, LBBS has a clear financial interest established by its agreements with ██████████████ and has grounds to intervene in this case to enforce that interest. LBBS thus respectfully requests that the Court grant its Motion to Intervene and grant it leave to file its Notice of Lien and Petition to Establish the same.

## ARGUMENT

I.     **LBBS IS ENTITLED TO INTERVENE TO ENFORCE ITS LIEN ON ██████████████████████████████ RECOVERY**

LBBS is entitled to intervene in the instant matter to notice and enforce its lien, both express or equitable, on any recovery that this Court may later determine ██████████ ██ entitled to. This Court has long recognized an attorney's right to intervene—and the Court's jurisdiction over such intervention—in actions related to express or equitable liens arising out of the attorney's representation. *Peterson v. Islamic Republic of Iran*, 220 F. Supp. 3d 98, 106

---

[2] The District of Columbia "has no statute governing liens by an attorney against a client for attorneys' fees." *Wolf v. Sherman*, 682 A.2d 194, 197 n. 5 (D.C. 1996) (citing *Elam v. Monarch Life Ins. Co.*, 598 A.2d 1168 n. 2 (D.C. 1991)).

(D.D.C. 2016) ("This Circuit has long allowed attorneys to intervene in the underlying case to protect their interests, recognizing that charging liens 'arise[] out of the underlying action and relate[] back to the inception of the action.'") (quoting *Martens v. Hadley Memorial Hosp.*, 753 F. Supp. 371 (D.D.C. 1990)) (citation omitted); *accord U.S. v. Sum of $70,990,605*, 2018 WL 4623568, 3-4 (D.D.C. 2018) (determining attorney seeking enforcement of lien on judgment proceeds entitled to intervene under Fed. R. Civ. P. 24(a)).

Federal Rule of Civil Procedure 24(a)(2) states the Court should grant a party's intervention where the moving party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." That, in turn, entails consideration of four requirements: (1) "the application to intervene must be timely"; (2) "the applicant must demonstrate [that it has] a legally protected interest in the action."; (3) "the action must threaten to impair that interest"; and (4) "no party to the action can be an adequate representative of the applicant's interests." *U.S. v. Sum of $70,990,605*, 2018 WL 4623568, 3 (D.D.C. 2018) (quoting *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013)). Additionally, the party seeking intervention must have Article III standing (*id.*), though anyone "who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *Forest Cnty. Potawatomi Community v. U.S.*, 317 F.R.D. 6, 11 n. 4 (D.D.C. 2016) ("generally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and vice versa."). That standing can be based on a claimed right to protect the intervening party's "interest in any recovery or settlement that its former clients may obtain[.]" *U.S. v. Sum of $70,990,605*, 2018 WL 4623568,

5

3 (D.D.C. 2018) ("This Circuit has long allowed attorneys to intervene in the underlying case to protect their interests").

LBBS satisfies the requirements to intervene for much the same reasons as the law firm did in *U.S. v. Sum of $70,990,605*. In that case, this Court was "convinced" that the firm satisfied the requirements for intervention where: (1) the firm filed its motion to intervene "shortly" after withdrawing as a party's counsel; (2) the firm provided legal services with respect to the pending action and raised the existence of a lien against that party's potential recovery in that action; (3) the proceeds of the litigation had yet to be disbursed; and (4) other parties to the litigation would not adequately represent the law firm's interests in obtaining such recovery. *Id.* at 3-4. As such, this Court found the firm "presented a plausible claim that it is entitled to a charging lien and that it should be allowed to intervene to litigate that claim" even where the claimants had not yet obtained a judgment or settlement. *Id.* at 4. LBBS should be granted the same relief because it satisfies those same requirements, as explained below.

### A.    LBBS Timely Filed This Motion to Intervene Shortly After it Withdrew From Representing █████████████

LBBS files this motion 51 days after it withdrew from its representation, including both time over the winter holidays and New Year, as well as time spent trying to avoid the need to file this motion. That is timely under this Circuit's law.

This Circuit has held that timeliness of motions to intervene are to be considered under "all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the [movant]'s rights, and the probability of prejudice to those already parties in the case." *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008). In *U.S. v. Sum of $70,990,605*, this Court determined that a law firm's intervention to enforce an attorney's lien was timely

6

where the firm filed its motion approximately one month after the client requested that the firm

withdraw, and several days after the court granted the firms' motion to do the same. *See* 2018

WL 4623568, 3 (D.D.C. 2018).

Here, like the law firm in *U.S. v. Sum of $70,990,605*, LBBS's application to intervene is

timely because it has filed within approximately one month of terminating its representation of

███████████████ *See id.* LBBS terminated its representation of ████████████████ on

December 9, 2024, following repeated requests and offers to work with ████████████ to

continue its representation. LBBS brings this motion on January 29, 2025, less than two months

later, and notably following discussions with ████████████ current counsel in an effort to

avoid withdrawal and judicial intervention. Further, as noted more fully below, LBBS has moved

to intervene prior to disbursal of any funds in favor of ███████████████ it is thus timely

seeking intervention to protect its rights related to any such recovery. *See id.* at 4 (granting law

firm's motion to intervene prior to defendants obtaining judgment or settlement).

**B.    LBBS Has a Legally Protected Interest in This Action Through Its Lien on**
**████████████████████████████████████ Recovery**

LBBS has a legally protected interest in this action through its lien on ██████

████████ potential recovery, whether express or equitable. D.C. caselaw has long recognized

the validity of an attorneys' lien on proceeds obtained through judgment and recovery where the

client and the attorney understood that the attorney would be paid out of the case's proceeds;

such a lien may either be express or created through operation of equity. *Wolf v. Sherman*, 682

A.2d 194, 198 (D.C. 1996). The latter, referred to as a "charging lien," "does *not* depend on an

[express] agreement that the attorney have a *lien* upon the judgment[.]" *Id.* (emphasis in

original). Although an attorney and client may establish an express lien by written agreement, an

equitable charging lien exists merely "if the parties intended that the attorney would be paid out

of the fund." *Id.* at 198-99 (emphasis in original). Charging liens "may protect an attorney in the absence of agreement for an express lien; they do not delimit the remedies available to an attorney with respect to compensation." *Id.* at 201; *see also Peterson v. Islamic Republic of Iran*, 724 F. App'x. 1, 3 (D.C. Cir. 2018) (unpublished) ("The law of the District of Columbia . . . provides that an attorney's charging lien arises by operation of equity from a lawyer-client agreement 'from which the conclusion may reasonably be reached that they contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered.'") (quoting *Wolf*, 682 A.2d at 197). For more than a century, Courts applying D.C. law have identified that "[t]here is no reason why the agreement [relating to attorneys' fees and the creation of a lien] should not be liberally construed." *Wolf*, 682 A.2d at 201 (quoting *Willoughby v. Mackall*, 5 App.D.C. 162, 166 (D.C. 1895), *aff'd*, 167 U.S. 681 (1897)). Moreover, "the trend of the modern [D.C.] decisions is to protect the right of the attorney to receive compensation[.]" *Peterson*, 7 F. App'x at 4 (cleaned up).

Here, LBBS maintains an express lien through its Agreement with ██████████ "in the amount of sums owing to LBBS at the conclusion of services performed plus any costs, attorney's fees, or interest to which LBBS maybe entitled," on "any recovery ██████ ████████ may obtain, whether by arbitration award, judgment, order, settlement or otherwise arising out of or relating to all claims or causes of action that are the subject of the representation[.]" **Ex. 1** § 9. This language aligns with that identified by the D.C. Court of Appeals in *Wolf* as creating an express lien. 682 A.2d at 201 ("[the law firm] shall have a lien against and shall be entitled to be paid from any sums that are recovered or awarded by way of agreement, settlement, judgment or any other manner in [the represented matter] for all fees due and owing from your business."). While ██████████████ initially retained LBBS in

connection with another case █████████████████████████████████

████████████████████████████████████████████████████████████,

with ████████████ knowledge and approval, LBBS took on the same role and work in

this case: *i.e.*, reviewing pertinent documents, investigating facts and legal claims and defenses,

formulating legal strategy, and drafting and preparing dispositive motions. That began on or

about June 2024 through early December 2024.

Further, ████████████ current counsel—retained by ████████████ in part to

"manage billing," **Exhibit 3**, has acknowledged that "[t]he clients, ████████████

████ . . . retained [LBBS] . . . to assist with litigation ████████████████

████████████" including this case, "an Interpleader filed by Northwestern

Mutual Life Insurance over the rightful beneficiaries to two life insurance policies (Policies A

and B)," and acknowledged that LBBS' related billings, calculated in accordance with the terms

of the Agreement, "seemed fine."  **Exhibit 4** at 2. As the Agreement makes clear, "[n]othing in

[the Scope of Representation] shall in any way limit [████████s obligation to pay for or

[LBBS]'s right to receive payment for any services provided by [LBBS] at the [████████s

request" (**Ex. 1** § 9) and the modern trend in D.C. is to liberally construe these agreements.

**C.    LBBS' Interests Will Be Impaired Absent Intervention**

LBBS' right to share directly in the proceeds of the litigation will be lost if the remaining

proceeds are disbursed prior to LBBS' intervention. This Court has recognized that the relevant

interest where a law firm seeks intervention to assert an attorneys' lien is the "right to share

directly in the proceeds of the litigation" to recover funds owed to it, a right "impaired" for

purposes of intervention "if the proceeds are dispersed, and [the law firm] is left to bring a

collection action." *U.S. v. Sum of $70,990,605*, 2018 WL 4623568, 4 (D.D.C. 2018). Like the

law firm in *U.S. v. Sum of $70,990,605*, LBBS' interests will be impaired unless it is permitted to

intervene: resolution of the pending cross-motions for summary judgment (Dkt Nos. 70, 73) and, if not, trial, may grant judgment in favor of ██████████ leaving LBBS to a separate collection action and vitiating its right to share in recovery afforded to ██████████

### D.    No Other Party to the Litigation Will Adequately Represent LBBS' Interests

No other party to the pending litigation will adequately represent LBBS' interests in the litigation. Like the law firm intervenor in *U.S. v. Sum of $70,990,*605, and unlike the interpleader defendants in the present matter, LBBS does not seek intervention to litigate the merits of a party's entitlement to the interpleaded funds. *See U.S. v. Sum of $70,990,605*, 2018 WL 4623568, 4 (D.D.C. 2018) (noting that the law firm's interests in asserting a lien were "wholly unrelated to the interests" of competing claimants to a fund). Rather, as noted above, LBBS seeks only the opportunity to protect its own interests in recovery that may ultimately be awarded to ██████████ It respectfully requests that the Court grant it an opportunity to do so.

### CONCLUSION

For the foregoing reasons, LBBS respectfully requests that this Court grant its Motion to Intervene, grant LBBS leave to file the attached Notice of Lien and Petition to Establish its Attorneys' Lien, and to retain jurisdiction over any settlement or judgment in favor of ██████████ until LBBS' attorneys' lien is satisfied.

Dated:  January 29, 2025                    Respectfully submitted,


                                            /s/ Stefan M. Palys
                                            Stefan M. Palys
                                            DC Bar No. 1765785
                                            Stefan.Palys@lewisbrisbois.com
                                            LEWIS BRISBOIS BISGAARD & SMITH LLP
                                            2112 Pennsylvania Avenue NW, Suite 500
                                            Washington, DC 20037
                                            202.558.0655

# EXHIBIT 1

 

May 23, 2024

**VIA ELECTRONIC MAIL**



      Re:    Engagement Letter

Dear ▮▮▮▮▮

      Lewis Brisbois Bisgaard & Smith LLP ("LBBS" or "the Firm") appreciates the opportunity to work with you. The purpose of this correspondence is to, upon execution: 1) establish an attorney client relationship between LBBS and ▮▮▮▮▮▮▮▮▮▮ "you" or "the Clients"); 2) define the scope of the Firm's representation of the Clients; and 3) establish other material terms and conditions of the representation, including but not limited to the financial terms. This correspondence may be referred to as the "Engagement Letter" or the "Agreement."

      This Engagement Letter will serve as a contract that is binding on both the Firm and the Clients, on the following terms and conditions.

     1.   PARTIES TO ENGAGEMENT LETTER

      The parties to the Agreement are LBBS and You. No other person or entity shall be entitled to claim an attorney client relationship with the Firm with respect to the legal services to be provided pursuant to the Engagement Letter.



May 23, 2024
Page 2

2.  <u>INCEPTION OF ATTORNEY CLIENT RELATIONSHIP</u>

No attorney client relationship will exist between LBBS and You until You have executed the Agreement, nor will LBBS be obligated to provide legal services, until You have returned a signed copy of this Agreement and paid the initial retainer called for under Paragraph 8.

3.  <u>SCOPE OF REPRESENTATION: SCHEDULE A</u>

LBBS will perform only those legal services set forth in the Scope of Representation attached as Schedule A.  You shall have no expectation that the Firm will provide legal services beyond those set forth in Schedule A, unless LBBS and You amend the Engagement Letter in writing or execute a separate agreement with respect to any such additional legal services.  You are generally required by law to retain documents, including electronically stored information ("ESI"), which may be relevant to the matter which is the subject of the representation.  Preservation of documents including ESI is Your responsibility, and it is important that You take all necessary and reasonable steps to preserve this information.  The Firm is available to discuss the scope of Your obligations and to provide advice or recommendations in this regard.  Nothing in this paragraph shall in any way limit Your obligation to pay for or the Firm's right to receive payment for any services provided by the Firm at Your request.

4.  <u>DUTIES OF CLIENTS/YOU</u>

You agree to provide LBBS with complete and accurate information and documents, cooperate, keep us informed of relevant developments, abide by this Agreement, and pay our statements on time. In addition, You will advise us of any changes to Your address and telephone number.

5.  <u>LEGAL FEES</u>

We will charge You for the services provided pursuant to the Agreement based on the amount of time (including travel) we devote to the matter at the hourly rates for the particular professionals involved as are set forth in Schedule B.  We bill in minimum units of 6 minutes, or .1 hour.

We reserve the right, in our discretion, to an annual rate increase up to 10%.  We will provide You with a 30 day notice of any such increase which will then automatically apply to the next invoice following the notice period.  In the event that we seek an annual rate increase greater than 10%, we will provide You with the 30 day notice and seek Your consent to the increase, not to be unreasonably withheld.  We reserve the right to staff the handling of the matter with the partners, associates, paralegals and/or other personnel of our choice, at the rate we establish for each such timekeeper, although we will discuss the staffing of Your matter with You at any time, and will consider Your input in the staffing of the matter.

6.  <u>COSTS, EXPENSES AND OTHER CHARGES</u>

███████

May 23, 2024
Page 3

a. <u>COSTS AND EXPENSES: SCHEDULE B</u>

We will incur on Your behalf various costs and expenses in performing legal services under the Agreement.  You agree to pay for those costs and expenses, in addition to the hourly fees. Schedule B, attached, includes a non-exhaustive list of costs we may incur on Your behalf.

b. <u>OUTSIDE CONSULTANTS/OTHER VENDORS</u>

In addition to the costs of the type set forth in Schedule B, it may become necessary to hire persons or entities outside LBBS, including but not limited to consultants, experts, investigators, co-counsel, or other professionals.  We will select any consultants or investigators to be hired after notice to and consultation with You, and You agree to honor the terms and conditions of any agreement that we enter into on Your behalf with any such outside person or entity.

c. <u>REIMBURSEMENT OR DIRECT PAY</u>

We reserve the right in our sole discretion to either pay directly any of the costs incurred such as those set forth in Schedule B, and/or for outside consultants or other vendors, or to ask You to pay any such expense directly.  If we exercise our right to require You to pay an outside vendor invoice directly, and You fail to do so, You agree to defend and indemnify the Firm with respect to any claim, demands or suit brought against the Firm as a result of Your failure to pay such invoice.  Payment directly by the Firm of any such expense shall not be construed as a waiver of our right to require You in the future to pay any similar expense directly.

7. <u>PERIODIC STATEMENTS AND BILLING TERMS</u>

Our practice is to send periodic statements for services rendered and for costs incurred during the previous month or months on our client's behalf.  The detail in the periodic statement will inform You of both the nature and progress of work and of the fees and costs being incurred. Our fee structure is based upon Your promise to pay all statements no later than 30 days after receipt.

We do our best to see that our clients are satisfied not only with our services, but also with the reasonableness of the fees and costs.  Therefore, while we urge You to raise any question about or objection to a fee statement, You must do so promptly.  Such inquiry shall be timely only if made, in writing, within thirty (30) days after the date of the invoice.  In the absence of a timely written inquiry, You will be deemed to have accepted the invoice and to have acknowledged that You are satisfied with it, in the absence of good cause for not having objected more timely.

In the event You fail to pay any invoice within thirty (30) days of the statement date, You agree to pay interest at the maximum rate allowed by law on the amount of such invoice, from the statement date until paid in full.  If we accept late payment of any invoice without interest, we shall not be deemed to have waived any claim in the future for interest on other invoices.  If You timely



May 23, 2024
Page 4

object in writing to a portion of a statement, You agree to pay the remainder of the statement which is not in dispute. We agree to accept such partial payment without claiming You have waived Your right to contest the unpaid portion of the bill.

Failure to pay the undisputed amount of any invoice in full within 30 days shall constitute grounds for termination of this Engagement Letter and withdrawal of the Firm from representation, as more fully discussed in Paragraph 11 ahead.

## 8.  RETAINER: SECURITY AND ADVANCE PAYMENT OF FINAL INVOICE

This Engagement Letter shall not be effective until You have signed it and delivered a retainer in the amount of ███████ This retainer is not an estimate of the total charges which may be incurred. The retainer is: 1) a sum to be held as security for the Firm with respect to Your obligations to pay the fees and costs incurred by the Firm pursuant to the Engagement Letter; and 2) an advance payment to be applied to the Firm's final invoice in this matter. We expect that You will live up to the terms and conditions of the Engagement Letter in full, in which case the full amount of the remaining retainer will be applied against the final invoice and any excess returned to You. However, should You become delinquent on the payment of any statement, we may in our discretion apply the retainer to the payment of that statement. In that event, You shall immediately restore the retainer to its full amount upon our request. Failure to restore the retainer upon our request shall constitute grounds for termination of this Engagement Letter and withdrawal from representation, as more fully discussed in Paragraph 11 ahead.

We also reserve the right to require, and You agree to provide, increases to the retainer should the time and expense required to carry out the representation contemplated by this Engagement Letter increase beyond that reasonably anticipated at the beginning of the engagement.

The case which is the subject of this Engagement Letter may resolve in one of a variety of different ways, including dismissal, settlement, or trial. Trial preparation and the actual trial of a case are the most time consuming part of any litigation engagement. We are likely, therefore, to require an increased retainer before we begin trial preparation. We will determine the amount of the increase in the retainer prior to the trial, based upon an estimate of time and costs that may be involved for trial preparation and trial. Failure to provide the increased retainer upon our request shall constitute grounds for termination of this Engagement Letter and withdrawal of the Firm from the representation as more fully discussed in Paragraph 11 ahead.

## 9.   ATTORNEY LIEN

You hereby grant LBBS a lien on any and all claims or causes of action that are the subject of the representation under this Agreement. The lien will be in the amount of sums owing to LBBS at the conclusion of services performed plus any costs, attorney's fees, or interest to which LBBS may be entitled. The lien will attach to any recovery You may obtain, whether by arbitration award,



May 23, 2024
Page 5

judgment, order, settlement or otherwise arising out of or relating to all claims or causes of action that are the subject of the representation under this Agreement.  The effect of such a lien is that LBBS may be able to compel payment of fees and costs from any such funds recovered by You even if LBBS has been discharged before the end of the case.  As noted in Paragraph 15, You have the right to seek the advice of separate counsel with respect to this Agreement. This right applies to all of the provisions of this Agreement, but is especially important with respect to this paragraph granting the Firm lien rights which may affect Your property rights.

10. <u>TERMINATION OF THE FIRM BY YOU</u>

You shall have the right to terminate this Engagement Letter and discharge the Firm at any time.  However, to be effective, termination or discharge of the Firm must be in writing.  In such event, You authorize the Firm to make and retain a duplicate of Your file.

You shall bear all reasonable costs of transferring the new matter to counsel chosen by You.

The attorney client relationship between the Firm and You shall end upon discharge of the Firm by You pursuant to this paragraph.  However, such discharge shall not relieve You of any obligation to pay fees and costs incurred prior to the discharge, as well as any fees and costs expended after the discharge to the extent reasonably required in the Firm's sole discretion to protect Your interests prior to court order substituting new counsel or permitting withdrawal of the Firm from the litigation.

11. <u>WITHDRAWAL FROM REPRESENTATION BY THE FIRM</u>

The Firm shall be permitted to withdraw from representation whenever required or permitted to do so by law.  In addition, the Firm may withdraw as counsel at any time if withdrawal can be accomplished without material adverse effects on the interests of You, or if: 1) You persist in a course of action involving a lawyer's services that the lawyer reasonably believes to be criminal or fraudulent; 2) You have used the lawyer's services to perpetrate a crime or fraud; 3) You insist upon pursuing an objective that the lawyer considers repugnant or imprudent; 4) You fail substantially to fulfill an obligation to LBBS regarding the Firm's services (including, but not limited to, Your financial obligations under this Engagement Letter) after reasonable warning from the lawyer that the lawyer will withdraw unless the obligation is fulfilled; 5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by You; or 6) where other good cause for withdrawal exists.

12. <u>DOCUMENT STORAGE POLICY</u>

On termination of a matter, the Firm will maintain file documents for 10 years, or any alternate period as determined by District of Columbia.  Upon termination of the matter, You have the right to take possession of the file.  If You choose to take possession of the file, the firm may copy all or any

███████████

May 23, 2024
Page 6

part of the file. If You choose not to take possession of the file, the firm will retain the file pursuant to its document storage policy stated above.

13. <u>CHOICE OF LAW/FORUM SELECTION</u>

This Agreement is deemed to have been executed, and is intended to be performed in the District of Columbia, subject to its laws, regardless of whether services are actually rendered outside of the District of Columbia. Any dispute arising from this Agreement shall be governed by the laws of the District of Columbia. The venue for the judicial resolution of such dispute shall be proper only within the District of Columbia.

14. <u>NO PROMISES OR GUARANTEES</u>

You understand that LBBS has made no representation or guarantee concerning the outcome of the matter set forth in the attached Schedule A.

15. <u>RIGHT TO SEPARATE COUNSEL</u>

You acknowledge having had the opportunity to seek the advice of separate counsel with respect to this Agreement.

16. <u>LEGAL MALPRACTICE INSURANCE</u>

As of the date of this letter, Lewis Brisbois Bisgaard & Smith LLP has errors and omissions (legal malpractice) insurance applicable to the services to be rendered pursuant to this Agreement, subject to any applicable deductible or self-insured retention.

17. <u>MODIFICATION IN WRITING ONLY</u>

No change to this Agreement shall be effective unless and until confirmed in writing and signed and acknowledged by the Firm and You making express reference to this Agreement. This Engagement Letter embodies the whole agreement of the parties. There are no promises, terms, conditions or obligations other than those contained herein, and this contract shall supersede all previous communications, representations, or other agreements, either oral or written, between the Firm and You.

18. <u>COUNTERPARTS AND FACSIMILES EFFECTIVE</u>

This Agreement may be signed in counterpart. Facsimile or imaged signature pages executed by the Firm or You shall be effective as original signatures.

Thank You for choosing Lewis Brisbois Bisgaard & Smith LLP as Your counsel with respect to the matter set forth in Schedule A.

██████████
May 23, 2024
Page 7


        We look forward to working with You and thank You once again for the opportunity to serve You, upon execution of this Engagement Letter.


Dated:    <u>May 23, 2024          </u>

Accepted and agreed to:



        By:    ████████████

        Name   ██████

        Title:  ████████████████

        Address: ████ █████████████

        Phone:  ██████

        Fax:

        E-mail  ███████

                        Very truly yours,



████

█████████

May 23, 2024
Page 8

<u>SCHEDULE "A":</u>

SCOPE OF REPRESENTATION

█████████.

Assist Clients and Clients' existing counsel with defense of the Clients against a Complaint ████
████████████████████████████████████████████████ including
preparation for mediation and, if necessary, motion for summary judgment.

***

██████

May 23, 2024
Page 9

SCHEDULE "B":

RATE SCHEDULE AND COST/EXPENSE ITEMS SCHEDULE

A.    **Identification**

Client(s):    ██████████

██████████████████████████

B.    **Hourly rates for legal personnel**

████    Partners: ██████, ████████, ████████

████    Associates

████    Paralegals

████    Law Clerks

C.    **Standard charges**

We charge for our time in minimum units of .1 hours (6 minutes).

D.    **Costs and expenses incurred on Your behalf may include but are not limited to:**

| | |
|---|---|
| Process server fees | At cost |
| Filing fees or other fees fixed by law or assessed by public agencies | At cost |
| Meals | At cost |
| Parking | At cost |
| Travel expenses including  e.g., lodging, air fare, taxis, public transportation, car rental, and meals | At cost |
| Facsimiles | ████ per page |
| Deposition costs | At cost |
| Experts, consultants or investigators | At cost |
| Computer Research | At cost, plus facilities surcharge (approximately ████/minute) |
| Word processing support | ████ per hour |
| Mileage | At the Internal Revenue Service's business mileage reimbursement guidelines |
| Messenger and other delivery fees | At cost |



May 23, 2024
Page 10

| | |
|---|---|
| Photocopying and other reproduction costs | In-house - ▮▮▮ per page Outside service-At cost |
| After hours building services (when dictated by special client need) | At cost |

# EXHIBIT 2

**From:** ███████████████

**Sent:** Wednesday, ███████ 2024 6:12 PM

**To:** Palys, Stefan; ███████████████████

**Cc:**

**Subject:** Re: ███████████████ Summary Judgment ████ Interpleader

**Attachments:** ████████████████

---

EXTERNAL

Stefan,

Please see my notes.

I will look at ████████████████████████████████████████ and circle back here so it is at the top of your Inbox in the morning.

Of course, please do not hesitate to call me with any questions.

Best,

████████

---

**From:** Palys, Stefan <Stefan.Palys@lewisbrisbois.com>

**Sent:** Wednesday, ███████ 2024 11:26 AM

**To:** ████████████████████████████████

**Cc:** ███████████ @lewisbrisbois.com>

**Subject:** ████████████████ Summary Judgment ██████ Interpleader

All:

Here's a draft of █████████████ summary judgment in the interpleader. ███████████████ I wanted to get this to you now so you all could weigh in on the substance since it's due on Saturday. I am working on the controverting and additional statement of facts now and will have those to you shortly but didn't want to wait given the short time left to file (sorry to cut it close).

████████████████████████████████████████████



**Stefan M. Palys**
**Partner Admitted in Arizona, Nevada, Virginia, and the District of Columbia**
Stefan.Palys@lewisbrisbois.com

**T: 202.558.0668 F: 202.558.0654**

2112 Pennsylvania Avenue NW, Suite 500, Washington, DC 20037 | **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**



This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

# EXHIBIT 3

**VIA ELECTRONIC MAIL**

Stefan Palys
Partner
Lewis Brisbois Bisgaard & Smith
2112 Pennsylvania Avenue NW, Suite 500
Washington, D.C. 20037
E-Mail: stefan.palys@lewisbrisbois.com

December 4, 2024


Re:     Engagement – ███████████████████████████

Dear Mr. Palys:

███████████████████████████████████████ retained ██████████ Lewis Brisbois on or about June 15, 2024 to represent us on certain matters, including advising and assisting us in pending litigation ████████████████████████████████████████████████████████████████████ including preparation for mediation and, if necessary, motion for summary judgment ("the Matter").  We have enjoyed working with the Lewis Brisbois team, led by ████████ our originating contact and billing partner.

████████████████████████████████████████ we retained him and ████████████████████ to continue representing us as lead counsel on the Matter, including continuing to lead and manage on any work with Lewis Brisbois as co-counsel and managing billing.  We thought this continuation was clear and obvious. If it was not, the purpose of this correspondence is to notify you formally that, while ████████████████ ████████████████████████████████████████████████████████████████ Please ensure that ██████████ has access to all files at Lewis Brisbois regarding this Matter, any work on the related Interpleader and billing.

    If you have any questions about this, please direct any questions to ██████████████ ███████████████████████████████████████████████

Thank you for your cooperation.

# EXHIBIT 4

**From:** ███████████████████████
**Sent:** Wednesday, December 4, 2024 11:14 AM
**To:** Palys, Stefan; ██████████
**Cc:** ████████████
**Subject:** Re: Summary Judgment Replies/Invoices

EXTERNAL

We know.

Get Outlook for iOS

**From:** Palys, Stefan <Stefan.Palys@lewisbrisbois.com>
**Sent:** Wednesday, December 4, 2024 11:08:16 AM
**To:** ████████████████████████████
**Cc:** ████████████████████████
**Subject:** RE: Summary Judgment Replies/Invoices

All:

FYI, ████████████████████████████
███████████████ are ████ due on ██████.

██████ I don't agree with your comments below both in terms of what is stated, and what you chose to omit. I am not going to respond here, though.



**Stefan M. Palys**
**Partner Admitted in Arizona, Nevada, Virginia, and the District of Columbia**
**Stefan.Palys@lewisbrisbois.com**

**T: 202.558.0668 F: 202.558.0654**

2112 Pennsylvania Avenue NW, Suite 500, Washington, DC 20037 | **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**



This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are

not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

**From:** ████████████████████████████
**Sent:** Tuesday, December 3, 2024 6:46 PM
**To:** Palys, Stefan <Stefan.Palys@lewisbrisbois.com>; ██████████████████████████
**Cc:** ████████████████████████
**Subject:** RE: Summary Judgment Replies/Invoices

EXTERNAL

Hi Stefan,

The purpose of this email is to reset our conversation – starting with completing our conversation regarding the invoices LB submitted to the client this month and your statement that you will withdraw and not work further on the reply briefs for the MSJ's you drafted unless the client pays ████ immediately; but, hopefully, when all is said and done, resetting and working out matters so you at least complete your pending projects on the MSJs and the money issues are resolved reasonably.

When the client first made me aware of this situation (on November 17), I contacted you on November 18 -- to attempt to work through this issue.  At the time, I hoped to figure out what was causing you to make such a drastic demand at such a delicate time ██████████████████████████ the MSJs) and, at the very least, wanted the opportunity to fulfill my obligation to the client to manage the billing process and work through this situation in a way that worked for the client, for you and for LB.  My goal in calling you yesterday was to facilitate a resolution to this issue – and certainly to keep you on the team to see the client through the end of the MSJs you drafted, which we all believe will be the end of the cases.  More specifically, the purpose of my call to you yesterday was  to let you know:

(1) I had reviewed the 4 invoices you sent to the client and that they seemed fine to me, except for some entries I had promised to remove or credit the client in August and some old entries for me);
(2) **the client is not delinquent in payments to LB** -- because one of the four invoices you emailed to her on November 11 had been issued July 24 and paid in early August  2024 and the other  3 were **first submitted to the client in November** (one by email ██████████████ on 11/7/24) and all three by your 11/11/24 email to the client); accordingly,
(3) in light of the clients not failing materially to fulfill their obligations to the firm, there are no appropriate grounds to demand accelerated payments or to threaten to withdraw as counsel without completing projects on which you have been working (███████████████████████████████ ████████████████████);
(4) if this is really about the importance to receive cash before the year end, we ought to discuss an appropriate arrangement in which you follow through on the projects on which you have been working and the client promises to pay an amount it can reasonably pay before year end and guarantees the remainder will be paid within a reasonable period (likely from the insurance policies that we all expect to pay out reasonably ████████████████████████████); and
(5) if you or LB insist on withdrawing, which is questionable under DC Bar Rule 1.16  ("[a] lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the client's interests  or if … the client fails substantially fails to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled"), you would at least be required to ensure that the withdrawal not have a material  adverse effect on the clients' interests – which is complicated by your role in leading the

investigation of facts, researching the relevant law, developing the positions and drafting the MSJs and related briefs.  (Rule 1.16 is  attached for your information and convenience.)

We didn't get past points 2-3 before the conversation was sidetracked by your interjected counter-points and ultimate ending of the call as follows:  (a) questioning the client's account of the timing of the submission of the invoices; (b) asserting that the client already agreed to pay the demanded amount on the accelerated timeline you requested and that I was somehow "interfering" with the payment; (c) asserting that failure to pay the ███████ demanded would "screw" you [in the LB year-end accounting]; and (d) questioning my motives for managing the billing; and finally (e) asserting that you didn't feel comfortable continuing the conversation because you felt "in the middle" of something going on between me and the firm.

Below, I address my main points and these issues – starting with going "back to genesis" so we are all reminded (i) how this originated, (ii) what our respective roles have been and (iii) what that means as we try to resolve the current situation – which you describe in the subject line of this email chain as "Summary Judgment Replies/Invoices".

### **Back to Genesis – Relevant Background**

It is important to remember how we got here.  A few points summarize the relevant background.



- The clients, ████████████████████████████████████ retained me and the firm on or about June 15, 2024 to assist with litigation that had been initiated ████████████████ one ████████████████████████ regarding rights and responsibilities ████████████ ████████████████████████ and an Interpleader filed by Northwestern Mutual Life Insurance over the rightful beneficiaries to two life insurance policies (Policies A and B), each of which were initiated to pay beneficiaries a collective $1 million in the event Marcel Hall passes (which happened in July 2021).
- ████████████████████████████████████ I contacted two other LB partners to possibly help on the matter:  you (as a local partner whom I understood was a highly competent full-time litigator) and ████████████ (whom I included because I thought may add insight on any entertainment law issues).  At that point, discovery had already concluded and our role was to dive in (on the facts and the law) and to help the client(s) develop their best positions for settlement conferences and, if necessary, motions for summary judgment – which the client and us agreed would still be used to try to drive a reasonable settlement if not a complete victory.
- As we started to dive into the facts and legal issues in early July, I was surprised that money became a difficult internal issue immediately.  As we were planning our "ramp up' (key documents and legal issues to review), ████████████████████████████████ ████████████ began sounding alarms (with us and others in firm management) that the client had said something that indicated an inability to pay.  You and I disagreed – neither of us recalling the client indicating an inability to pay.  We both spent a significant amount of time in July attempting to convince ████ (and I attempted with others, including the firm General Counsel) that (a) we did not recall hearing any red flags regarding the ability to pay, (b) we could protect the firm by managing the staffing and tasks carefully and taking a strong role in upcoming settlement conferences, and (c) in any event, the face of the life insurance policies in the Interpleader action calling for client ████ to receive $██████████ -- $████████ of which we suspected we may be able to resolve through "reset" of settlement discussions or MSJ.

- Our effort to manage the work for this client efficiently was (a) to make you the point person as we ramped up – on reviewing the key documents, directing the legal research through associates and developing preliminary ideas regarding positions to recommend to the client; and (b) you sharing the key information and findings – and developing the positions to recommend -- with me.
- Notwithstanding our efforts to reassure the firm, ███ insisted that, to protect the firm, (a) LB could not appear in any litigation and (b) we had to demand the client pay an increased retainer (beyond the ███ paid in accordance with the engagement letter) of $ ███ immediately – <u>or lawyers at the firm would be directed to cease work on the matters</u>. I was confused – because I had never experienced anything like this at my former firm and I was afraid these efforts (to hold back) may harm the client who was relying on the firm to shape/shore up positions for the settlement conferences and MSJs. I pushed back and had challenging conversations with firm management. The result of our efforts to re-assure ███████████ this client was not a real payment risk was set 7/23/24: I had to create an invoice that day, submit it to the client immediately and tell the client to pay the early bill within two weeks (as opposed to the 30 days contemplated by the engagement letter) – or our team would be directed to cease work for the client. I agreed to do this, but voiced my discomfort with having to bill early and demand accelerated payment – with a client that had not been billed, much less been late with payment. The client met the demand to accelerate the payment of the early 7/24 bill; but, as I told you, the client questioned whether ███ time was more as a firm administrator, as opposed to helping further their cause. At that point, as I told you in August, I agreed it would be just me and you, with associate help (and that I would adjust the bills to credit for or remove ███ time). From the day the client met the demand to accelerate payment on the first (early) invoice, I never heard anything more from firm management about the matter before ███████████ ████████.
- As we proceeded to work through issues for the client in August – including coordinating key facts and preparing excellent legal arguments, in anticipation of settlement conferences and setting the table for MSJs – I **became increasingly more impressed with you as a lawyer and co-counsel**. As both settlement efforts fell apart (without us spending hours in a conference), I admired how you had already set the table to pivot to the MSJs █████████████████████. All of this and our periodic check in calls led me to feel confident that we would succeed in helping guide the client to victory in both the ███ and Interpleader matter – which made me comfortable with you (and ███████) leading on all of the facts/evidence to be submitted on the MSJs and preparing the drafts.
- I still believe we have the winning formula for the client here – which is why I have been hoping we can resolve these billing issues that arose in mid-November.


## Mid-November: Invoices, Payment Demands and Summary Judgement Replies

While some may suggest that my efforts to manage the bills comes from some problem with the firm, nothing could be further from the truth. █████████████████████ I had approved a prebill I received in September; but, I had not sent a second invoice to the client. █████████████████████ I confirmed the client's wish that I continue in my role, including coordinating and managing the LB efforts and billing. I expressed this to LB management; but, no one from the firm reached out to discuss the matter further or to discuss billing. After those threshold conversations, the first thing I heard about this client and billing came in mid-November – **when the client reached out to ask me to manage the billing** because, according to the client (on November 17, 2024):

- She had just spoken to you and "he wants $█ this week."
- She let you know that the client "only received one invoice from the firm which was █ at the top of the month [November 7]", which meant to her that she had at least 30 days to review and pay the invoice before the client would be considered late (which is correct per the engagement agreement).
- "However,  when Stefan emailed me, he said I owed $█... When I spoke to him, he said he understood why I was surprised ... since I only received the █ invoice ..."
- "He said he cannot move forward unless I pay him █ by Tuesday and would not start working again on things until Tuesday."
- **She was confused by this – because she hadn't received any invoices since ████** **until November 7 and she thought I was still going to manage the efforts and the billing** **the same ████**

This is the reason I called you on November 18 – to find out what was going on and to let you know that I would review the invoices and manage the situation in a way that takes care of all concerned.  Upon review of the invoices, I spoke with the client this weekend; then, I called you yesterday to try to work through this (but, as noted above, we didn't finish).  The things that concern me most and seem to be creating undue tension are:

1. **The position** you have taken in the November 26 email below and in the conversation with me last night – **that "the invoices have been outstanding for some time" – is false**.  I am certain that I sent no more invoices between July 24 and September 17, 2024.  The client has said she received no more invoices – until ████ November 7, 2024.

2. The **attempt to leverage the need to complete the MSJ process** (by drafting █ briefs █ ████ – "so that we are able to proceed with the necessary work, **we need you to make an immediate payment of $█ at least,** **by this coming Monday 12/2" – reminds me of the demands that were made (to** **accelerate the billing and payment process contemplated by the engagement letter) in** **July and August to which I objected**.  This is not necessary because the client and I want to make sure LB is paid all of its reasonable fees (████ ████ requiring some of those responsible for the frivolous positions from the other side to help with all of the fees).

Upon review of the bills, I found that:
- Except for a few entries that should not be billed, they seemed fine.
- I also could not believe we were talking about the possibility of you withdrawing – **because the** **new invoices had not been submitted before November 7 and 11 (and are not even 30** **days old)**.

Even though we all feel great about the fact that the Interpleader will result in payment ████ ████ within a reasonable time, for the sake of helping to keep you happy and on the team, I asked the client to consider what the client might be able to pay before year-end, without causing the client much distress.

**Other Issues You Raised**

I would like to address the additional issues that you raised, either last night or in previous conversations.

- First, you suggested that the invoices were sent – and the client's account of the timing of the submission of the invoices may have been wrong. I suspect that you may be confusing the internal "issue date" with the firm actually submitting the invoice to the client. For example, I know that one of the invoices (for approximately ███) has an "invoice date" of August 31, 2024; but, I am certain that I didn't see such an invoice before ██████████████, nor did I submit it to the client. The client said that she received this invoice for the first time in your November 11, 2024 email to her (with all four invoices attached).
- You have said to me more than once that the client already agreed to pay the demanded amount (███) on the accelerated timeline you requested and that I was somehow "interfering" with the payment. The client's view of the conversation was that you requested and she listened; but, she never agreed to pay this amount and certainly not on an accelerated basis. Instead, she called me and asked what is going on and why I wasn't managing the billing issue [which no one at LB had discussed with me].
- You have said that failure to pay the amount demanded would "screw" you [in the LB year-end accounting]. No one wants that to happen. This is why I asked what was going on – and wanted to figure out a plan to get the firm paid in a way that is comfortable for you and the client (especially in light of the unsurprising lag in the billing ██████████████████████).
- I believe the recitation of the messages from the client on November 17 demonstrates to you that this effort is the result of the client request that I help manage this billing situation – and not the result of some problem I have with the firm. As I have stated, I am confident that the firm will be paid all of its reasonable fees. My only concern is the suggestion that you will withdraw and how that may impact the client and its bills from those of us who would need to learn more details about the MSJ██████████████████████.

**Where We Go From Here**

As we have discussed, I have been hoping we can work together to find a way to have you follow through with the projects you have started for the client and get LB paid in a way that works for both the client and the firm. Again, there are all kinds of ways to work this out – but we need to remove withdrawal in advance of the reply briefs on the MSJs on which you led (in terms of evidence preparation, drafting and opposing the other side). Besides being unwarranted due to the fact that the client is not delinquent on a single invoice at this time, due to the role you have taken on as the first line in terms of facts/evidence, research and drafting and as the primary drafter of the MSJs, serious questions exist regarding whether a LB withdrawal can be " accomplished without material adverse effect on the client's interests." If I undertake the effort to move from the role of editor to primary drafter of ██████ briefs (or share this role with ██████), it will be more costly to the client and far less efficient than all of us assuming our same roles for the ████████████ underlying MSJs. I can foresee that this would only cause more regrettable billing issues going forward. As we have all discussed, we all believe that success is imminent in both ██████ and Interpleader matters – especially after reviewing the ████████ rulings of the Court.

So, for the sake of the client, let's try to figure out a way for you to follow through on these pending projects (and not withdraw) and get the firm paid whatever is reasonable under the circumstances this month and going forward. If you would like to have a discussion about how to work through this, I would be happy to do so.

I hope this helps to reset the tone and get us all back on track.

Regards.



**From:** Palys, Stefan <Stefan.Palys@lewisbrisbois.com>
**Sent:** Tuesday, November 26, 2024 6:30 PM
**To:** ████████████████████
**Cc:** ████████████████████████████████████████████
**Subject:** Summary Judgment Replies/Invoices

████

We understand that ██████████ is reviewing our invoices. Of course we do not object to that. However, the invoices have been outstanding for some time and we are now faced with undertaking a substantial amount of additional work, including the drafting of ████ briefs █████████████████████████████ (████ must be filed ████ █████ and the Interpleader Action ████ must be filed ████████. Accordingly, so that we are able to proceed with the necessary work, we need you to make an immediate payment of $█████ at least, by this coming Monday 12/2. Moreover, following your review of the invoices you commit to make payment of all additional amounts owed, less any questioned entries (any concerns/questions will be promptly addressed) as well as for invoices for the work to be performed related to the reply briefs.

We look forward to receipt of the funds and continuing to work with you on these matters.

Thank you.



**Stefan M. Palys**
**Partner Admitted in Arizona, Nevada, Virginia, and the District of Columbia**
Stefan.Palys@lewisbrisbois.com

**T: 202.558.0668 F: 202.558.0654**

2112 Pennsylvania Avenue NW, Suite 500, Washington, DC 20037 | LewisBrisbois.com

**Representing clients from coast to coast. View our locations nationwide.**



This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

# EXHIBIT 5

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

     Plaintiff,

vs.

J.R.H., *ex rel.* MALEEQUA C. HALL, *et al.*

     Defendants.

Case No.: 1:22-cv-02588-CKK

### NOTICE OF LIEN

TO ALL PARTIES AND HOLDERS OF ███████████████████ ██████ FUNDS AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Lewis Brisbois Bisgard & Smith LLP, 2112 Pennsylvania Avenue, Suite 500, Washington, DC 20037, hereby presents a claim and lien against any recovery ███████████████████ may obtain, whether by arbitration award, judgment, order, settlement or otherwise arising out of or relating to all claims or causes of action relating to the above-captioned matter, as well as the action in the Federal District Court ████████████████████████████████████████████████ ████████████.

PLEASE TAKE FURTHER NOTICE that demand is hereby made that Lewis Brisbois Bisgaard & Smith LLP appear on all drafts and releases affecting settlement, judgment, or compromise of the above-captioned and referenced matters, with Lewis Brisbois Bisgaard & Smith LLP to be notified of any negotiated settlement or the receipt of any recovery ███████ █████████████████ may obtain, whether by arbitration award, judgment, order, settlement or otherwise prior to the acceptance thereof.

1

Dated: _____ __, 2025                     Respectfully submitted,

                                            /s/ Stefan M. Palys
                                            Stefan M. Palys
                                            DC Bar No. 1765785
                                            Stefan.Palys@lewisbrisbois.com
                                            LEWIS BRISBOIS BISGAARD & SMITH LLP
                                            2112 Pennsylvania Avenue NW, Suite 500
                                            Washington, DC 20037
                                            202.558.0655

# EXHIBIT 6

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, | |
| Plaintiff, | |
| vs. | Case No.: 1:22-cv-02588-CKK |
| J.R.H., *ex rel.* MALEEQUA C. HALL, *et al.* | |
| Defendants. | |

## PETITION TO ESTABLISH ATTORNEYS' LIEN

Intervenor and Petitioner, Lewis Brisbois Bisgaard & Smith LLP ("LBBS"), pursuant to its Engagement Letter, all applicable attorney fee lien statutes, rules, and case law, and the Court's Order granting LBBS' intervention (ECF No.____), states as follows:

1.      Petitioner, a law firm which employs attorneys at law admitted to practice before this Court, files this Petition to establish its charging lien for attorneys' fees and costs as set forth herein.

2.      On or about May 23, 2024, Petitioner was retained and employed by ███████ ████████████████████████████, pursuant to a written Engagement Letter (the "Agreement"), to provide legal services, including preparation for mediation and, if necessary, motion(s) for summary judgment.

3.      Under the Agreement, ████████████ agreed to pay Petitioner for its services at a set hourly rate, with Petitioner sending ███████████ periodic statements for services rendered and costs incurred, and ███████████ agreed to pay all statements no later than 30 days after receipt.

1

4.        ███████████████ are not currently in compliance with the Agreement because they have failed and refused to pay LBBS for its services, and they have taken steps to repudiate the fee arrangements, among other aspects of the Agreement.

5.        Pursuant to the Agreement, Petitioner has provided services for ███████ ███████ relating to the above-captioned case from on or around June 2024 through early December 2024, as well as the related case, styled ██████████████████████ ████████████████████████████████ throughout approximately the same period.

6.        From the date the Petitioner was authorized to proceed on behalf of ███████ ███████ Petitioner and its existing counsel have actively and diligently applied themselves to the investigation, preparation, and pursuit of ████████████ claims and defenses in all fora, and have taken all steps necessary to protect the interests of ████████████ including conducting a substantial investigation, obtaining relevant documents and analyzing same, preparing for mediation, participation in motions practice (including motions for summary judgment), condensing pertinent evidence and drafting and sending letters to other parties in settlement negotiations, and engaging in settlement talks designed to ultimately achieve a reasonable final settlement offer on behalf of ████████████

7.        Petitioner has expended hundreds of hours in its representation of ███████ ███████ interests, and incurred substantial fees, and those hours and fees were reasonably and necessarily expended in pursuit of those interests.[1]

---

[1] To comply with D.C. Bar ethics rules regarding client confidences, Petitioner has omitted from this filing its outstanding invoices, which contain time entries detailing client information and legal analyses on motions currently pending before the Court. *See* D.C. R. Prof'l Conduct 1.6(e)(5). Petitioner will provide such support for its claimed legal expenses redacted, under seal, and/or *in camera* if challenged or as the Court deems necessary.

8.    Throughout November and December of 2024, Petitioner provided notice that ███ ███████████ were in breach of the Agreement, and notified them that, if Petitioner had to withdraw, it would seek any overdue or deferred attorneys' fees immediately, in accordance with the Agreement.

9.    After continued communications between Petitioner and ██████████████ failed to resolve the dispute, on December 9, 2024, Petitioner terminated its relationship with ███ ███████████.

10.    Less than two months later, Petitioner moved to intervene in this Court and to file notice of its charging lien, which was simultaneously sent to all counsel of record.

11.    Pursuant to the Agreement, Petitioner was granted an attorneys' lien, in an amount equal to "the amount of sums owing to LBBS at the conclusion of services performed plus any costs, attorney's fees, or interest to which LBBS may be entitled." This sum was directly assigned to Petitioner with the specific right to "compel payment of fees and costs from any such funds," even in the case of Petitioner's termination of its representation of ███████ ███████ prior to the completion of the representation.

12.    The total fees currently owed to Petitioner by ████████████████ are $██████████.

13.    Petitioner claims the right to have a lien for attorneys' fees and expenses established and enforced upon any sums derived from any settlement or judgment obtained, or to be obtained, by █████████████ in this action or any monies held by third parties.

WHEREFORE, Petitioner respectfully requests:

(1) That its attorney's charging lien be determined;

(2) That the amount of the lien be established;

3

(3) That the Court order that the Petitioner be entitled to enforce their attorney's charging lien against the proceeds to be derived from any settlement or judgment in this action or any other account within the jurisdiction of this Court;

(4) That the parties be prohibited from paying to ███████████ any sums of money until Petitioner's charging lien has been satisfied;

(5) That this Court retain jurisdiction over the issue of Petitioner's attorney Lien, the Parties, and their Counsel;

(6) Any other and further relief as this Court deems just.

Dated: _____ __, 2025                  Respectfully submitted,

                                           /s/ Stefan M. Palys
                                           Stefan M. Palys
                                           DC Bar No. 1765785
                                           Stefan.Palys@lewisbrisbois.com
                                           LEWIS BRISBOIS BISGAARD & SMITH LLP
                                           2112 Pennsylvania Avenue NW, Suite 500
                                           Washington, DC 20037
                                           202.558.0655

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

      Plaintiff,

vs.

J.R.H., *ex rel.* MALEEQUA C. HALL, *et al.*

      Defendants.

Case No.: 1:22-cv-02588-CKK

## [PROPOSED] ORDER GRANTING MOTION TO INTERVENE

On _____ ___, 2025, the Court considered the Motion to Intervene by the law firm Lewis Brisbois Bisgaard & Smith LLP to establish its lien for attorneys' fees in the above-captioned matter.

IT IS ORDERED that the Court GRANTS this Motion to Intervene (ECF No. __). The Clerk is directed to file the Notice (ECF No. __-___) and Petition to Establish the same (ECF No. ___-__).

IT IS FURTHER ORDERED that no funds belonging to ███████████████, or in which they have a claim or interest, held by any party or their counsel may be released or disbursed in any way without further order from the Court.

Signed this ___ day of _____, 2025.

_____
**COLLEEN KOLLAR-KOTELLY**
**UNITED STATES DISTRICT JUDGE**